**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| EQUAL MEANS EQUAL, | ) | |
| JANE DOE, | ) | |
| MARY DOE, | ) | |
| SUSAN DOE, | ) | |
| and similarly situated others | ) | Case No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY and** |
| | ) | **INJUNCTIVE RELIEF** |
| UNITED STATES DEPARTMENT of | ) | |
| EDUCATION, | ) | |
| and | ) | |
| BETSY DEVOS, in her official capacity as | ) | |
| Secretary of Education, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## I.     INTRODUCTION

1.    This lawsuit challenges the Department of Education's (DOE) seven-page "Q and A on Campus Sexual Misconduct," described by the DOE as a "significant guidance document" and publicly released by Defendant Betsy DeVos on September 22, 2017. (hereafter "DeVos rules," attached as Exhibit 1). The DeVos rules state, "the Department intends to engage in rulemaking on the topic of schools' Title IX responsibilities concerning complaints of sexual misconduct, including peer-on-peer sexual harassment and sexual violence. The Department will solicit input from stakeholders and the public during that rulemaking process." The document further states that the DeVos rules will serve as "interim information about how OCR (the Office for Civil Rights) will assess a school's compliance with Title IX." (DeVos rules, p.1).

2.    All individual plaintiffs are involved in pending OCR investigations or civil litigation under Title

IX, hence have rights at stake that are directly threatened and affected by the DeVos rules.

3.　　The DeVos rules violate the Administrative Procedures Act because they are: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) were issued in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) were issued without observance of procedure required by law; and (5) are unwarranted by the facts.

4.　　Aspects of the DeVos rules are unconstitutional to the extent they emanate from the Clery Act, and the Commerce Clause, because Congress has no general authority to regulate violence against women. To the extent Congress has authority to regulate civil rights matters under the Spending Clause, it cannot do so in a manner that intrudes unconstitutionally into the authority of the states. See *U.S. v. Morrison*, 529 U.S. 598 (2000) (Congress has no authority to regulate violence against women under civil rights laws or the Commerce Clause); *N'tl Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) (Congress exceeds its authority under the Spending Clause if it imposes too heavy a burden on the states as a quid pro quo for receiving federal funds).

5.　　Plaintiffs seek declaratory and injunctive relief, including temporary and permanent restraining orders, to prevent schools from adopting or applying the DeVos rules.

6.　　Plaintiffs seek a temporary restraining order and preliminary injunction because they are likely to succeed on the merits, and are likely to suffer irreparable harm in the absence of such relief. In addition, as discussed at length below, the balance of equities tips in favor of the Plaintiffs and an injunction is in the public interest. *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008).

## II. FACTS

## THE DEVOS RULES

7.      The DeVos rules by their terms are limited to sex-based harms including "dating violence, [1]

domestic violence,[2] sexual assault,[3] and stalking."[4] (DeVos rules, p. 1, 2). The DeVos rules apply

generally to all educational institutions that receive federal funds.

8.      The DeVos rules state that they are intended to replace the 2011 Dear Colleague Letter (DCL),[5]

and the DOE Guidance from 2014. (DeVos rules, p. 7). In fact, they rescind or subvert

substantive state and federal laws including Title IX and mandatory provisions of the Title IX

regulations, duly promulgated in 1975, 34 C.F.R. part 106, et seq.

9.      The DeVos rules, *inter alia*, unlawfully permit the use of criminal law definitions rather than

civil rights definitions. (DeVos rules, p. 2).

10.     The DeVos rules unlawfully permit the application of a more onerous "clear and convincing

---

[1] 92% of all domestic violence incidents are committed by men against women. *Violence Against Women, Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*. In Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub.

[2] Women are less likely than men to be victims of violent crimes overall, but women are 5 to 8 times more likely than men to be victimized by an intimate partner. *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*, U.S. Department of Justice, March, 1998; violence by an intimate partner accounts for about 21% of violent crime experienced by women and about 2% of the violence experienced by men. *Id*.

[3] Nine out of ten rape victims are female, U.S. Department of Justice, *2003 National Crime Victimization Survey. 2003*; Women aged 16-24 are four times more likely to be raped than any other population group.  Koss, M.P., *id*.

[4] 8% of women and 2% of men in the United States have been stalked at some time in their life. 78% of stalking victims identified in a survey were women, and 22 percent were men. Thus, four out of five stalking victims are women. By comparison, 94 percent of the stalkers identified by female victims and 60 percent of the stalkers identified by male victims were male. Overall, 87 percent of the stalkers identified by the victims were male. National Institute of Justice 1998. *Stalking in America: Findings from the National Violence Against Women Survey*).

[5]  U.S. Dept. of Education Office for Civil Rights, Dear Colleague Letter (Apr. 4, 2011), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.

evidence" standard of proof rather than the civil rights standard of "preponderance of the evidence." (DeVos rules, p. 5).

11.    The DeVos rules unlawfully apply only to civil rights harms based on sex and not to civil rights harms based on other protected categories, such as race and national origin.

12.    The DeVos rules unlawfully require that offenders of sex-based civil rights harms receive the same rights and/or treatment as victims of civil rights harms. (DeVos rules, p.5).[6]

13.    The DeVos rules unlawfully equate civil rights harms based on sex to generic "student misconduct cases."[7] (DeVos rules, p. 7 n. 19).

