**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

EQUAL MEANS EQUAL,
JANE DOE,
MARY DOE, and
SUSAN DOE,

                Plaintiffs,

     v.

DEPARTMENT OF EDUCATION and
BETSY DEVOS,

                Defendants.

No. 1:17cv12043-MLW

**DEFENDANTS' MEMORANDUM OF REASONS
IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Background ............................................................................................................ 2

    I.    Statutory and Regulatory Background ........................................................ 2

    II.   OCR Guidance Documents ......................................................................... 3

    III.  The Parties .................................................................................................. 5

Legal Standard ...................................................................................................... 6

Argument ............................................................................................................... 7

    I.    Equal Means Equal Lacks Standing. .......................................................... 8

        A.    Equal Means Equal Lacks Organizational Standing. .................................. 9

        B.    Equal Means Equal Lacks Associational Standing. .................................. 10

    II.   The Individual Plaintiffs Lack Standing. .................................................. 13

        A.    The Individual Plaintiffs Have Not Established Injury in Fact. ................ 13

        B.    The Individual Plaintiffs Have Not Established Causation. ...................... 14

        C.    The Individual Plaintiffs Have Not Established Redressability. ............... 16

    III.  Plaintiffs Cannot Sue Defendants Pursuant to the APA Because There Is an Adequate Alternative Remedy against Their Schools ............................................................. 17

    IV.  Plaintiffs' State Law Claims Should Be Dismissed Because Defendants Are Immune from Suit. ................................................................................................................ 20

Conclusion .......................................................................................................... 20

Certificate of Service .......................................................................................... 21

## INTRODUCTION

This motion to dismiss focuses on four plaintiffs: Equal Means Equal, "a national non-profit organization that advocates for sex/gender equality and fully equal rights for women"; two students who filed complaints with the U.S. Department of Education (ED), Office for Civil Rights (OCR); and a student who filed a complaint in state court. They challenge a September 2017 OCR document titled *Q&A on Campus Sexual Misconduct* (2017 *Q&A*),[1] Compl. ¶¶ 46–62, ECF No. 1, which they allege violates the Administrative Procedure Act (APA), Title IX of the Education Amendments of 1972 (Title IX), the First Amendment to the U.S. Constitution, the Massachusetts Equal Rights Act, and the Massachusetts Constitution. *Id.* ¶¶ 71–137.

Defendants, ED and Betsy DeVos, in her official capacity as Secretary of Education, respectfully move to dismiss the Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure because Plaintiffs lack standing and have failed to state a claim upon which relief may be granted. As a threshold matter, Equal Means Equal has failed to establish standing either on its own behalf or on behalf of its members. The alleged injuries of the individual plaintiffs are, moreover, far too speculative to amount to (A) an injury in fact (B) caused by Defendants and (C) redressable by the Court. For these reasons alone, the Complaint should be dismissed in its entirety. However, even if the Court were to hold that Plaintiffs had standing, Plaintiffs have failed to state an APA claim because they have another adequate remedy against the schools at which their alleged injuries took place. The availability of such a remedy precludes suit pursuant to the APA, *see* 5 U.S.C. § 704, so Counts I to V should be dismissed. Finally, Defendants are immune from suit brought pursuant to the Massachusetts Constitution and Equal Rights Act, so Counts

---

[1] Although the Complaint refers to only the 2017 *Q&A*, that document accompanied a Dear Colleague Letter (2017 DCL), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

VIII and IX should be dismissed too.

For these reasons, as well as those set forth herein, Plaintiffs' Complaint must be dismissed.

## BACKGROUND

### I.     Statutory and Regulatory Background

Subject to certain exceptions not relevant here, Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). There are two mechanisms for ensuring compliance with Title IX's nondiscrimination mandate. First, individuals injured by discriminatory practices can sue recipients of federal funds (recipients) directly. *See Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979). Second, ED is authorized to "issue[] rules, regulations, and orders of general applicability" to effectuate Title IX, which includes initiating proceedings to terminate federal financial assistance if voluntary compliance cannot be secured, and empowered to enforce compliance by any other means authorized by law. 20 U.S.C. § 1682.