14.    The DeVos rules are described on page 1 as providing information about "how OCR will assess schools' compliance with Title IX," and then on page 2, state further that schools must comply with the Campus SaVE Act (also known as the Clery Amendment to the 2013 Violence Against Women Reauthorization Act) when responding to and redressing sex-based civil rights harms on campus. This provision is plainly unlawful because the Campus SaVE Act includes substantive rules and regulations that subvert and do not comply with Title IX in many of the same ways that the DeVos rules subvert and do not comply with Title IX. For example, the SaVE Act incorporates criminal law definitions such as "sexual assault" rather than using civil rights definitions such as "unwelcome" and "offensive," to determine whether a sex-based civil rights offense occurred. Further, the SaVE Act permits schools to use a burden of proof more onerous than preponderance of the evidence and separates out only sex-based civil rights harms for different and worse treatment compared to civil rights harms based on other protected class

---

[6] In support of this equalization requirement as well as other provisions, the DeVos rules cite to regulations promulgated under the Campus SaVE Act, 34 CFR § 668.46 et seq. This reliance is improper as it has already been held that the Campus SaVE Act can have "no effect" on Title IX. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

[7] Curiously, in support of this provision, the DeVos rules cite *Doe v. Brandeis Univ.*, 177 F.3d 561, 607 (D. Mass. 2016). However, that case did not involve any Title IX claims.

categories such as race and national origin.

15.    The DeVos rules state that they rescind the DOE's August 2014 "Questions and Answers on Title

IX," in which the DOE expressly states that the SaVE Act has "no effect on Title IX."

Furthermore, federal courts have expressly held that the SaVE Act can have "no effect" on Title

IX. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

## THE TITLE IX STATUTE AND REGULATIONS

16.    Title IX of the Education Amendments of 1972 states that "no person shall, on the basis of sex be

. . . subjected to discrimination." Title IX is a civil rights law, coextensive with Title VI[8] and

Title IV of the Civil Rights Act of 1964.[9] Title IV explicitly and equally prohibits discrimination

---

[8] 34 C.F.R. § 106.71 states that the procedural provisions applicable to Title VI of the Civil Rights Act (34 CFR §§ 100.6-100.11) are adopted and incorporated therein.

[9] *See Title IX Legal Manual,* THE UNITED STATES DEPARTMENT OF JUSTICE (last visited Jan. 30, 2014), http://www.justice.gov/crt/about/cor/coord/ixlegal.php (noting that "Congress consciously modeled Title IX on Title VI" and citing *Alexander v. Choate,* 469 U.S. 287, 294 (1985) for the proposition that because Title IX and Title VI contain parallel language, the same analytic framework should apply in the context of administrative redress proceedings because both statutes were enacted to prevent unlawful discrimination and to provide remedies for the effects of past discrimination); U.S. DEPARTMENT OF JUSTICE, findings letter against the University of New Mexico, (April 22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights laws); https://www.justice.gov/opa/file/843901/download; *Justice Department Announces Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's Office,* DEPARTMENT OF JUSTICE (May 1, 2012), http://www.justice.gov/opa/pr/2012/ May/12-crt-561.html (announcing Title IX compliance review and Title IV investigation of the University of Montana and noting, "Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of 1964 each prohibit sex discrimination, including sexual assault and sexual harassment in education programs"); *Resolution Agreement,* http://www.justice.gov/crt/about/edu/documents/ montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX are subject to the same regulations to ensure enforcement of rights regarding discrimination, harassment, and violence in education "on the basis of sex." 28 C.F.R. Part 54 and 34 C.F.R. Part 106). *See also* the Civil Rights Restoration Act of 1987, which made clear that substantive standards from Title VI apply with equal force to Title IX, 20 U.S.C. § 1687; 29 U.S.C. § 794, 42 U.S.C. § 2000d-4a, and 42 U.S.C. § 6101.

on the basis of sex, race, and national origin in public schools.[10]  Title IX applies to public and

private schools that receive federal funds.

17.    Long misunderstood to be primarily a sports equity rule for female athletes, Title IX was

modeled after Title VI of the Civil Rights Act of 1964, which provides that "No person in the

United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance," 42 U.S.C. §§ 2000d - 2000d-7. Title IX uses

exactly the same enabling language and states that "No person in the United States shall, on the

basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance…"

20 U.S.C. § 1681(a).

18.    Discrimination on the basis of sex includes sex/gender-motivated harassment and violence.

Sexual assault is always a form of sexual harassment; however, it may not be defined using

criminal law labels and definitions.[11] This is because conduct that meets the criminal definition

of "sexual assault" more than satisfies the meaning of "unwelcome;" however, conduct that is

"unwelcome" may not rise to the more onerous elemental requirements of the criminal definition

---

[10] Title IV prohibits discrimination in identified public entities, including schools and other
"federally assisted programs," on the basis of *"race, color, sex, religion or national origin."* 42
U.S.C. §§ 2000c through 2000c-9; Equal Educational Opportunities Act of 1974, Title II, 20
U.S.C. §§ 1701-1758.

[11] *Letter from Russlynn Ali*, Assistant Secretary for Civil Rights, Department of Education,
Office for Civil Rights (October 26, 2010) ("The label used to describe an incident (*e.g.*,
bullying, hazing, teasing) does not determine how a school is obligated to respond. Rather, the
nature of the conduct itself must be assessed for civil rights implications. So, for example, if the
abusive behavior is on the basis of race, color, national origin, sex, or disability, and creates a
hostile environment, a school is obligated to respond in accordance with the applicable federal
civil rights statutes and regulations enforced by OCR."); *Education & Title IX,* NATIONAL
WOMEN'S LAW CENTER (last visited Jan. 29, 2014), http://www.nwlc.org/our-issues/education-
%2526-title-ix.

of sexual assault.  Whether conduct is covered by Title IX is determined by the behavior, not the label used to describe the behavior.[12] The controlling Title IX standard asks simply whether words or conduct of a sexual or gender-based nature were "unwelcome." "Unwelcome" means that which was not requested or invited, and which an individual considered to be "undesirable or offensive."[13]

19.   Title IX covers student-on-student sexual assaults. *Davis v. Monroe*, 526 U.S. 629 (1999).

20.   The Title IX regulation states that "no person shall, on the basis of sex be . . . subjected to discrimination." 34 C.F.R. part 106.31(a).