In 1975, ED's predecessor, the U.S. Department of Health, Education, and Welfare (HEW), promulgated, and President Ford approved, regulations to effectuate Title IX. *Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving or Benefiting From Federal Financial Assistance*, 40 Fed. Reg. 24,128 (June 4, 1975).[2] Those regulations remain in effect today, subject to amendments not relevant here. *See* 34 C.F.R. pt. 106. The regulations, among other things, require each recipient to "adopt and publish grievance procedures for prompt and equitable resolution of student and employee complaints alleging any action which would be

---

[2] HEW's Title IX functions were transferred to ED in 1979, leading to recodification of the regulations. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 509, 516 nn.4–5 (1982).

prohibited by this part." *Id.* § 106.8(b).

## II.    OCR Guidance Documents

Since the adoption of the aforementioned regulations, OCR, a principal office of ED that "enforces several Federal civil rights laws that prohibit discrimination in programs or activities that receive federal financial assistance from the Department of Education," *About OCR*, ED, www.ed.gov/ocr/aboutocr.html (last visited Feb. 7, 2018), has issued a number of guidance documents regarding its enforcement of Title IX. Several of these documents have addressed how Title IX and ED's implementing regulations apply to sexual harassment, which courts have recognized as a form of discrimination proscribed by Title IX. *See, e.g.*, *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998).

In 2001, OCR replaced prior issued guidance on Title IX and sexual harassment to account for intervening Supreme Court decisions, including *Davis*, which established that recipients may violate Title IX if they fail to exercise their authority to take remedial action in cases of student-on-student sexual harassment, including sexual assault. *See Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* i–ii (Jan. 2001), www.ed.gov/ocr/docs/shguide.pdf (2001 Guidance); *Davis*, 526 U.S. at 638–54. Although OCR's focus was on sexual harassment more broadly, the 2001 Guidance contemplated that cases of sexual assault would proceed through schools' Title IX grievance procedures. *See* 2001 Guidance at 16, 21 (specifically addressing schools' responses to allegations of sexual assault); *see also* Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. at 12,043, 12,045 (Mar. 13, 1997).

On April 4, 2011, OCR issued a Dear Colleague Letter (2011 DCL) to "supplement[] the

*2001 Guidance* by providing additional guidance and practical examples regarding the Title IX requirements as they relate to sexual violence." 2011 DCL at 2, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. The 2011 DCL discussed a recipient's duty to respond to reports of sexual harassment, including sexual violence. The 2011 DCL explained that OCR interpreted the regulation promulgated at 34 C.F.R. § 106.8(b) to require that schools use a preponderance of the evidence standard in their procedures for resolving Title IX complaints. 2011 DCL at 10–11 & n.26.

On April 29, 2014, OCR issued another guidance document to further clarify the legal requirements and guidance articulated in the 2001 Guidance and 2011 DCL. *See* Questions and Answers on Title IX and Sexual Violence (2014 *Q&A*), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf. That document stated, among other things, that a recipient's grievance procedures must apply a preponderance of the evidence standard in resolving complaints. *Id.* at 13. It also stated that grievance procedures must include "adequate definitions of sexual harassment (which includes sexual violence) and an explanation as to when such conduct creates a hostile environment)." *Id.*

On September 22, 2017, OCR issued a DCL that withdrew "the statements of policy and guidance reflected in" the 2011 DCL and the 2014 *Q&A* on Title IX and Sexual Violence. 2017 DCL at 1. And, in order to "provide information about how OCR will assess a school's compliance with Title IX" before ED engages "in rulemaking on the topic of schools' Title IX responsibilities concerning complaints of sexual misconduct," OCR issued the 2017 *Q&A* contemporaneously with the 2017 DCL. *Id.*; 2017 *Q&A*, at 1. The portions of the 2017 *Q&A* that Plaintiffs appear to challenge concern the "procedures [that OCR believes] a school should follow to adjudicate a finding of responsibility for sexual misconduct." 2017 *Q&A*, at 5; Compl. ¶¶ 26–36. In that section,

OCR stated that an investigator or decision maker's "findings of fact and conclusions should be reached by applying either a preponderance of the evidence standard or a clear and convincing evidence standard." 2017 *Q&A*, at 5. The 2017 *Q&A* noted that it would "continue to rely" on earlier guidance documents emphasizing that sexual harassment is prohibited by Title IX. *Id.*

### III.    The Parties

Plaintiffs fall into two categories: Equal Means Equal, a nonprofit organization, and Jane Doe, Mary Doe, and Susan Doe, current and former students.