21.   The Title IX regulation states that a school "shall not, on the basis of sex," *inter alia*, "treat one person differently from another in determining whether such person satisfies any requirement of condition for the provision of such aid, benefit, or service; provide different aid, benefits or services in a different manner; deny any person such aid, benefit, or service."[34] C.F.R. part 106.31(b)(1-7).

22.   The Title IX regulation states that a school shall not on the basis of sex "subject any person to separate or different rules of behavior, sanctions, or other treatment, or otherwise limit any person in the enjoyment of any right, privilege, advantage or opportunity." 34 C.F.R. part 106.31(b)(1-7).

23.   The Title IX regulation states that a school "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action, which would be prohibited by Title IX. 34 C.F.R. part 106.8(b)."  Equitable redress is also

---

[12] *Id.*
[13] http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html.

mandatory under Title IV[14] and Title VI.[15]

24. The Title IX regulation states that, a school shall implement specific and continuing steps to notify students and employees that it does not discriminate on the basis of sex and that it is required by Title IX not to discriminate in such a manner. "Such notification shall state that the requirement not to discriminate extends to employment and that inquiries regarding the application of Title IX may be referred to the designated employee or to the Assistant Secretary for Civil Rights at the Department of Education." 34 C.F.R. part 106.9(a).

25. The Title IX regulation states that, "A school shall not use or distribute a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex." 34 C.F.R. part 106.9(b)(2).

## THE DEVOS RULES VIOLATE TITLE IX

---

[14] Among the University of Montana - Missoula, the U.S. Department of Justice, Civil Rights Division, Educational Opportunities Section and the U.S. Department of Education, Office for Civil Rights, RESOLUTION AGREEMENT, available at http://www.justice.gov/crt/about/edu/documents/montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX both require "equity" and are subject to the same regulations and standards of enforcement regarding discrimination, harassment and violence in education).

[15] *Title VI Enforcement Highlights Office for Civil Rights,* U.S. DEPARTMENT OF EDUCATION (last visited Jan. 30, 2014) http://www2.ed.gov/documents/press-releases/title-vi-enforcement.pdf (repeatedly noting that Title VI requires schools to apply standard of "equity"); *Title IX Legal Manual*, THE UNITED STATES DEPARTMENT OF JUSTICE (last visited Jan. 30, 2014); http://www.justice.gov/crt/about/cor/coord/ixlegal.php; *see also* 42 U.S.C. § 2000d-7 (requiring equal treatment on behalf of all protected class categories). In a section labeled "Civil rights remedies equalization," the statute provides that "(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of § 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], Title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." This "Civil rights remedies equalization" mandate further states that "(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation *to the same extent* as such remedies are available for such a violation in the suit against any public or private entity other than a State." (emphasis added).

26.  The DeVos rules in their entirety violate Title IX and 34 C.F.R. part 106.31(a) because they permit schools to treat civil rights harms differently on the basis of sex.

27.  The DeVos rules violate Title IX by permitting schools to apply a burden of proof more onerous than preponderance of the evidence to determine whether a sex-based civil rights harm occurred. The DeVos rules do not permit schools to apply a burden of proof more onerous than preponderance to determine whether civil rights harms occurred on the basis of other protected class categories, such as race and national origin.

28.  Application of the preponderance standard has been required under civil rights laws since long before the DCL was released.[16] The DCL reminded schools of their obligation to provide "equitable" redress in response to sex-based civil rights harms by applying the preponderance standard, as they were doing with other civil rights matters.[17]

---

[16] Letter from Sheralyn Goldbecker, OCR D.C. Office, to John J. DeGioia, President, Georgetown University (May 5, 2004) ("[C]omplaints of sexual harassment were resolved using a clear and convincing evidence standard, a higher standard than the preponderance of the evidence standard, which is the appropriate standard under Title IX for sex discrimination complaints, including those alleging sexual harassment."); Letter from Gary D. Jackson, Regional Civil Rights Director, OCR Region X, to Jane Jervis, President, Evergreen State College (April 4, 1995) (stating that the "evidentiary standard of proof applied to Title IX actions is that of a 'preponderance of the evidence'" and that requiring "'clear and convincing proof'" imposes "a heavier burden of proof than that which is required under Title IX."); OCR also uses a preponderance of the evidence standard when it resolves complaints against recipients, and in fund termination hearings. "Grievance procedures that use [a] higher standard are inconsistent with the standard of proof established for violations of the civil rights laws, and are thus *not equitable* under Title IX." See April 4, 2011 Dear Colleague Letter, pg. 12. (emphasis added).

[17] That Title IX's mandate of equitable treatment requires application of the preponderance standard was acknowledged during congressional hearings related to the enactment of the Campus SaVE Act, which was a 2013 amendment of the Clery Act. One Congressman was strikingly candid about why removing the word "equitable" from the Campus SaVE Act would allow schools to apply a more onerous burden of proof on victims of sex-based harms: "The majority bill said that college campuses must provide for 'prompt and equitable investigation and resolution' of charges of violence or stalking. This would have codified a proposed rule of the Department of Education that would have required imposition of a civil standard or preponderance of the evidence for what is essentially a criminal charge, one that, if proved, rightly should harm reputation. But if established on a barely "more probable than not" standard,

29.     In practice, applying a more onerous burden of proof only in sex-based matters would mean that

if a student were physically beaten on the basis of national origin, the matter would be resolved

under a "preponderance of the evidence" standard, and if the evidence showed the offense more

likely than not occurred, the offender would suffer consequences. However, if the **exact** same

offender committed **exactly** the same conduct against a female student on the basis of her sex,

and **exactly** the same quality of evidence was presented, school officials could assess the matter

under the more onerous standard of clear and convincing evidence, and the offender would suffer

no consequences. Furthermore, the redress of certain claims would be subject to absurd dual

assessments.  For example, if a black woman were assaulted on the basis of her race **and** her sex

at a school that opted to apply the "clear and convincing evidence" standard in sex-based

matters, that single civil rights offense would be subjected to two different burdens of proof.