Equal Means Equal states that it "is a national non-profit organization that advocates for sex/gender equality and fully equal rights for women" whose "involvement in this litigation is intended to represent the multitude of individuals at risk for suffering harms based on sex, who now suffer a First Amendment chilling effect from the [2017 *Q&A*], and will decline to report or seek redress on campus for fear their rights under Title IX will not be fully enforced." Compl. ¶ 46; *see also id.* ¶ 49 (alleging that it "actively engages in advocacy and educational services related to women's equality under the law"). Equal Means Equal claims to have "over twenty-thousand active supporters, a significant percentage of whom are students or others protected by Title IX, who advocate for women's equality and the fully equal treatment of women in society." *Id.* ¶ 49. It does not, however, name or identify any such supporter.

Jane Doe and Susan Doe are "complainant[s] in an ongoing federal investigation" by OCR of Stonehill College and the School of the Art Institute of Chicago (SAIC), respectively. *Id.* ¶¶ 51, 59. Jane Doe's claims against Stonehill College "include improper application of the preponderance of evidence rule, use of criminal law standards, and separate, different, and unequal treatment based on sex." *Id.* ¶ 51. Susan Doe's claims against SAIC allegedly arose "out of numerous instances of extensive sexual misconduct perpetrated by an SAIC employee who was

also her direct advisor." *Id.* ¶ 59. Her claims against SAIC "include separate, different, and unequal treatment based on sex." *Id.* Both Jane Doe and Susan Doe claim that "[i]f the matter against [their schools] is resolved in favor of [the schools] because of the [2017 *Q&A*], [their] rights under Title IX will have been violated." *See id.* ¶¶ 53, 61. To date, Jane Doe and Susan Doe's investigations remain open.

Mary Doe brought a suit in Suffolk County Superior Court, No. 1684-CV-03765, against her alma mater, Boston University (BU). In the underlying suit, she alleges that BU "violated her rights under Massachusetts General Laws, chapter 93, § 102, and under Part 1, Article I of the Massachusetts Constitution (Equal Protection Clause) by, *inter alia*, not complying with Title IX." *Id.* ¶ 56. She claims in this Complaint that "[i]f the Title IX related claim against Boston University is resolved in favor of Boston University because of the [2017 *Q&A*], [her] rights under Title IX will have been violated." *Id.* ¶ 57. To date, her lawsuit remains open.

## LEGAL STANDARD

"The proper vehicle for challenging a court's subject-matter jurisdiction," such as whether a plaintiff has standing, "is Federal Rule of Civil Procedure 12(b)(1)." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001); *United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007). Although Rule 12(b)(1) permits jurisdictional fact-finding in some circumstances, *see Valentin*, 254 F.3d at 363–64, there is no need for such fact-finding here because Defendants bring a sufficiency challenge (i.e., challenging the Complaint on its face), *see id.* at 363. Thus, the district court "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency." *Id.* at 363. "In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw

all reasonable inferences from them in her favor, and dispose of the challenge accordingly." *Id.*

By contrast, the proper vehicle to contest whether a complaint provided "enough facts to state a claim to relief that is plausible on its face" is Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As with a sufficiency challenge brought pursuant to Rule 12(b)(1), courts assume "that all of the complaint's allegations are true." *Id.* at 555. However, this assumption does not excuse a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir.2005)).

## ARGUMENT

"The judicial Power of the United States" is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. To fall within this constitutional delineation, a plaintiff must rise above "the 'irreducible constitutional minimum' of standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In other words, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Each element must be present in order for standing to exist, and "[t]he party invoking federal jurisdiction bears the burden of establishing these elements. *Defs. of Wildlife*, 504 U.S. at 561.

"It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quoting *Grace v. Am. Cent. Ins. Co. of St. Louis*, 109

U.S. 278, 284 (1883); *Mansfield, C & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). At the pleading stage, the plaintiff bears the burden to "'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). The standing inquiry is "especially rigorous" where, as here, "reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997)).