30.     The DeVos rules violate Title IX and 34 C.F.R. part 106.31(b)(1-7) because they subject victims

of sex-based harms to different treatment compared to other civil rights harms, with regard to

aids, benefits, and/or services.

31.     The DeVos rules violate Title IX and 34 C.F.R. part 106.31(b)(1-7) because they subject victims

of sex-based harms to separate and different rules of behavior, sanctions, or other treatment,

compared to other civil rights harms.

32.     The DeVos rules violate Title IX and 34 C.F.R. part 106.31(b)(1-7) because they limit victims of

sex-based harms in the enjoyment of their rights, privileges, advantages, and opportunities,

compared to victims of other civil rights harms.

33.     The DeVos rules violate Title IX and 34 C.F.R. part 106.8(b) because they state that schools

---

reputations can be ruined unfairly and very quickly. The substitute eliminates this provision."
(Testimony of Senator Grassley, Iowa, 158 Cong Rec. S 2761, Congressional Record, Sen., 112th
Congress, 2nd Session Senate, April 26, 2012; Violence Against Women Reauthorization Act of
2011, Reference: Vol. 158, No. 61).

"should" use criminal law definitions,[18] rather than the civil rights definition of "unwelcome,"[19] to assess sex-based civil rights harms. Indeed, the word "unwelcome" appears nowhere in the DeVos rules, but the criminal law term "sexual assault" appears *nine* times. The DeVos rules do not state that schools should use criminal law definitions to assess other civil rights offenses. The DeVos rules thus subject victims of sex-based harms to different, discriminatory, and inequitable treatment because criminal law definitions are more onerous and more difficult to prove than the civil rights definition of "unwelcome."

34.  The DeVos rules violate Title IX and 34 C.F.R. part 106.8(b) because they permit schools to apply an evidentiary burden of proof more onerous than a preponderance of the evidence when responding to and redressing sex-based harms, but not when responding to and redressing other civil rights harms, thus subjecting victims of sex-based harms to different, discriminatory, and inequitable treatment for the resolution of student and employee complaints alleging any action, which would be prohibited by Title IX. (DeVos rules, p.5).

35.  The DeVos rules violate of 34 C.F.R. part 106.8(b) because they state that the burden of proof applied in sex-based civil rights cases should be the same as that which is applied in non-civil rights student misconduct matters (DeVos rules, p.5, n.19) rather than civil rights matters, thus subjecting victims of sex-based harms, but not other civil rights harms, to different,

---

[18] The DeVos rules cite to 34 C.F.R. § 106.8(b) as support for the use of criminal law terms to describe harms addressed on campus under Title IX grievance procedures, yet those regulations were promulgated under a 2013 amendment to the Clery Act; they were not promulgated under Title IX, and at least one federal court has already ruled that those regulations can have "no effect" on Title IX because Congress cannot lawfully amend Title IX by amending the Clery Act. *Doe v. U.S. Dept. of Health and Human Services*, 85 F. Supp. 3d 1, 11 (D.D.C. 2015).
[19] "Unwelcome" is defined as conduct the student "did not request or invite it and considered the conduct to be undesirable or offensive. The age of the student, the nature of the conduct, and other relevant factors affect whether a student was capable of welcoming the sexual conduct. A student's submission to the conduct or failure to complain does not always mean that the conduct was welcome." http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html.

discriminatory, and inequitable treatment.

36.    The DeVos rules violate Title IX and 34 C.F.R. part 106.9(b)(2) by allowing schools to use or

distribute a publication, which suggests by text or illustration that such school treats applicants,

students, or employees differently on the basis of sex.

## THE DEVOS RULES VIOLATE MASSACHUSETTS LAW

37.    Massachusetts General Law, chapter 93, § 102, the Massachusetts Equal Rights Act, guarantees

females the full and equal benefit of all laws and proceedings for the security of persons …"

38.    For the reasons set forth in the facts above, the DeVos rules violate Massachusetts General Law,

chapter 93, § 102.

39.    The Equal Protection Clause of the Massachusetts Constitution prohibits discriminatory and

unequal treatment based on sex. (Massachusetts Constitution, Part 1, Article I). Claims of

sex/gender discrimination under the Massachusetts Constitution are subject to strict scrutiny.

*Commonwealth v. King*, 374 Mass. 5, 21 (1977).

40.    For the reasons set forth in the facts above, the DeVos rules violate Massachusetts Constitution,

Part 1, Article I.

## FACTS RELATED TO THE CLASS OF INDIVIDUALS AFFECTED

41.    One in three to one in four women are victimized by sexual assault during college.[20] Given that

approximately 916,000 women graduated from post-secondary schools in 2009,[21] this means

about 60,000 women are victimized by sexual assault during college.  By comparison, about

---

[20]  https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, p.xii-xiii and 2-1 (2007); U.S. Department of Justice Office of Community Oriented Policing Services, Acquaintance Rape of College Students, March 28, 2002, http://www.cops.usdoj.gov/pdf/e03021472.pdf; https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf; Freyd, J. Rosenthal, M. & Smith, C., Preliminary Results from the University of Oregon Sexual Violence and Institutional Behavior Campus Survey, 2014, http://dynamic.uoregon.edu/jjf/campus/UO-campus- results-30Sept14.pdf.
[21]  http://www.census.gov/prod/2012pubs/p20-566.pdf.