Plaintiffs can be divided into two categories with respect to standing: Equal Means Equal, which alleges organizational and associational standing, and the individual plaintiffs, who allege personal injury. Because their standing arguments fail for different reasons, Defendants address each category in turn. Despite the different standing theories, the Complaint should be dismissed in its entirety because no plaintiff has established standing.[3]

## I.   Equal Means Equal Lacks Standing.

"An association or organization can establish an injury-in-fact through either of two theories, appropriately called 'associational standing' and 'organizational standing.'" *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017); *Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45, 50 (D. Mass. 1993) (distinguishing an organization's "standing to sue representatively, on behalf of its members," with "injuries the organization has itself suffered"). An entity that sues in its own right pursues an organizational standing theory, whereas an entity that sues on behalf of its members pursues an associational standing theory. *Id.* Although it is unclear whether Equal Means Equal claims to have associational

---

[3] Although "prudential limitations on standing may be relaxed in the context of First Amendment challenges," *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 47 (1st Cir. 2011), such limitations should not be relaxed here because Defendants challenge Plaintiffs' constitutional standing.

or organizational standing, *see* Compl. ¶ 49–50, it is no matter; for the reasons below, Equal Means Equal has failed to establish standing under either theory, and its claims must be dismissed.

### A.      Equal Means Equal Lacks Organizational Standing.

"In determining whether [an organization] has standing [in its own right, courts] conduct the same inquiry as in the case of an individual: Has the plaintiff '"alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction'?" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)). These types of organizational "injuries typically impair an organization's ability to achieve its corporate purpose." *Citizens to End Animal Suffering & Exploitation, Inc.*, 836 F. Supp. at 56. By contrast, "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to" confer standing. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *United States v. AVX Corp.*, 962 F.2d 108, 114 (1st Cir. 1992). Accordingly, "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).

Equal Means Equal's only allegation that would support organizational standing is that it "actively engages in advocacy and educational services related to women's equality under the law." Compl. ¶ 49.[4] This statement by itself is not enough to establish Equal Means Equal's standing. Indeed, Plaintiffs' conclusory statement is wholly insufficient to demonstrate whether and to what extent Equal Means Equal has been injured, whether there is any causal connection between the 2017 *Q&A* and that injury, and whether the Court can redress the injury. Equal Means

---

[4] Equal Means Equal's remaining standing allegations concern associational standing, which is discussed *infra*.

Equal has done no more than the organizations in *Eastern Kentucky Welfare Rights Organization*, "which described themselves as dedicated to promoting access of the poor to health services." 426 U.S. at 39–40. Just as those organizations "could not establish their standing simply on the basis of that goal," *id.* at 40, Equal Means Equal also cannot establish standing simply on the basis of its role in providing "advocacy and educational services related to women's equality under the law," Compl. ¶ 49. Equal Means Equal's Complaint utterly fails to set forth any allegations as to how the 2017 *Q&A* has "perceptibly impaired" the organization's ability to engage in such advocacy and services, whatever they may be. *See Havens Realty Corp.*, 455 U.S. at 379. Federal courts do not sit to air arguments "at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process." *Sierra Club*, 405 U.S. at 740. Because this is all that Equal Means Equal's Complaint seeks to have the Court do, Equal Means Equal lacks organizational standing.

## B.    Equal Means Equal Lacks Associational Standing.

Equal Means Equal lacks associational standing too. "Ordinarily, an injured party 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Nat'l Ass'n of Gov't Employees v. Mulligan*, 914 F. Supp. 2d 10, 11 (D. Mass. 2012) (quoting *Warth*, 422 U.S. at 499). Nevertheless, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). At the pleading stage, "the association must, at the very least, 'identify [a] member [ ] who ha[s] suffered the requisite harm.'" *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).