26,000 sexual assaults occur in the military each year,[22] which number includes not only rape and attempted rape but also relatively minor sexual touching not rising to the level of attempted rape.[23] Approximately 30% of sexual assault victims in the general population file reports.[24] A similar number of military victims file reports.[25] The number is much lower for college victims where only 5-12% of victims file reports.[26]

42.   Female students in the United States have endured pervasive unequal treatment, harassment and violence, on the basis of sex, throughout all levels of education.[27] Women, including female postsecondary students, suffer disproportionately high rates of domestic and dating violence,[28] sexual assault[29] and stalking.[30] In fact, according to some studies, a student is more likely to be

---

[22]  An estimated 26,000 sexual assaults occurred in all branches of the military in 2012, http://www.sapr.mil/public/docs/reports/FY12_DoD_SAPRO_Annual_Report_on_Sexual_Assault-VOLUME_ONE.pdf

[23]  *Id.*

[24]  http://www.rainn.org/get-information/statistics/reporting-rates.

[25]  http://www.usccr.gov/pubs/09242013_Statutory_Enforcement_Report_Sexual_Assault_in_the_Military.pdf, p.8.

[26]  http://www.nij.gov/publications/pages/publication-detail.aspx?ncjnumber=182369 (2001) (5%); https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, 5-22 (2007) (12.9%).

[27]  Sadker, & Zittleman, *Still Failing at Fairness, How Gender Bias Cheats Girls and Boys in School and What We Can Do About It*, Scribner Press 2009; www.hks.harvard.edu/centers/carr/research-publications/carr-center-working-papers-series/caplan-and-ford-%22the-voices-of-diversity-%22.

[28]  Women are less likely than men to be victims of violent crimes overall, but women are 5 to 8 times more likely than men to be victimized by an intimate partner. *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*, U.S. Department of Justice, March, 1998; violence by an intimate partner accounts for about 21% of violent crime experienced by women and about 2% of the violence experienced by men. *Id.* 92% of all domestic violence incidents are committed by men against women. *Violence Against Women, Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*. In Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub.

[29]  Nine out of ten rape victims are female, U.S. Department of Justice, *2003 National Crime Victimization Survey. 2003*; Women aged 16-24 are four times more likely to be raped than any other population group.  Koss, M.P., *id.*

victimized by sexual assault if she attends college than if she does not.[31]

43.    Because the DeVos rules cover only severe forms of sex-based civil rights harms, a student who

endures less serious verbal harassment will have her civil rights redressed properly under Title

IX, without, for example, application of the clear and convincing evidence rule. This means that

the more serious physical offenders of sex-based civil rights harms are less likely to be held

responsible compared to less serious verbal offenders.

44.    Alongside less protective standards, the DeVos rules are silent on the need for schools to comply

with civil rights laws at all.  Indeed, the entire DeVos rules mention the phrase "civil rights" only

when citing the title of the "Office for Civil Rights."

45.    The DeVos rules discriminate based on sex, and threaten and violate various rights guaranteed to

the Plaintiffs and similarly situated others, including rights under Title IX, Title IV, and civil

rights laws and constitutional provisions under Massachusetts law. Relief is necessary to protect

the rights of the Plaintiffs and all individuals affected or threatened by harms "based on sex."

46.    Equal Means Equal is a national non-profit organization that advocates for sex/gender equality

and fully equal rights for women. Their involvement in this litigation is intended to represent the

multitude of individuals at risk for suffering harms based on sex, who now suffer a First

Amendment chilling effect from the DeVos rules, and will decline to report or seek redress on

---

[30]  8% of women and 2% of men in the United States have been stalked at some time in their life.
78% of stalking victims identified in a survey were women, and 22 percent were men.  Thus,
four out of five stalking victims are women.  By comparison, 94 percent of the stalkers identified
by female victims and 60 percent of the stalkers identified by male victims were male.  Overall,
87 percent of the stalkers identified by the victims were male. National Institute of Justice 1998.
*Stalking in America: Findings from the National Violence Against Women Survey*).
[31]  One in four students in the United States is victimized by rape or attempted rape during
college, *see* n.1, while one in six American women is the victim of an attempted or completed
rape in her lifetime.  National Institute of Justice & Centers for Disease Control &
Prevention. *Prevalence, Incidence and Consequences of Violence Against Women Survey.* 1998.

campus for fear their rights under Title IX will not be fully enforced.[32]

47.    To properly assert injury in a First Amendment context, action need only be shown to have

caused a deterrent or chilling effect on plaintiffs' speech. *Waters v. Churchill*, 511 U.S. 661, 669

(1994) (where First Amendment rights are threatened, courts relax the prudential requirement of

actual injury in light of the weightier concern of the chilling effect on free speech); *Secretary of*

*State of Maryland v. Joseph H. Munson, Inc*., 467 U.S. 947, 956 (1984). If a citizen elects to

discontinue engaging in protected activity rather than launching a First Amendment challenge,

society as a whole suffers a loss. *Id*. Preemptive First Amendment challenges are necessary to

prevent "others not before the court [from] refrain[ing] from constitutionally protected speech or

expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *Elrod v. Burns*, 427 U.S. 347,

373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury."); *Manguala v. Rotger-Sabat*, 317 F.3d 45, 57 (1st

Cir. 2003) (A plaintiff suffers injury in fact when she is "chilled from exercising her right to free

expression or foregoes expression in order to avoid enforcement consequences."); *Navegar, Inc.*

*v. United States*, 103 F.3d 994, 998–999 (D.C. Cir. 1997) (Federal courts most frequently find

pre-enforcement challenges justiciable when the conduct chilled is protected by the First

Amendment.).

48.    To properly assert injury in a First Amendment context, action need only be shown to have

caused a deterrent or chilling effect on plaintiffs' speech. Massachusetts Constitution,

Declaration of Rights, Art. XVI.