Equal Means Equal alleges that it has "organizational standing," pointing to its "over twenty-thousand active supporters, a significant percentage of whom are students or others protected by Title IX, who advocate for women's equality and the fully equal treatment of women in society." Compl. ¶ 49. It also alleges that "[t]he chilling effect injury endured by Equal Means Equal's members and the class of people subjected to sex-based harms is directly attributable to the [2017 *Q&A*]." *Id.* ¶ 50. Neither of these statements identifies a specific member who has suffered an injury sufficient to confer standing. *See Draper*, 827 F.3d at 3. For this reason alone, Equal Means Equal has not established associational standing.[5]

Equal Means Equal also fails to establish associational standing for another reason: its relationship with its supporters is too loose to confer associational standing. Although an organization may clearly bring suit on behalf of its *members*, *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977), an organization may not necessarily be able to bring suit on behalf of its *supporters*, *see Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002). To test whether an organization may bring suit on behalf of individuals other than members, the Supreme Court has considered three factors: (1) whether the organization serves a specific community "which is the primary beneficiary of its activities, including the prosecution of this kind of litigation"; (2) whether the represented individuals "possess all of the indicia of membership in an organization" (e.g., whether they elect organization leadership, whether they alone finance the organization's activities); and (3) whether the organization's interests "may be adversely affected by the outcome of this litigation." *See Wash. State Apple Advert. Comm'n*, 432

---

[5] Even if the Complaint had identified specific persons, the chilling effect it alleges—declining to "seek redress" based on a speculative "fear their rights under Title IX will not be fully enforced," Compl. ¶ 46—would not establish standing. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Amnesty Int'l USA*, 568 U.S. at 416.

U.S. at 345.

In applying these principles to the Complaint's description of Equal Means Equal's status as an advocacy organization, it is clear Equal Means Equal cannot associate itself with the claims of its "supporters" to establish standing. First, with its broadly defined mission as "a national non-profit organization that advocates for sex/gender equality and fully equal rights for women," Compl. ¶ 46, Equal Means Equal "serves no discrete, stable group of persons with a definable set of common interests." *See Am. Legal Found. v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987). Just as "a 'media watchdog' . . . could, consistent with this 'institutional commitment,' purport to serve all who read newspapers, watch television, or listen to the radio," *id.*, so too Equal Means Equal purports "to represent the multitude of individuals at risk for suffering harm based on sex." Compl. ¶ 46. Such an "open-ended" constituency, *see Am. Legal Found.*, 808 F.2d at 90, is a far cry from the "specialized segment" of a community that confers associational standing, *see Wash. State Apple Advert. Comm'n*, 432 U.S. at 344.

Second, and crucially, Equal Means Equal's "relationship to its 'supporters' bears none of the indicia of a traditional membership organization discussed in [*Washington State Apple Advertising Commission*]." *See Am. Legal Found.*, 808 F.2d at 90. The Complaint provides no basis to determine whether Equal Means Equal supporters "play any role in selecting [Equal Means Equal's] leadership, guiding [Equal Means Equal's] activities, or financing those activities." *See id.*; *Fund Democracy, LLC*, 278 F.3d at 26. Fundamentally, the Complaint does not explain what, if any, role these supporters play in the organization. Without a clear description of these supporters, Equal Means Equal cannot claim associational standing on their behalf.

Finally, the Complaint provides "no linkage between [Equal Means Equal's] interest in the outcome of this kind of litigation and those of its supporters." *See Am. Legal Found.*, 808 F.2d at

90. Indeed, without any description of who Equal Means Equal's supporters are, there is no means by which to assess whether any such linkage even exists. It stands to reason that not all "individuals at risk for suffering harm based on sex" agree with Equal Means Equal's legal theories or would share in the relief requested in this litigation. Thus, it is plausible that Equal Means Equal "'may have reasons for instituting a suit . . . other than to assert rights of its [supporters],' and so cannot be described as '[ ] the medium through which individual[s] . . . seek to make more effective the expression of their own views.'" *Id.* (quoting *Telecomms. Research & Action Ctr. v. Allnet Commc'n Servs., Inc.*, 806 F.2d 1093, 1095–96 (D.C. Cir. 1986)).

*    *    *

Because Equal Means Equal lacks both organizational and associational standing, the Court lacks jurisdiction with respect to Equal Means Equal's claims. They should be dismissed.

## II.    The Individual Plaintiffs Lack Standing.

The remaining plaintiffs are individuals, proceeding under pseudonyms, who have filed either administrative complaints with OCR (Jane Doe and Susan Doe) or complaints in state court (Mary Doe) against schools that they attended. Under the well-established standing principles set forth above, the individual plaintiffs also lack standing.