49.    Equal Means Equal has organizational standing under *Havens Realty Corp., v. Coleman*, 455

U.S. 363, 378–79 (1982) and *United Food and Commercial Workers' Union Local 751 v. Brown*

---

[32] *National Women's Law Center Press* Release, September 22, 2017, https://nwlc.org/press-releases/nwlc-reacts-to-education-departments-interim-rule/.

*Group Inc.,* 517 U.S. 544, 553 (1996). Equal Means Equal has over twenty-thousand active supporters, a significant percentage of whom are students or others protected by Title IX, who advocate for women's equality and the fully equal treatment of women in society. Equal Means Equal actively engages in advocacy and educational services related to women's equality under the law.

50.     The chilling effect injury endured by Equal Means Equal's members and the class of people subjected to sex-based harms is directly attributable to the DeVos rules.

### THE INDIVIDUAL PLAINTIFFS

51.     Plaintiff Jane Doe is currently involved as a complainant in an ongoing federal investigation (OCR case number 01-15-2216, Region I) against Stonehill College in Easton, Massachusetts. Claims alleged include improper application of the preponderance of evidence rule, use of criminal law standards, and separate, different, and unequal treatment based on sex.

52.     After the DeVos rules were announced, Plaintiff Jane Doe contacted the OCR office handling her complaint and asked whether the DeVos rules would be applied to her case. The OCR official would state only that it intended to apply the Title IX regulations. When asked further for an assurance whether the Title IX regulations would not be interpreted in accordance with the DeVos rules, the OCR official declined to answer.

53.     If the matter against Stonehill College is resolved in favor of Stonehill College because of the DeVos rules, Plaintiff Jane Doe's rights under Title IX will have been violated.

54.     Therefore, Plaintiff Jane Doe's rights are threatened and/or will be negatively affected by the DeVos rules.

55.     Plaintiff Mary Doe is currently involved as a plaintiff in an ongoing lawsuit in Suffolk Superior Court (Civil Action No.: 1684-CV-03765), arising out of a sexual assault Doe suffered on

campus when she was a student at Boston University.

56.     Allegations in Plaintiff Mary Doe's civil lawsuit include that Boston University violated her

rights under Massachusetts General Laws, chapter 93, § 102, and under Part 1, Article I of the

Massachusetts Constitution (Equal Protection Clause) by, *inter alia*, not complying with Title IX.

57.     If the Title IX related claim against Boston University is resolved in favor of Boston University

because of the DeVos rules, Plaintiff Mary Doe's rights under Title IX will have been violated.

58.     Therefore, Plaintiff Mary Doe's rights are threatened and/or will be negatively affected by the

DeVos rules. Indeed, defense attorneys in civil lawsuits related to Title IX have begun

supplementing their legal briefs with memoranda arguing that the DeVos rules entitle them to

assert a stronger legal argument against the rights of victims of Title IX violations.  *See e.g.*,

*Kollaritsch et al., v. Michigan State University Board of Trustees, et al.*, 1:15-cv-01191-PLM-

PJG, United States District Court, Western District of Michigan, (court order issued 10/17/17

denying motion to strike and granting defendants leave to file supplemental authority regarding

"significant change in Guidance on Title IX."

59.     Plaintiff Susan Doe is currently involved as a complainant in an ongoing federal investigation

(OCR case number: 5-17-2020, Region V) against The School of the Art Institute of Chicago

(SAIC) in Chicago, Illinois, arising out of numerous instances of extensive sexual misconduct

perpetrated by an SAIC employee who was also her direct advisor. Plaintiff Susan Doe was

forced to leave SAIC because of the sexual misconduct she suffered. She is currently enrolled as

a student in Massachusetts. Claims alleged include separate, different, and unequal treatment

based on sex.

60.     After the DeVos rules were announced, Plaintiff Susan Doe contacted the OCR office handling

her complaint and asked whether the DeVos rules would be applied to her case. The OCR official

stated that he could not assure Plaintiff Susan Doe that the DeVos rules would not affect her case.

61.    The decision pending before the Chicago OCR will necessarily affect Plaintiff Susan Doe's educational experience in Massachusetts. If the matter against the SAIC is resolved in favor of the SAIC because of the DeVos rules, Plaintiff Susan Doe's rights under Title IX will have been violated. Furthermore, Plaintiff Susan Doe's understanding of whether she has a right to expect equitable and fully equal treatment, and effective protection from sexual misconduct, her experience as a student in Massachusetts will be negatively impacted.

62.    Therefore, Plaintiff Susan Doe's rights are threatened and/or will be negatively affected by the DeVos rules.

## III.  JURISDICTION AND VENUE

63.    Jurisdiction is conferred by 28 U.S.C. § 1651 (writs), § 1331 (federal question), § 1361 (compel agency to act or not act) § 2201, § 2202; 42 U.S.C. § 1983 (deprivation of rights under color of law) and 5 U.S.C. § 702 (legal wrong suffered because of agency action).

64.    Venue is appropriate under 28 U.S.C. § 1391(e).

## IV.  PARTIES

65.    Equal Means Equal is a 501(c)(4) organization, whose primary purpose is to advocate for sex/gender equality. The President is Kamala Lopez and the Directors are Kamala Lopez and Natalie White. It is incorporated in California.

66.    Jane Doe is a female college student and resident of Middlesex County, Massachusetts.

67.    Mary Doe is a former Boston University student and resident of New York. She is currently a plaintiff in a Massachusetts Superior Court lawsuit.

68.    Susan Doe is a female postsecondary school student in Massachusetts and is a resident of Middlesex County.

69.    Defendant United States Department of Education is an executive agency of the United States

government. The Department's principal address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

70.    Defendant Betsy DeVos is the United States Secretary of Education.  Her regular place of business is 400 Maryland Avenue, S.W., Washington, D.C. 20202. She is sued in her official capacity and is responsible for the implementation and enforcement of Title IX and other civil rights laws.