### A.    The Individual Plaintiffs Have Not Established Injury in Fact.

"First and foremost," *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998), the individual plaintiffs have not shown that they have suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560).

The individual plaintiffs have not alleged that the 2017 *Q&A* has been applied in their cases, let alone that the guidance set forth in the 2017 *Q&A* has inured to their detriment. The

Complaint is unequivocal on this point: the individual plaintiffs claim that they *would* be injured "[*i*]*f* the matter against Stonehill College is resolved in favor of Stonehill College because of the [2017 *Q&A*]"; "[*i*]*f* the Title IX related claim against Boston University is resolved in favor of Boston University because of the [2017 *Q&A*]"; and "[*i*]*f* the matter against [SAIC] is resolved in favor of the SAIC," Compl. ¶¶ 53, 57, 61 (emphasis added). To date, Jane Doe's and Susan Doe's OCR complaints are still open. And the state court docket for Mary Doe indicates that her case remains open as well. *See Doe v. Boston Univ.*, No. 1684CV03765 (Suffolk Cty. Super. Ct. Dec. 8, 2016), https://www.masscourts.org/eservices/home.page.2. Plaintiffs' speculation constitutes the sort of "conjectural or hypothetical" allegations that cannot and do not establish standing. *See Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560).

### B.     The Individual Plaintiffs Have Not Established Causation.

Second, the individual plaintiffs have not shown that Defendants caused any alleged injury. Crucially, the individual plaintiffs have not shown causation because none of their schools' policies impose a clear and convincing standard of proof, which the 2017 *Q&A* says is a permissible alternative. Rather the schools' policies impose the preponderance of the evidence standard—the very standard of proof that Plaintiffs request and that the 2017 *Q&A* permits. *See Stonehill College Policy Manual* § 1.14, at 19 (Dec. 5, 2017), http://www.stonehill.edu/offices-services/office-of-the-general-counsel/college-policies/; *BU Procedures for the Resolution of Sexual Misconduct Complaints against Students* § XI.C, http://www.bu.edu/policies/academics/procedures-complaints-against-student-sexual-misconduct/; *SAIC Student Handbook*, at 52 (Jan. 18, 2018), http://www.saic.edu/media/saic/pdfs/gateways/studenthandbook.pdf. Thus, whether or not the 2017 *Q&A* "unlawfully permit[s] the application of a more onerous 'clear and convincing evidence' standard of proof rather than the civil rights standard of 'preponderance of the evidence,'" Compl. ¶ 10, these plaintiffs have not shown that such a recommendation has caused

them an injury in fact.

With respect to the Plaintiffs' allegations that the 2017 *Q&A* "permits the use of criminal law definitions rather than civil rights definitions," the individual plaintiffs' schools likewise apply definitions that are broader than criminal law definitions. *See* Stonehill College Policy Manual § 1.14, at 4 n.1 ("The definitions in this policy may differ from those used in the civil or criminal laws of the Commonwealth of Massachusetts"); *BU Sexual Misconduct/Title IX Policy* § II (Jan. 1, 2015) ("'Sexual misconduct' is a broad, non-legal term that encompasses a wide range of behaviors, including but not limited to, sexual harassment, sex/gender discrimination, sexual assault, rape, acquaintance rape, stalking, and relationship violence (including dating and domestic violence)."),  http://www.bu.edu/policies/employment/sexual-misconducttitle-ix-policy/;  *SAIC Student Handbook*, at 42–44 (defining terms such as *sexual assault* and *affirmative consent* without reference criminal law). Most importantly, the 2017 *Q&A* does not recommend that recipients apply criminal definitions. Therefore, were a recipient to apply criminal definitions, Plaintiffs have not shown that such application was caused by Defendants.

Third, and with respect to Mary Doe in particular, it is chronologically impossible to conclude that the 2017 *Q&A* could have caused BU to adopt the procedures applied in her case. BU issued the documents that contain the allegedly unlawful procedures on January 1, 2015, over two years before ED issued the 2017 *Q&A*. *See Sexual Misconduct/Title IX Policy*; *Procedures for the Resolution of Sexual Misconduct Complaints against Students*. It is a commonsense proposition that a document issued by OCR in 2017 could not have affected the 2015 procedures that applied to Mary Doe. *See Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410, 1412 (D.C. Cir. 1998) (holding that a federal agency's decision "could not have caused" an injury that was attributable to a breach of contract that occurred before the agency's decision).