## VI.   CAUSES OF ACTION

### COUNT I
### Administrative Procedures Act
### (Action in Excess of Authority, 5 U.S.C. § 706(2)(C))

71.    Plaintiffs incorporate by reference paragraphs 1–70.

72.    The DOE's delegated powers are limited by 20 U.S.C. § 1682 which states that the DOE "is authorized and directed to effectuate the provisions of [Title IX]…by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of objectives of the statute…" Rules, regulations, and orders of general applicability that are inconsistent with the objectives of Title IX are therefore beyond the jurisdiction of the DOE's authority.

73.    The APA provides a general cause of action for parties adversely affected or aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 702-704.

74.    Defendants may not act in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

75.    Title IX forbids, and Congress has not delegated to the DOE the authority to issue rules that subject victims of the sex-based civil rights harms covered by the DeVos rules to different treatment.

76.    Congress has not delegated to the DOE the authority to incorporate by reference the provisions

of the Campus SaVE Act.

77.    Congress has not delegated to the DOE the authority to apply criminal law definitions rather than

civil rights definitions to assess whether a civil rights offense under Title IX has occurred.

78.    Congress has not delegated to the DOE the authority to subject only sex-based civil rights harms

to a burden of proof more onerous than that which is applied in the redress of civil rights harms

based on other protected class categories such as race and national origin.

79.    Congress has not delegated to the DOE the authority to require schools to provide to offenders of

sex-based civil rights harms the same legal protections as are afforded victims of sex-based civil

rights harms.

80.    Congress, and thus the DOE, lack authority to regulate violence against women. *U.S. v.

Morrison*, 529 U.S. 598 (2000) (Congress has no authority to regulate violence against women

under civil rights laws or the Commerce Clause).

81.    Under the Spending Clause, Congress, and thus the DOE, exceed their authority if they impose

too heavy a burden on the states as a quid pro quo for receiving federal funds. *N'tl Federation of

Independent Business v. Sebelius*, 567 U.S. 519 (2012).

82.    The DeVos rules exceed Defendants' authority and should therefore be vacated and set aside.


**COUNT II**
**Administrative Procedures Act**
**(Failure to Adhere to Procedures Required by Law when Promulgating Regulations)**

83.    Plaintiffs incorporate by reference paragraphs 1–82.

84.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and

conclusions found to be without observance of procedure required by law." 5 U.S.C. §

706(2)(D).

85.    The APA requires an agency to give "(g)eneral notice of proposed rule making" and provide

"interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b), (c).

86. Defendants must involve the public in the development of proposed regulations and to "submit such regulations to a negotiated rulemaking process."

87. Defendants promulgated the DeVos rules without adhering to the procedural requirements of 5 U.S.C. § 553 (b), (c) and 20 U.S.C. § 1098a.

88. The DeVos rules should therefore by vacated and set aside.

**COUNT III**
**Administrative Procedures Act**
**(Actions Not in Accordance with Law)**

89. Plaintiffs incorporate by reference paragraphs 1 through 88.

90. Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

91. An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *Motor Veh. Mfrs. Ass'n v. State Farm Ins.*, 463 U.S. 29, 43 (1983).

92. The DeVos rules give no explanation for subjecting only sex-based civil rights harms to different and worse treatment compared to other types of civil rights harms. Nor does it contain any justification for granting offenders of sex-based civil rights harms the same rights and treatment as those afforded to victims of sex-based civil rights harms. Offenders of civil rights harms based

on race and national origin are not granted the same rights as victims of civil rights harms based on race and national origin, or the same rights of offenders of civil rights harms based on sex.

93.     The DeVos rules failed to consider important aspects such as the fact that the Title IX regulations explicitly and repeatedly forbid different treatment based on sex. The DeVos rules clearly failed to consider this critically important aspect of Title IX as this prohibition is nowhere mentioned in the DeVos rules.

94.     The DeVos rules failed to consider that under Title IX offenses must be defined using the civil rights definition of "unwelcome," not criminal law definitions, such as "sexual assault." That this important aspect of Title IX was not considered is obvious because the word "unwelcome" appears nowhere in the DeVos rules.

95.     The DeVos rules failed to consider that Title IX is coextensive with and must be treated the same as Title IV and Title VI of the Civil Rights Act of 1964.

96.     The DeVos rules are unlawful, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

97.     The DeVos rules unlawfully require schools to comply with the Campus SaVE Act. This is plainly illegal because the Campus SaVE Act includes substantive rules and regulations that subvert and do not comply with Title IX and other laws in many of the same ways that the DeVos rules subvert and do not comply with Title IX and other laws. For example, the SaVE Act incorporates criminal law definitions, such as "sexual assault," rather than using civil rights definitions such as "unwelcome," to determine whether a sex-based civil rights offense occurred. Further, the SaVE Act permits schools to use a burden of proof more onerous than preponderance of the evidence and separates out only sex-based civil rights harms for different and worse treatment compared to civil rights harms based on other protected class categories

such as race and national origin.

98. The DeVos rules state that they rescind the DOE's August 2014 Questions and Answers on Title IX, in which the DOE expressly states that the SaVE Act has "no effect on Title IX." Federal courts have also expressly held that the SaVE Act can have no effect on Title IX. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

99. The DeVos rules were issued without apparent approval by the President of the United States as required by Title IX, 20 U.S.C. § 1682.

100. The DeVos rules are not supported by Title IX's text, implementing regulations, or legislative history.

101. The DeVos rules should therefore be vacated and set aside.

## COUNT IV
### Administrative Procedures Act
### (Actions Contrary to Constitutional Right, Power, Privilege, or Immunity)

102. Plaintiffs incorporate by reference paragraphs 1 through 101.

103. The DeVos rules are contrary to constitutional right, power, privilege, or immunity.

104. The DeVos rules should therefore be vacated and set aside.

## COUNT V
### Administrative Procedures Act
### (Actions Unwarranted by the Facts)

105. Plaintiffs incorporate by reference paragraphs 1 through 104.

106. Under the APA, actions are prohibited when unwarranted by the facts and lacking a satisfactory explanation for the actions including a rational connection between the facts found and the choice made.