### C.   The Individual Plaintiffs Have Not Established Redressability.

Last, the individual plaintiffs have not shown that the Court could redress any alleged injury. "When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction— and perhaps on the response of others as well." *Defs. of Wildlife*, 504 U.S. at 562. "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)).

All of the individual plaintiffs' alleged injuries arise from the government's allegedly unlawful regulation of someone else: Stonehill College, BU, and SAIC. Redressability is thus especially tenuous here because setting aside the 2017 *Q&A* may not—and indeed likely would not—change the practices of these schools. *See COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1223 n.11 (10th Cir. 2016) (holding that a challenge to a state Board's educational Standards would not redress plaintiffs' injury because "schools may incorporate the Standards . . . regardless of whether the Board has officially adopted them"); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 933, 936–45 (D.C. Cir. 2004) (holding that groups representing college wrestling coaches and athletes lacked standing to challenge a 1996 Dear Colleague Letter in which OCR clarified its interpretation of Title IX and ED's regulations because a decision in the plaintiffs' favor would not likely result in schools restoring or preserving wrestling programs).

In the first place, the 2017 *Q&A* does not require schools to change their existing policies. Moreover, these schools are subject to Title IX and ED's regulations, including the requirement that they maintain "prompt and equitable" grievance procedures. 34 C.F.R. § 106.8(b). There is thus little likelihood that setting aside the 2017 *Q&A* would lead schools to change their current

grievance procedures. In fact, with respect to some of the plaintiffs, state law separately requires their schools to adopt a preponderance of the evidence standard. *See* 110 Ill. Comp. Stat. 155/25(b)(5) (West 2014) ("The individual or individuals resolving a complaint shall use a preponderance of the evidence standard to determine whether the alleged violation of the comprehensive policy occurred."); *see also* Shira Schoenberg, *Massachusetts Senate Passes Bill Strengthening Campus Sexual Assault Policies*, Masslive.com (Nov. 2, 2017), http:// s.masslive.com/ONjNrxB (describing similar proposed legislation in Massachusetts).

Redressability is even more tenuous with respect to Mary Doe, who appears to claim that a third party (the Suffolk County Superior Court) would injure her in relying on the 2017 DCL and *Q&A* to adjudicate her claim. *See* Compl. ¶ 57. Courts have expressed particular reluctance "to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Amnesty Int'l USA*, 568 U.S. at 413. The Court should be no less reluctant here. There is no telling how the superior court will resolve Mary Doe's complaint. Indeed, it is entirely plausible that the superior court would resolve her complaint without reference to the challenged documents whatsoever.

For these reasons, a judgment against Defendants would not redress the individual plaintiffs' alleged injury. This provides an independent basis for holding that they lack standing.

\*      \*      \*

The individual plaintiffs have not shown that they suffered an injury in fact, caused by Defendants, and redressable by this Court. Therefore, all of their claims must be dismissed for lack of standing.

### III.   Plaintiffs Cannot Sue Defendants Pursuant to the APA Because There Is an Adequate Alternative Remedy against Their Schools.

Because the Complaint fails to state a claim against Defendants under the APA, Plaintiffs'

APA claims are subject to dismissal pursuant to Rule 12(b)(6). With certain exceptions not relevant here, the APA authorizes judicial review of "[a]gency action made reviewable by statute" and "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (2012). Setting aside the issue of whether the 2017 *Q&A* is a "final agency action," each of the individual plaintiffs has an "adequate remedy in a court" against the plaintiffs' schools: Mary Doe's suit against BU demonstrates this. Their claims against Defendants should therefore be dismissed even if the Court were to hold that they have standing.