107. The DeVos rules contain no facts, satisfactory explanation, or rational connection between the facts and the choice made for the actions taken.

108.   The DeVos rules should therefore be vacated and set aside.

## COUNT VI
## First Amendment

109.   Plaintiffs incorporate by reference paragraphs 1 through 108.

110.   The First Amendment guarantees Plaintiffs and similarly situated others rights of speech and petition.

111.   Defendants have a duty to enforce laws consistent with the dictates of the First Amendment to the United States Constitution.

112.   Plaintiffs' First Amendment rights are chilled and denied by the DeVos rules because it inhibits victims of sex-based civil rights harms from reporting and seeking redress.

113.   Through their actions described in this complaint, Defendants have violated the First Amendment.

114.   Defendants' actions and inactions have caused harm and will continue to cause harm to the First Amendment rights of individuals at risk for suffering the sex-based harms covered by the DeVos rules.

115.   Defendants' actions are unlawful, unreasonable, and exceptional.

## COUNT VII
## Title IX

116.   Plaintiffs incorporate by reference paragraphs 1 through 115.

117.   Title IX prohibits discrimination on the basis of sex, "under any program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

118.   The DOE is a program or activity receiving federal financial assistance.

119.   Title IX has been given the broadest possible effect to ensure maximum protection against sex discrimination in education.

120.    The DeVos rules violate Title IX.

121.    The negative effects of having an entire class of people be declared by the United States

Secretary of Education to be unworthy of equal protection against discrimination and fully equal

treatment under civil rights laws negatively affects the rights of all individuals subject to sex-

based harms with regard to their access to educational opportunities, benefits, programs, and

activities as a direct result of the DeVos rules.

122.    The individual plaintiffs have legal matters pending that will be negatively affected by the

DeVos rules.

123.    Plaintiffs' Title IX claim is a challenge to Defendants' policy on the grounds that the DeVos

rules are facially discriminatory. Thus, deliberate indifference need not be shown.

124.    The mere existence of a facially discriminatory policy creates a hostile environment in all

educational opportunities, benefits, programs, and activities for all individuals protected by Title

IX.

125.    Defendants have the ability to remedy the discriminatory DeVos rules.

## COUNT VIII
### Violation of G.L. c. 93, § 102, Massachusetts Equal Rights Act

126.    Plaintiffs incorporate by reference paragraphs 1 through 125.

127.    The individual plaintiffs have a right to receive full and equal treatment under Massachusetts

law, including "the full and equal benefit of all laws and proceedings for the security of persons

…"

128.    Defendants promulgated rules intentionally, recklessly, and/or negligently that apply exclusively

to sex-based harms and that deny the individual Plaintiffs "full and equal benefit of all laws and

proceedings for the security of persons…."

129.    Congress, and thus the DOE, lack authority to regulate violence against women. *U.S. v.*

Morrison*, 529 U.S. 598 (2000) (Congress has no authority to regulate violence against women

under civil rights laws or the Commerce Clause).

130.    Under the Spending Clause, Congress, and thus the DOE, have exceeded their authority by

imposing too heavy a burden on Massachusetts as a quid pro quo for receiving federal funds. *N'tl*

Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

131.    As a direct and proximate result of the Defendants' conduct, the individual Plaintiffs have

suffered personal injuries to their rights, and will continue to suffer these injuries to rights in the

future.

**COUNT IX**
**Violation of Mass. Const. Pt. 1, Art. I, Equal Protection**

132.    Plaintiffs incorporate by reference paragraphs 1 through 131.

133.    The individual plaintiffs have a right to enforcement of the law consistent with the dictates of the

Massachusetts Constitution's guarantee of equal protection.

134.    Defendants discriminated against Plaintiffs on the basis of their sex and violated their rights to

equal protection of the laws by issuing the DeVos rules.

135.    Congress, and thus the DOE, lack authority to regulate violence against women. *U.S. v.*

Morrison*, 529 U.S. 598 (2000) (Congress has no authority to regulate violence against women

under civil rights laws or the Commerce Clause).

136.    Under the Spending Clause, Congress, and thus the DOE, have exceeded their authority by

imposing too heavy a burden on Massachusetts as a quid pro quo for receiving federal funds. *N'tl*

Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

137.    As a direct and proximate result of Defendants' conduct, the individual Plaintiffs have suffered

legal injuries to their rights, and will continue to suffer injuries to their rights in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Enter an order vacating and setting aside the DeVos rules in their entirety;

2. Enter an order enjoining Defendants from requiring or permitting entities covered by Title IX to abide by the DeVos rules;

3. Enter an order vacating and setting aside so much of the DeVos rules as violate state or federal law;

4. Enter an order declaring that Defendants have violated the APA;

5. Enter an order declaring all or parts of the DeVos rules as unlawful;

6.  Enter an order declaring all or parts of the DeVos rules as discriminatory;

7. Pursuant to Federal Rule of Civil Procedure 65(b)(2), set an expedited hearing within fourteen days to determine whether a temporary restraining order should issue;

8. Enter a temporary restraining order and permanent injunction;

9. Award Plaintiffs their reasonable costs and attorneys' fees;

10. Grant such further and additional relief as this Court may deem just and proper.

Respectfully submitted,

The Plaintiffs,
Jane Doe, Mary Doe,
and Susan Doe,

By their attorney,

/s/ Wendy Murphy

Wendy Murphy
154 Stuart Street
Boston, MA 02116
wmurphy@nesl.edu
617-422-7410
BBO#550455