Where, as here, a plaintiff alleges an injury by a nonfederal entity's violation of federal law in part because of how a federal agency administers that law, courts have held that the availability of a private right of action against the nonfederal entity constitutes an "other adequate remedy" that bars the plaintiff from suing the federal agency under the APA. *See, e.g.*, *Turner v. Sec'y of HUD*, 449 F.3d 536, 539–41 (3d Cir. 2006) (private right of action against landlord under the Fair Housing Act precluded an APA challenge to the Department of Housing and Urban Development's processing of the plaintiff's discrimination complaint); *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 484, 486 (D.C. Cir. 1993) (private right of action against schools under Title VI of the Civil Rights Act of 1964 precluded a suit under the APA seeking to compel ED to adopt and enforce regulations prohibiting schools from offering scholarships only to minority students); *Gillis v. HHS*, 759 F.2d 565, 575–78 (6th Cir. 1985) (private right of action against hospitals to enforce the Hill-Burton Act precluded an APA challenge to an agency's alleged failure to monitor and enforce hospitals' compliance).

The case law establishes that a suit against a nonfederal entity may preclude an APA claim against the federal government whether or not the plaintiff may ultimately prevail against the nonfederal entity. *See, e.g.*, *Turner*, 449 F.3d at 541 ("[A]nother remedy is not inadequate merely

because the complainant cannot pursue it successfully."). Moreover, an APA challenge to federal agency action is unavailable "where a plaintiff's *injury* may be remedied in another action, even if that remedy would have no effect upon the challenged agency action." *Coker v. Sullivan*, 902 F.2d 84, 90 n.5 (D.C. Cir. 1990); *see also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (Ginsburg, J.) (concluding that "situation-specific litigation affords an adequate, even if imperfect, remedy" when plaintiffs allege systemic enforcement deficiencies at the federal level).

The D.C. Circuit's decision in *National Wrestling Coaches Association v. Department of Education* is instructive. The plaintiffs in that case sought to challenge a DCL in which OCR clarified its interpretation of Title IX and ED regulations as they applied to intercollegiate athletics, alleging that OCR's policies caused schools to eliminate or cut their men's wrestling programs. *See* 366 F.3d at 933–36. In addition to deciding that the plaintiffs lacked standing, the panel held that "the availability of a private cause of action directly against universities that discriminate in violation of Title IX" constituted an adequate remedy that barred the plaintiffs' APA claim against ED. *Id.* at 945–48. In so holding, the court noted that "challenges to the lawfulness of the Department's policies . . . may be aired in a suit against a university, to the extent that the defendant university attempts to justify its actions by reference to those policies." *Id.* at 947; *see also id.* (collecting cases involving nonfederal defendants in which "parties have had the opportunity to litigate the propriety of the Department's Three-Part Test under the Constitution, Title IX, the 1975 Regulations, and principles of administrative law"). The panel's holding was later endorsed by seven judges in a *per curiam* statement concerning the denial of rehearing *en banc*. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 383 F.3d 1047, 1048 (D.C. Cir. 2004).

The individual plaintiffs here are in all relevant respects similarly situated to the plaintiffs

in *National Wrestling Coaches Association*. They allege that their schools might adopt policies that are consistent with the allegedly unlawful 2017 *Q&A*, which would result in discrimination against them in violation of Title IX. *Cf. id.* at 1048. Consistent with the decision in *National Wrestling Coaches Association*, actions against the schools provide an alternative adequate remedy, and it is a remedy that at least Mary Doe is actively pursuing. Therefore, Plaintiffs have failed to state a claim against Defendants.

**IV.    Plaintiffs' State Law Claims Should Be Dismissed Because Defendants Are Immune from Suit.**

Finally, Plaintiffs allege that Defendants have violated the Massachusetts Constitution and Equal Rights Act. Compl. ¶¶ 126–37. "Absent a waiver," however, "sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The federal government has not waived its sovereign immunity from suits brought pursuant to the Massachusetts Constitution and Equal Rights Act. Therefore, the Court lacks jurisdiction over Counts VIII and IX of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss the Complaint.


Dated: February 27, 2018                          Respectfully Submitted,

                                                  CHAD A. READLER
                                                  Acting Assistant Attorney General

                                                  ANDREW E. LELLING
                                                  United States Attorney

                                                  CARLOTTA P. WELLS
                                                  Assistant Branch Director
                                                  Civil Division

/s/ *Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Rm. 7109
Washington, DC 20530
Tel: (202) 532-4252
Fax: (202) 616-8470
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel

Wendy J. Murphy by the Electronic Case Filing system on February 27, 2018.

/s/ *Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO