# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL MEANS EQUAL,<br>JANE DOE,<br>MARY DOE,<br>SUSAN DOE,<br>THE NATIONAL COALITION AGAINST<br>VIOLENT ATHLETES,<br>and similarly situated others | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs,<br>v. | )<br>)<br>) |
| | )<br>)<br>)<br>)<br>) |
| UNITED STATES DEPARTMENT of<br>EDUCATION,<br>and<br>BETSY DEVOS, in her official capacity as<br>Secretary of Education, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Case No.1:17cv12043-MLW

**MEMORANDUM OF REASONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

LEAVE TO FILE GRANTED MAY 30, 2019

## TABLE OF CONTENTS

I.      INTRODUCTION ………………………………………………………..…1

II.     LEGAL STANDARD ………………………….…………………………....2

III.    FACTS ……………………………………………………………………...3

   A. Title IX ……………………………………………………………………3

   B. The DeVos Rules ……………………………………………………….6

   C. Massachusetts Law …………..……………………………………….9

   D. Facts Related to the Class …………………..……………………….9

   E. The Organizational Plaintiffs …………………………….…………11

   F. The Individual Plaintiffs ………………………………………….…14

IV. ARGUMENT……………………………………………………..….16

   A. Plaintiffs Have Standing ……………………………………...………16

               i.    *Injury to all women* ……………………...…………………...16

               ii.   *Injury to Equal Means Equal* ………………..……………….18

               iii.  *Injury to NCAVA* ……………………...…………………...20

               iv.   *Injury to Individual Plaintiffs* ………………...……………22

                     *Jane Doe* ……………………………………...…………22

                     *Mary Doe* ………………………………………..……...23

                     *Susan Doe* ……………………………...…………….…25

   B.  Plaintiffs Have Adequately Pled Claims Under the APA ………………………29

               i.    *The DeVos Rules Are Final Agency Action* …………...……..…..29

               ii.   *Plaintiffs have no adequate alternative remedy* …………….…...34

   C.   Defendants Exceeded Their Authority and the
        DeVos Rules Constitute Legislative Rules ………..…………….………35

**D.**     **The DeVos Rules Are Discriminatory** …………………………...………...36

**E.**     **Plaintiffs Assert a Valid First Amendment Claim** …………………….....37

**F.**     **Plaintiffs Assert a Valid Title IX Claim** …………………………...…... 38

**G.**     **Plaintiffs Assert a Valid Spending Clause Claim** …………………..……. 39

**H.**     **Plaintiffs Assert a Valid Tenth Amendment Claim** ………………….....40

**V.   CONCLUSION** ………………………………………………….…….....41

## **Table of Authorities**

### **Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ……………………....…………..5

*Alexander v. Choate,* 469 U.S. 287 (1985) ……………………………………………….3

*ACLU of N.M. v. Santillanes*, 546 F.3d 1313 (10th Cir. 2008) ……………………...18, 32

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ………………………………………………...2

*Ass'n of Data Processing Service Orgs. Inc. v. Camp*, 397 U.S. 150 (1970) ………….. 27

*Astra USA v. Santa Clara County, Cal.,* 563 U.S. 110 (2011) …………………………… 34

*Auer v. Robbins*, 519 U.S. 452 (1977) …………………………………………………… 23

*Barlow v. Collins,* 397 U.S. 159 (1970) ………………………………………………… 28

*Berner v. Delahanty,* 129 F.3d 20 (1st Cir. 1997) ……………………………………... 25

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) …………………………………………… 36

*Cannon v. University of Chicago,* 441 U.S. 677 (1979) …………………..………..30, 37, 38

*Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984) …...23

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ……………………………………….....35

*City of Lakewood v. Plain Dealer Publishing Co*., 486 U.S. 750 (1988) ………………26

*City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702 (1978) …….33

*Cobb v. Dept. of Education*, 487 F.Supp. 1049 (D. Minn. 2007) ………………………37

*Cohen v. Brown Univ*., 101 F.3d 155 (1ᵗ Cir. 1996)..…………………………………..32

*Coll. Dental Surgeons P.R. v. Conn. Gen. Life Ins. Co*., 585 F.3d 33 (1st Cir. 2009) …. 20

*Commonwealth v. King*, 374 Mass. 5 (1977) …………………………………………….39

*Davis v. Monroe*, 526 U.S. 629 (1999) …………………………………………………..4, 29

*Doe v. Brandeis Univ.*, 177 F.3d 561 (D. Mass. 2016) …………………………………8

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) …………………………………………20

*Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1 (D.D.C. 2015) ……8

*Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016) ……………………………………………18

*Elrod v. Burns*, 427 U.S. 347 (1976) ……………………………………………………..26

*Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2009) …………………………36

*Friends of the Earth v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000) …19

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ……………………..29, 33

*Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40 (1st Cir. 2012) …………………2

*Garcia-Catalan v. U.S.*, 734 F.3d 100 (1st Cir. 2013) …………………………………….2

*Glycine & More, Inc. v. United States*, 880 F.3d 1335, ---- (Fed. Cir. 2018) …………35

*Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582 (1983) ………………..28

*Gautreaux v. Romney*, 448 F.2d 731 (7th Cir. 1971) …………………………………..38

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ………………..18-19

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) ……………32

*International Union v. Brock*, 477 U.S. 274 (1986) ……………………………………..19

*Kerin v. Titeflex Corp.*, 770 F.3d 978 (1st Cir. 2014) …………………………………….2

*Kollaritsch et al., v. Michigan State University Board of Trustees, et al.*,
    1:15-cv-01191-PLM-PJG, United States District Court,
    Western District of Michigan ……………………………………………14, 24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) …………………………………...15

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) ………………………………...26

*Montgomery Improvement Ass'n, Inc. v. U.S. Dept. of Housing and Urban Dev.*,
    645 F.2d 291 (5th Cir. 1981) …………………………………………………37

*National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) ……38

*National Wrestling Coaches Ass'n v. Department of Education*,
     366 F.3d 930 (D.C. Cir. 2004)……………………………………………33

*Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) ………………….36

*Nisselson v. Lernout*, 469 F.3d 143 (1st Cir. 2006) …………………………….16

*Playboy Enterprises v. Public Service Comm'n of Puerto Rico*,
     906 F.2d 25 (1st Cir. 1990) ……………………………………………...18

*Professional Real Estate Investors v. Columbia Pictures Indus. Inc.*, ……………26

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) ……………………………………26

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) .18, 32

*Sexual Minorities Uganda v. Scott Lively*,--- F.Supp. 2d --- (D.Mass.2013) ………..20

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) …………………………………….23

*South Dakota v. Dole*, 483 U.S. 203 (1987) ………………………………………38

*Students for Fair Admissions, Inc. v. Harvard*, C.A. No. 1:14-cv-14176-ADB …….19

*Survjustice v. DeVos et al.*, Civil Action No. 3:18-cv-00535,
     U.S. Dist. Court, N.Dist Calif., San Francisco Div. …………………………27

*SurvJustice Inc.*, *v. DeVos*, No. 18-cv-00535-JSC,
     2018 WL 477074112 (N.D. Cal. Oct. 1, 2018) ……………………………..29

*Thinkjet Ink Information Resources, Inc. v. Microsystems, Inc.*,
     368 F.3d 1053 (9th Cir. 2004) …………………………………………….28

*Thompson v. North American Stainless*, 131 S. Ct. 863 (2011) ……………………27

*Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972) ………..25

*UAW v. Brock*, 477 U.S. 274 (1986) …………………………………………...19

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S.Ct. 1807 (2016) ………………..29

*United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377 (1st Cir. 2011) .2

*United States v. Florida East Coast Railway Co.*, 410 U.S. 224 (1973) …………….25

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
   412 U.S. 669 (1990) …………………………………………….…….19, 21

*Van Wagner Bos., LLC v. Davey*, 770 F.3d 33 (1st Cir. 2014) …………………..26

*Warth v. Seldin,* 422 U.S. 490 (1975) ……………………………………2, 16, 19

*Waters v. Churchill*, 511 U.S. 661 (1994) …………………………………………26

*Wayerhaueser Co. v. Castle*, 590 F.2d 1011 (D.C. Cir. 1978) …………………..25

*Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990) ……..37

**Constitutional Provisions**

Amend. 1, United States Constitution …………………………………… 36

Article 1, § 8, United States Constitution ……………………………….... 38

**Statutes**

5 U.S.C. § 553 …………………………………………………....1, 35

5 U.S.C. § 702 ……………………………………………………...27

55 U.S.C. § 704 …………………………………………………....1

20 U.S.C., § 1681 …………………………………………………*passim*

20 U.S.C., § 1092 …………………………………………………1

42 U.S.C. § 2000 …………………………………………...3, 4, 5, 29

Massachusetts General Laws, chapter 93, § 102 …………………………8

**Regulations**

28 C.F.R. Part 54 …………………………………………………....3, 30

34 C.F.R. Part 106 ……………………………………………….*passim*

34 C.F.R. Part 668 ……………………………………….………..1, 6, 7

**Rules**

Fed. R. Civ. P.12(b)(1) ……………………………………………..2

Fed. R. Civ. P.12(b)(6) ……………………………………………..2

Fed.R. Civ.P. 15(a)(2)…………………………………………….....2

**Other Authorities**

Freyd, J. Rosenthal, M. & Smith, C., Preliminary Results from the University of Oregon Sexual Violence and Institutional Behavior Campus Survey, 2014, http://dynamic.uoregon.edu/jjf/campus/UO-campus- results-30Sept14.pdf …….9

Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*, in Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub.…………………………………………………………………..10

*Murphy, W., Krakauer's Missoula: Where Subversive Meets Verisimilitude*, 42 Journal of College and University Law, no. 2, 479 (2016) ………………..22

National Institute of Justice 1998, *Stalking in America: Findings from the National Violence Against Women Survey* …………………………………..10

National Institute of Justice & Centers for Disease Control & Prevention, *Prevalence, Incidence and Consequences of Violence Against Women Survey*, 1998 …………………………………………………...………10

National Women's Law Center, *Education & Title IX,* http://www.nwlc.org/our-issues/education-%2256-title-ix ………………………………………………4

National Women's Law Center *Press Release*, September 22, 2017, https://www.nwlc.org/press-releases/nwlc-reacts-to-education-departments-interim-rule..27, 36

RAINN Statistics on Reporting Rates, http://www.rainn.org/get-information/statistics/reporting-rates …………………………………...……..9

Sadker, & Zittleman, *Still Failing at Fairness, How Gender Bias Cheats Girls and Boys in School and What We Can Do About It*, Scribner Press 2009 …........9

SAPRO Annual Report on Sexual Assault in the Military, available at http://www.sapr.mil/public/docs/reports/FY12_DoD_SAPRO_Annual_Report_on_Sexual_Assault-VOLUME_ONE.pdf……………………….……...……9

United States Department of Education, *Letter from Russlynn Ali*, Assistant
Secretary for Civil Rights, Office for Civil Rights (October 26, 2010)……………..4

U.S. Department of Justice, Civil Rights Division, Educational Opportunities
Section and the U.S. Department of Education, Office for Civil Rights, Among
the University of Montana - Missoula, Resolution Agreement, available at
http://www.justice.gov/crt/about/edu/documents/montanaagree.pdf ……………..5

United States Department of Justice, *2003 National Crime Victimization Survey* .10

United States Department of Justice, *Violence Against Women, Bureau of Justice
Statistics*, January, 1994 ………………………………………………………..10

United States Department of Justice, *Violence by Intimates: Analysis of Data
on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*,
March, 1998 ……………...........................................................................................10

United States Department of Justice, Office of Community Oriented Policing
Services, *Acquaintance Rape of College Students*, March 28, 2002 ……………….9

United States Department of Justice, *findings letter against the
University of New Mexico*, (April 22, 2016) ………………………………...........30

United States Department of Justice, *Justice Department Announces Investigations
of the Handling of Sexual Assault Allegations by the University of Montana, the
Missoula, Mont., Police Department and the Missoula County Attorney's Office*,
Department of Justice (May 1, 2012) …………………………………………...30

United States Department of Justice, *Title IX Legal Manual*,
http://www.justice.gov/crt/about/cor/coord/ixlegal.php …………….….............16, 33

Wright & Miller, Fed. Prac. & Proc. (2d ed.) ……………………………………...19

## I.  INTRODUCTION

This action for equitable relief presents a challenge to the issuance of new rules regarding compliance with and enforcement of Title IX of the Education Amendments of 1972. The rules were issued by Defendant Department of Education (DOE) and released by the Secretary of Education, Defendant Betsy DeVos, on September 22, 2017, (DeVos Rules).[1] As authority for their issuance, Defendants rely on regulations promulgated under a law other than Title IX, known as the Campus SaVE Act. (SaVE) SaVE was enacted as an amendment to the Violence Against Women Reauthorization Act of 2013, 113 Pub. L. No. 4, 127 Stat. 54. SaVE amended § 485(f) of the Higher Education Act of 1965, 20 U.S.C. § 1092(f), commonly known as the Clery Act. (DeVos Rules, p.2, n.8). Although SaVE did not amend Title IX, regulations promulgated under SaVE, 34 C.F.R. Part 668.46, were incorporated into the DeVos Rules, which require schools to comply with SaVE when enforcing Title IX. (Comp. pp.7-8)

Plaintiffs are organizations that advocate for victims of sex discrimination, and individuals with pending Title IX OCR matters or Title IX-related civil litigation. Plaintiffs allege that the DeVos Rules violate the Administrative Procedures Act, (APA) 5 U.S.C. § 553; 5 U.S.C. § 704; Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and implementing regulations, 34 C.F.R. Part 106 et. seq., (Title IX); the First Amendment; the Commerce Clause; and the Spending Clause.

Defendants have moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12 (b)(1) on the grounds that no Plaintiff has standing to assert any claim, and pursuant to 12 (b)(6) for failure to state a claim upon which relief can be granted. Defendants'

---

[1] The DeVos Rules are attached as an exhibit to Plaintiffs' original complaint.

motion must be denied because the factual allegations set forth in the pleadings meet the plausibility standard and demonstrate Plaintiffs' right to relief on all claims.

## II.  LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(1), the court must "accept as true all well-pleaded fact[s] . . . and indulge all reasonable inferences' in the plaintiff[s'] favor." *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (citations omitted). At the pleading stage, it is presumed that "general allegations embrace those specific facts that are necessary to support the claim." *Warth v. Seldin*, 422 U.S. 490, 508 (1975).

To survive a motion to dismiss under Rule 12(b)(6) the factual allegations need only be plausible, and sufficient to support a reasonable inference that the defendant is liable for the misconduct alleged. *Garcia-Catalan v. U.S.*, 734 F.3d 100, 103 (1st Cir. 2013). The court must "accept as true all well-pleaded facts, and analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences for the plaintiff." *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citations omitted). The claim need not be probable, but only "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "'Smoking gun' proof of discrimination is rarely available, especially at the pleading stage. …" *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 49 (1st Cir. 2012). Where the complaint is inadequate, courts "should freely give" leave to amend where the interests of justice so require. Fed.R.Civ.P.15(a)(2).

III.  FACTS

A. Title IX

Title IX states that "no person shall, on the basis of sex be . . . subjected to

discrimination under any program or activity receiving federal financial assistance."  20

U.S.C., § 1681. Title IX is coextensive with Title VI[2] and Title IV of the Civil Rights Act

of 1964.[3] Title IV prohibits discrimination on the basis of sex, race, and national origin in

public schools.[4] Title IX applies to public and private schools that receive federal funds.

(Comp. pp.2-3) Long misunderstood to be primarily a sports equity rule for female

---

[2] 34 C.F.R. § 106.71 states that the procedural provisions applicable to Title VI of the Civil Rights Act (34 CFR §§ 100.6-100.11) are adopted and incorporated therein.

[3] *See Title IX Legal Manual,* THE UNITED STATES DEPARTMENT OF JUSTICE, http://www.justice.gov/crt/about/cor/coord/ixlegal.php (noting that "Congress consciously modeled Title IX on Title VI" and citing *Alexander v. Choate,* 469 U.S. 287, 294 (1985) for the proposition that because Title IX and Title VI contain parallel language, the same analytic framework should apply in the context of administrative redress proceedings because both statutes were enacted to prevent unlawful discrimination and to provide remedies for the effects of past discrimination); U.S. DEPARTMENT OF JUSTICE, findings letter against the University of New Mexico, (April 22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights laws); https://www.justice.gov/opa/file/843901/download; *Justice Department Announces Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's Office,* DEPARTMENT OF JUSTICE (May 1, 2012), http://www.justice.gov/opa/pr/2012/ May/12-crt-561.html (announcing Title IX compliance review and Title IV investigation of the University of Montana and noting, "Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of 1964 each prohibit sex discrimination, including sexual assault and sexual harassment in education programs"); *Resolution Agreement,* http://www.justice.gov/crt/about/edu/documents/ montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX are subject to the same regulations regarding "discrimination, harassment, and violence in education "on the basis of sex." 28 C.F.R. Part 54 and 34 C.F.R. Part 106). *See also* the Civil Rights Restoration Act of 1987, which made clear that substantive standards from Title VI apply with equal force to Title IX, 20 U.S.C. § 1687; 29 U.S.C. § 794, 42 U.S.C. § 2000d-4a, and 42 U.S.C. § 6101.

[4] Title IV prohibits discrimination in identified public entities, including schools and other "federally assisted programs," on the basis of *"race, color, sex, religion or national origin."* 42 U.S.C. §§ 2000c through 2000c-9; Equal Educational Opportunities Act of 1974, Title II, 20 U.S.C. §§ 1701-1758.

athletes, Title IX was modeled after Title VI of the Civil Rights Act of 1964, which

provides, "No person in the United States shall, on the ground of race, color, or national

origin, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance," 42

U.S.C. §§ 2000d - 2000d-7. Title IX uses exactly the same enabling language: "No

person in the United States shall, on the basis of sex, be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under any education program

or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

Sex discrimination must be addressed using civil rights standards and definitions.[5]

The controlling Title IX standard asks whether sex-based harm was "unwelcome," which

means that which was not requested or invited, and which an individual considered to be

"undesirable or offensive."[6]  (Comp. p.4) Discriminatory conduct covered by Title IX

includes sexual assault committed by one student against another. *Davis v. Monroe*, 526

U.S. 629 (1999).

The Title IX regulation states that "no person shall, on the basis of sex be . . .

subjected to discrimination…" 34 C.F.R. Part 106.31(a), and that a school "shall not, on

the basis of sex," . . . "treat one person differently from another in determining whether

such person satisfies any requirement of condition for the provision of such aid, benefit,

---

[5] *Letter from Russlynn Ali*, Assistant Secretary for Civil Rights, Department of Education, Office for Civil Rights (October 26, 2010) ("The label used to describe an incident (*e.g.*, bullying, hazing, teasing) does not determine how a school is obligated to respond. Rather, the nature of the conduct itself must be assessed for civil rights implications. So, for example, if the abusive behavior is on the basis of race, color, national origin, sex, or disability, and creates a hostile environment, a school is obligated to respond in accordance with the applicable federal civil rights statutes and regulations enforced by OCR."); *Education & Title IX,* NATIONAL WOMEN'S LAW CENTER, http://www.nwlc.org/our-issues/education-%2526-title-ix.
[6] http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html.

or service; provide different aid, benefits or services in a different manner; deny any person such aid, benefit, or service."[34] C.F.R. Part 106.31(b)(1-7). The Title IX regulation also states that a school shall not on the basis of sex "subject any person to separate or different rules of behavior, sanctions, *or other treatment*, or otherwise limit any person in the enjoyment of any right, privilege, advantage or opportunity." 34 C.F.R. Part 106.31(b)(1-7) (emphasis added). The Title IX regulation further states that a school "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action, which would be prohibited by Title IX. 34 C.F.R. Part 106.8(b)." Equitable redress is also mandatory under Title IV[7] and Title VI.[8] The Title IX regulation additionally states, "A school shall

---

[7]  Among the University of Montana - Missoula, the U.S. Department of Justice, Civil Rights Division, Educational Opportunities Section and the U.S. Department of Education, Office for Civil Rights, RESOLUTION AGREEMENT, available at http://www.justice.gov/crt/about/edu/documents/montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX both require "equity" and are subject to the same regulations and standards of enforcement regarding discrimination, harassment and violence in education).

[8]  *Title VI Enforcement Highlights Office for Civil Rights,* U.S. DEPARTMENT OF EDUCATION, http://www2.ed.gov/documents/press-releases/title-vi-enforcement.pdf (noting that Title VI requires schools to apply standard of "equity"); *Title IX Legal Manual,* THE UNITED STATES DEPARTMENT OF JUSTICE, http://www.justice.gov/crt/about/cor/coord/ixlegal.php; *see also* 42 U.S.C. § 2000d-7 (requiring equal treatment on behalf of all protected class categories).  In a section labeled "Civil rights remedies equalization," the statute provides that "(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of § 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], Title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."  This "Civil rights remedies equalization" mandate further states that "(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation **to the same extent** as such remedies are available for such a violation in the suit against any public or private entity other than a State." (emphasis added).

not use or distribute a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex." 34 C.F.R. Part 106.9(b)(2).

### B. The DeVos Rules

The DeVos Rules were issued on September 22, 2017 along with a Dear Colleague Letter of the same date, in which the DOE rescinded its subregulatory April 2011 Dear Colleague Letter, and April 2014 "Q and A" guidance document. (Comp. p.6)

The DeVos Rules by their terms apply only to sex-based harms including "dating violence, domestic violence, sexual assault, and stalking." (DeVos Rules, p. 1, 2) (Comp. p.6). The DeVos Rules generally require and permit separate and different treatment of sex-based harms. (Comp. pp.6-7) The DeVos Rules permit use of more onerous criminal law definitions of offenses in the response to and determination of harms covered by Title IX, while less onerous civil rights definitions are applied to harms based on race and national origin. (DeVos Rules, p. 2). (Comp. p.7) The DeVos Rules state that schools "are subject to" SaVE when "addressing allegations of dating violence, domestic violence, sexual assault, or stalking." (DeVos Rules p.2), citing 34 C.F.R. Part 668.46. SaVE, in turn, requires schools to have policies in place regarding institutional disciplinary action in cases of "dating violence, domestic violence, sexual assault and stalking" as those terms are defined in 668.46(a),9 34 C.F.R. 668.46(b)((11)(ii) and (vi).

---

[9] 34 C.F.R. 668.46(a) defines the four categories of sex-based harm: Dating violence is defined as "violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim," and includes "sexual or physical abuse or the threat of such abuse." Domestic violence is defined as "a felony or misdemeanor crime of violence committed – (A) by a current or former spouse or intimate partner of the victim; (B) By a person with whom the victim shares a child in common; (C) By a person who is cohabiting with, or has cohabited with, the victim as a spouse or intimate

A separate section of SaVE utilizes criminal law definitions from § 668.46(a), as well as "[t]he definition[s] of "dating violence," "domestic violence," "sexual assault," "stalking" and "consent," (in reference to sexual activity), "in the applicable jurisdiction." 34 C.F.R. 668.46(j)(1)(i)(B) and (C). Although described as a section about prevention policies, this part of SaVE clearly pertains to disciplinary policies because it incorporates subsection "(k)(2)," 34 C.F.R. 668.46(j)(1)(i)(F), and subsection (k)(2) addresses the policies and substantive standards schools must adopt and utilize when redressing sex-based harm. (DeVos Rules, p.3, n.11). The DeVos Rules' criminal law definitions cover the same conduct as that which is covered by Title IX, (*supra,* p.8; p.39, n.25) but require different and additional proof, beyond that which is required under Title IX.[10]

The DeVos Rules permit application of a more onerous "clear and convincing evidence" standard of proof in the redress of harms covered by Title IX, while a less onerous "preponderance of the evidence" standard is applied to harms covered by title VI, based on race and national origin. (DeVos Rules, p. 5) (Comp. pp.8-11). The DeVos Rules require that offenders of sex-based civil rights harms receive the same rights and

---

partner; (D) By a person similarly situated to a spouse of the victim under the domestic violence laws of the jurisdiction in which the crime of violence occurred, or (E) By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred." Sexual assault is defined as "[a]n offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's UCR program…" Stalking is defined as "[e]ngaging in a course of conduct directed at a specific person that would cause a reasonable person to – (A) Fear for the person's safety or the safety of others; or (B) Suffer substantial emotional distress."

[10] For example, "unwelcome" requires proof that a person "did not request or invite" the conduct complained of, and "considered it to be undesirable or offensive." http://www2.ed.gov/about/ offices/list/ocr/docs/ocrshpam.html. "Dating violence," as defined by 34 C.F.R. 668.46(a), requires proof of "violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim." Obviously, sex-based conduct considered "unwelcome" would suffice under Title IX, but would not prove "dating violence."

treatment as victims of sex-based civil rights harms. (DeVos Rules, p.5). This equality of rights between victims and offenders is not required for civil rights harms based on race or national origin. (Comp. p.7) The DeVos Rules equate civil rights harms based on sex to non-civil rights student misconduct matters.[11] (DeVos Rules, p. 7 n.19). This equalization of sex-based civil rights harms with non-civil rights matters is not required for harms based on race or national origin. (Comp. p.7) The DeVos Rules also incorporate regulations promulgated under SaVE, even though SaVE cannot modify Title IX because it amended Clery. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

Alongside less protective standards, the DeVos Rules are silent on the need for schools to comply with civil rights laws at all. Indeed, the entire DeVos Rules mention the phrase "civil rights" only when citing the title of the "Office for Civil Rights."

### C. Massachusetts Law

Massachusetts General Laws, chapter 93, § 102, the Massachusetts Equal Rights Act, guarantees females the full and equal benefit of all laws and proceedings for the security of persons …" (Comp. p.11) The Equal Protection Clause of the Massachusetts Constitution prohibits discriminatory and unequal treatment based on sex. (Massachusetts Constitution, Part 1, Article I). Claims of sex/gender discrimination under the Massachusetts Constitution are subject to strict scrutiny. *Commonwealth v. King*, 374 Mass. 5, 21 (1977). (Comp. p.11)

### D. Facts Related to the Class

One in three to one in four women are victimized by sexual assault during

---

[11] In support of this provision, the DeVos Rules cite *Doe v. Brandeis Univ.*, 177 F.3d 561, 607 (D. Mass. 2016). However, that case did not involve any Title IX claims.

college.[12] Given that approximately 916,000 women graduated from post-secondary

schools in 2009,[13] this means over 200,000 women who graduate each year experienced

sexual assault during college. By comparison, about 26,000 sexual assaults occur in the

military each year,[14] which number includes not only rape and attempted rape but also

relatively minor sexual touching not rising to the level of attempted rape.[15]

Approximately 30% of sexual assault victims in the general population file reports.[16] A

similar number of military victims file reports.[17] The number is much lower for college

victims where only 5-12% of victims file reports.[18]  (Comp. pp.11-12)

　　　　Female students in the United States have endured pervasive unequal treatment,

harassment and violence, on the basis of sex, throughout all levels of education.[19]

---

[12] https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, p.xii-xiii and 2-1 (2007); U.S.
Department of Justice Office of Community Oriented Policing Services, *Acquaintance
Rape of College Students*, March 28, 2002,
http://www.cops.usdoj.gov/pdf/e03021472.pdf;
https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf; Freyd, J. Rosenthal, M. & Smith,
C., Preliminary Results from the University of Oregon Sexual Violence and Institutional
Behavior Campus Survey, 2014, http://dynamic.uoregon.edu/jjf/campus/UO-campus-
results-30Sept14.pdf.

[13] http://www.census.gov/prod/2012pubs/p20-566.pdf.

[14] An estimated 26,000 sexual assaults occurred in all branches of the military in 2012,
SAPRO Annual Report on Sexual Assault in the Military,
http://www.sapr.mil/public/docs/reports/FY12_DoD_SAPRO_Annual_Report_on_Sexua
l_Assault-VOLUME_ONE.pdf

[15] *Id.*

[16]  RAINN Statistics on Reporting Rates, http://www.rainn.org/get-
information/statistics/reporting-rates.

[17] http://www.usccr.gov/pubs/09242013_Statutory_Enforcement_Report_
Sexual_Assault_ in_the_Military.pdf, p.8.

[18] http://www.nij.gov/publications/pages/publication-detail.aspx?ncjnumber=182369
(2001) (5%); https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, 5-22 (2007)
(12.9%).

[19] Sadker, & Zittleman, *Still Failing at Fairness, How Gender Bias Cheats Girls and
Boys in School and What We Can Do About It*, Scribner Press 2009;
www.hks.harvard.edu/centers/carr/research-publications/carr-center-working-papers-
series/caplan-and-ford-%22the-voices-of-diversity-%22.

Women, including female postsecondary students, suffer disproportionately high rates of dating violence,[20] sexual assault[21] and stalking.[22]  According to some studies, a student is more likely to be victimized by sexual assault if she attends college than if she does not.[23] (Comp. p.11-12)

### E. The Organizational Plaintiffs

Equal Means Equal (EME) is a national 501(c)(4) non-profit organization whose sole purpose is to advocate for sex/gender equality and fully equal rights for women. EME's involvement in this litigation is intended to represent EME in its own right, and the multitude of individuals who have suffered and are at risk for suffering harms based

---

[20]  Women are less likely than men to be victims of violent crimes overall, but women are 5 to 8 times more likely than men to be victimized by an intimate partner. *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*, U.S. Department of Justice, March, 1998; violence by an intimate partner accounts for about 21% of violent crime experienced by women and about 2% of the violence experienced by men.  *Id.* 92% of all domestic violence incidents are committed by men against women. *Violence Against Women, Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988).  *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*, in Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub.

[21]  Nine out of ten rape victims are female, U.S. Department of Justice, *2003 National Crime Victimization Survey;* Women aged 16-24 are four times more likely to be raped than any other population group.  Koss, M.P., *id.*

[22]  8% of women and 2% of men in the United States have been stalked at some time in their life. 78% of stalking victims identified in a survey were women, and 22 percent were men.  Thus, four out of five stalking victims are women.  By comparison, 94 percent of the stalkers identified by female victims and 60 percent of the stalkers identified by male victims were male.  Overall, 87 percent of the stalkers identified by the victims were male. National Institute of Justice 1998. *Stalking in America: Findings from the National Violence Against Women Survey*.

[23]  One in four students in the United States is victimized by rape or attempted rape during college, *see* n.1, while one in six American women is the victim of an attempted or completed rape in her lifetime. National Institute of Justice & Centers for Disease Control & Prevention. *Prevalence, Incidence and Consequences of Violence Against Women Survey*. 1998.

on sex, who will decline to report or seek redress for fear their rights under Title IX will not be fully enforced.[24] EME has over twenty-thousand active supporters, a significant percentage of whom are students or others protected by Title IX. EME actively engages in advocacy and educational services related to women's equality under the law. Plaintiffs Jane Doe and Susan Doe are associated with and supported by EME. (Comp. p.14). Since the issuance of the DeVos Rules in September 2017, EME has heard from numerous women and victims of sex-based harm that they are unlikely to report or seek redress on campus for sex-based harms for fear they will not receive equal treatment under Title IX. (Comp. p.14).

Plaintiff National Coalition Against Violent Athletes (NCAVA) is a national 501(c)(3) non-profit organization, founded in 1997, whose sole mission is to advocate for the equal treatment of victims of sex-based harms under civil rights laws, such as Title IX, and related laws. NCAVA provides legal referrals, counsel and advocacy to victims of sex-based harms. NCAVA provides services to help victims achieve justice. NCAVA also promotes awareness and education on Title IX and other laws, the prevalence of athlete-involved violence and its effect on victims, and provides related training and education programs. NCAVA participates in direct legal action to advocate for the fully equal treatment of women under Title IX. For example, NCAVA has filed complaints with the OCR at the DOE, and the NCAA, and has filed amicus briefs in Title IX cases, advocating for the fully equal treatment of women and sex-based harms under civil rights laws, such as Title IX.  (Comp. p.14-16)

NCAVA joined this case after it had an opportunity to experience the negative

---

[24] *National Women's Law Center Press* Release, September 22, 2017, https://nwlc.org/press-releases/nwlc-reacts-to-education-departments-interim-rule/.

effects of the DeVos Rules since their issuance in September 2017. NCAVA has worked

on cases since that time where, when addressing sex-based civil rights harms: schools

used criminal law definitions rather than Title IX definitions; applied a clear and

convincing evidence standard rather than Title IX's preponderance standard; subjected

sex-based harms to the same treatment as non-civil rights harms rather than civil rights

harms based on race and national origin; granted the same rights to offenders as victims;

and subjected the harms to separate and different treatment compared to harms based on

race and national origin.  (Comp. p.15)

The DeVos Rules interfere with NCAVA's daily operations and mission of

providing effective legal assistance and ensuring that victims receive fully equal

treatment in the aftermath of sex-based harm. This has required the diversion of

NCAVA's resources and has frustrated its efforts to combat the harmful effects of the

DeVos Rules because the DeVos Rules conflict with and impair and frustrate NCAVA's

organizational mission and priorities. (Comp. p.16)

The DeVos Rules have also been devastating to NCAVA's operational activities

because victims have expressed an unwillingness to report sex-based harm to campus

authorities and law enforcement officials, which prevents NCAVA from effectuating its

mission. This chilling effect has been observed by NCAVA since the issuance of the

DeVos Rules. Declines in reporting and participation in redress proceedings directly

threaten and frustrate NCAVA's mission and purpose. (Comp. p.15) The DeVos Rules

further disfavor clients of NCAVA and frustrate NCAVA's mission by subjecting sex-

based harms to different treatment, thus making findings of responsibility for sex-based

harms less likely compared to findings of responsibility for other civil rights harms.

(Comp. p.15) In particular, the DeVos Rules permit schools to use a more onerous burden of proof, and more onerous criminal law definitions, only when addressing and determining sex-based harms. This disfavors clients of NCAVA and frustrates NCAVA's mission by making findings of responsibility less likely compared to findings of responsibility for civil rights harms based on race and national origin. (Comp. p.16) The DeVos Rules also make it difficult for NCAVA to provide appropriate legal advice to clients about how schools and oversight agencies will address complaints of sex-based harm. In the aftermath of one recent incident, NCAVA spoke to an official at OCR on behalf of a victim to inquire about the agency's inadequate response. The official stated, "Due to the current administration's viewpoint, we cannot effectively investigate many of these claims." (Comp. p.16) Plaintiffs Jane Doe and Susan Doe are associated with and supported by NCAVA. (Comp. p.16)

### F. The Individual Plaintiffs

Plaintiff Jane Doe is currently involved as a complainant in an ongoing Title IX investigation (OCR case number 01-15-2216, Region I) against Stonehill College in Easton, Massachusetts. Claims alleged include improper application of the preponderance of evidence rule, use of criminal law standards, and separate, different, and unequal treatment based on sex. (Comp. pp.16-17) After the DeVos Rules were announced, and prior to the filing of this action, Jane Doe contacted the OCR office investigating her complaint and asked for an assurance that the DeVos Rules would not be used to evaluate her complaint. OCR was asked to confirm in writing that the DeVos Rules "will have no effect" on her case. OCR declined to assure Jane Doe that the DeVos Rules would not be applied in her case and stated simply that the investigation would be conducted in

accordance with Title IX and its implementing regulation, 34 C.F.R. Part 106. More

recently, on February 12, 2018, OCR acknowledged that it is currently using the DeVos

Rules in Jane Doe's case, along with the "Revised Sexual Harassment Guidance

previously issued by OCR in 2001." (Comp. p.17). Plaintiff Mary Doe is currently

involved as a plaintiff in an ongoing lawsuit in Suffolk Superior Court (Civil Action No.:

1684-CV-03765) arising out of a sexual assault Doe suffered on campus when she was a

student at Boston University. Allegations in Mary Doe's lawsuit include that Boston

University violated Title IX by using criminal law definitions to investigate and

determine her Title IX complaint, and by subjecting her Title IX complaint to separate

and different treatment compared to the treatment afforded victims of civil rights harms

based on race and national origin. (Comp. p.17) Mary Doe's rights are threatened and

violated by the DeVos Rules because courts in Title IX lawsuits have already accepted

the DeVos Rules as relevant and admissible on behalf of schools seeking to defend

themselves against allegations that they did not comply with Title IX in response to sex-

based harm. *See e.g.*, *Kollaritsch et al., v. Michigan State University Board of Trustees, et*

*al.*, 1:15-cv-01191-PLM-PJG, United States District Court, Western District of Michigan,

(court order issued 10/17/17 denying motion to strike and granting defendants leave to

file supplemental authority regarding the DeVos Rules, and describing the Rules as a

"significant change in Guidance on Title IX.") (Comp. p.17)

     Plaintiff Susan Doe is currently involved as a complainant in an ongoing Title IX

investigation (OCR case number: 5-17-2020, Region V) against The School of the Art

Institute of Chicago (SAIC) in Chicago, Illinois, arising out of numerous instances of

extensive severe sex-based harm involving numerous instances of penetration,

14

perpetrated by an SAIC employee who was also Susan Doe's direct advisor.[25] Plaintiff Susan Doe was forced to leave SAIC because of the sex-based harm she suffered. She is currently a student in Massachusetts. Allegations in her OCR complaint include that SAIC subjected her to separate and different treatment and did not use Title IX's definitions to assess her complaint. (Comp. p.18)

Prior to the filing of this action, on October 14, 2017, Susan Doe contacted OCR to determine whether they would be using the DeVos Rules to evaluate her case. She specifically asked OCR to confirm in writing that they "will not apply" the DeVos Rules to her case. OCR declined to assure Susan Doe that the DeVos Rules would not be applied to her case and stated "to be honest, I do not thing we can such (sic) assurance in writing or otherwise." More recently, on February 14 2018, Susan Doe again contacted OCR and asked if the DeVos rules were being applied in her case. The OCR official affirmed that OCR is relying on the DeVos Rules, as well as the 2001 Revised Sexual Harassment Guidance, and a Dear Colleague Letter from January 25, 2006, along with the Title IX statute and regulations. On May 11, 2018, the same OCR official stated that OCR is currently applying the DeVos Rules to Susan Doe's case. (Comp. p.18)

## IV. ARGUMENT

### A. Plaintiffs Have Standing

Standing is established when a plaintiff shows (1) an 'injury-in-fact' that (2) is 'fairly . . . trace[able] to the challenged action of the defendant' and (3) is 'likely . . . [to] be redressed by a favorable decision' in court." *Lujan v. Defenders of Wildlife*, 504 U.S.

---

[25] Susan Doe's OCR complaint was recently placed on hold by OCR after Doe filed a civil lawsuit in which she raised many of the same issues as were raised in her OCR complaint.

555, 560-61 (1992). A plaintiff has suffered an injury-in-fact if she has experienced "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.,* at 560 (internal citations and quotation marks omitted). *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006).

      i.    *Injury to all women*

Injury exists for standing purposes "solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin*, *supra,* at 500 (citations omitted). It requires little imagination to understand how the DeVos Rules injure the rights of all women because of the myriad ways the Rules permit different and unequal treatment of sex-based harm. *See City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 707-11 (1978) (a statute designed to prevent sex discrimination cannot permit different treatment based on sex); *Title IX Legal Manual*, p.62 ("policies or practices that explicitly classify individuals on the basis of sex … violate Title IX ...) For example, if a male student is physically beaten on the basis of his national origin, his matter would be resolved under a "preponderance of the evidence" standard, and if the evidence showed just barely that the offense more likely than not occurred, it would be deemed sufficiently proved. However, if the ***exact*** same offender caused ***exactly*** the same harm to a female student on the basis of her sex, and ***exactly*** the same quality of evidence was presented, schools could assess the matter under a more onerous standard of clear and convincing evidence, and the matter would be deemed unproven. Further, the redress of dual identity claims would be subject to absurd assessments such that a black woman assaulted in a single offense on the basis of her race ***and*** her sex would have her case simultaneously subjected to the clear and convincing and preponderance standards, with

the racial aspect being adequately proved while the sex aspect was not, even if the evidence consisted solely of the victim's statement, and the weight of the evidence showing that the offense was sex-based was stronger than the evidence showing that the offense was race-based. The use of disparate definitions of offenses would yield similarly absurd results because a single offense could fail to meet the definition of domestic violence under the DeVos Rules, while overwhelmingly satisfying the Title IX definition of an offense, yet lead to no finding of responsibility.

Furthermore, because the DeVos Rules require that offenders of sex-based civil rights harms receive the same substantive rights as victims of sex-based civil rights harms, but do not require that offenders of race or national origin-based civil rights harms receive the same rights as the victims of such harms, if a victim suffers a single offense based on her sex and her race, the offender would receive the same rights as the victim for the sex-based aspect of his offense, but not for the race-based aspect of his offense. This is not only physically and intellectually impossible when an offender commits a single act against a single victim, it is ridiculous.

Additionally, because the DeVos Rules state that schools should apply the same burden of proof in sex-based civil rights harms as is applied in the redress of non-civil rights harms, but nowhere imposes this obligation on schools with regard to civil rights harms based on race and national origin, sex-based harms are less likely to be successfully addressed and prevented compared to other civil rights harms.

Finally, the DeVos Rules apply only to the most severe forms of sex discrimination, and do not apply to less serious discrimination, such as verbal harassment, which means severe sex-based offenses are subjected to more onerous

17

substantive standards burden than minor sex-based offenses. In turn, severe civil rights

offenses based on sex are less likely to be successfully addressed and prevented than

minor verbal offenses based on race and national origin.

ii.    *Injury to Equal Means Equal*

Defendants argue that Plaintiffs Equal Means Equal (EME) has no standing

because it bears none of the indicia of a traditional membership organization. (D.Mot.

p.10) However, a membership organization has standing if it satisfies three requirements:

"(a) its members would otherwise have standing to sue in their own right; (b) the interests

it seeks to protect are germane to the organization's purpose; and (c) neither the claim

asserted nor the relief requested requires the participation of individual members in the

lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977).

Though the organization must identify [a] member who ha[s] suffered the requisite

harm," *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) members need not be parties,

*Playboy Enterprises v. Public Service Comm'n of Puerto Rico*, 906 F.2d 25, 35 (1st Cir.

1990). EME has identified Jane and Susan Doe as members who suffered the requisite

harm as individuals as they have suffered the denial of equal treatment. *See American*

*Civ. Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) ("The

injury in fact is the denial of equal treatment," *citing Sandusky v. Blackwell*, 387 F.3d

565, 574 (6th Cir. 2004)). EME advocates for sex equality. (Comp. pp.14-16). Thus, the

interests EME seeks to protect are obviously germane to its purpose because the DeVos

Rules mandate unequal treatment based on sex. EME can hardly *advocate* for equal

treatment based on sex under Title IX if unequal treatment based on sex is not required.

A group has associational standing to bring suit "as the representative of its

members … [e]ven in the absence of injury to itself." *Warth v. Seldin*, *supra*, at 511.

Recognition of associational standing is particularly apt where, as here, participation by

an individual member is not required because only declaratory and injunctive relief is

requested. *International Union v. Brock,* 477 U.S. 274, 290 (1986).

     Contrary to Defendants' claim, proving indicia of membership is not necessary

for voluntary membership organizations like EME because EME is, by its nature, an

organization of members. *Hunt* at 344. See also *Students for Fair Admissions, Inc. v.

Harvard,* C.A. No. 1:14-cv-14176-ADB (Plaintiff advocacy group granted standing to

enforce the anti-discrimination rights of its members under Title VI of the Civil Rights

Act of 1964.) Neither the Supreme Court nor the First Circuit has required a membership

organization to prove indicia of membership, presumably because most membership

organizations exist in "traditional voluntary forms with knowing and willing members."

Wright & Miller, Fed. Prac. & Proc. § 3531.9.5 (2d ed.)("Most cases involve

representation by environmental, neighborhood, political action, civil rights, trade, or like

familiar organizations in traditional forms.") Indeed, courts have found that organizations

that advocate for the rights of individuals are "effective vehicles for vindicating interests

that they share with others." *UAW v. Brock*, 477 U.S. 274, 290 (1986).

     EME represents the shared interests of many in advancing sex equality, including

Jane and Susan Doe, who have voluntarily associated themselves with EME. Thus, EME

has standing as its associates have demonstrated reasonable concerns about the effect of

the DeVos Rules. *United States v. Students Challenging Regulatory Agency Procedures

(SCRAP)*, 412 U.S. 669, 688-90 (1990)(organization had standing where individual

members would be injured by new agency rule); *Friends of the Earth v. Laidlaw

*Environmental Services, Inc.,* 528 U.S. 167, 181 (2000) ; *Doe v. Stincer*, 175 F.3d 879,

885 (11th Cir. 1999)(advocacy groups without membership requirements may have

standing if one constituent has standing.) Group-based claims are well suited to be

brought by a representative association, *see Sexual Minorities Uganda v. Scott Lively*,---

F.Supp. 2d --- (D.Mass.2013), especially where, as here, relief, if granted, would inure to

the benefit of the individuals whose interests are represented by the group. *See Coll.*

*Dental Surgeons P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41 (1st Cir. 2009).

    iii.    *Injury to NCAVA*

NCAVA was founded in 1997 and is a national non-profit organization whose

sole mission is to advocate for victims of sex-based harm. NCAVA provides counsel and

advocacy for victims, including victims of intercollegiate athlete offenders. NCAVA

provides services to help victims achieve justice and rebuild their lives. NCAVA also

promotes awareness and provides education about Title IX, the prevalence of athlete-

involved abuse, and its effects on victims. (Comp. p.14) NCAVA has identified Plaintiffs

Jane and Susan Doe as individuals whose interests they represent, and who have suffered

the requisite harm. (Comp. p.16)

NCAVA incorporates and asserts the arguments asserted above pertaining to the

standing of Plaintiff EME, and notes that it regularly participates in direct legal action to

advocate for the fully equal treatment of women under Title IX. For example, NCAVA

has filed many complaints with the OCR at the DOE, and the NCAA, and has filed

amicus briefs in Title IX cases, advocating for the fully equal treatment of women and

sex-based harms under Title IX. (Comp. p.15) NCAVA has suffered significant negative

effects from the DeVos Rules that interfere with its daily operations and mission of

ensuring equal and effective response and redress for victims of sex-based harm. (Comp. pp.15-16) The DeVos Rules limit the effectiveness of NCAVA's mission, require the diversion of resources to combat the harmful effects of the DeVos Rules and otherwise conflict with, impair, and frustrate NCAVA's mission. (Comp. pp.15-16) The DeVos Rules have been devastating to NCAVA's operations because many victims have expressed an unwillingness to report sex-based harm to campus and law enforcement authorities, which prevents NCAVA from effectuating its purpose. (Comp. pp.15-16) Indeed, NCAVA now must advise clients that equal treatment appears no longer required by Title IX. The resulting chilling effect in the willingness of victims to report sex-based harm has been witnessed by NCAVA in the form of a decline in the number of victims willing to seek redress of grievances. (Comp. p.15) Deterring victims from reporting and seeking redress establishes standing. *SCRAP, supra*, 412 U.S. at 688-90 (although injury was attenuated, plaintiffs had standing because agency's new rate increase inhibited recycling, thus lessened students' ability to enjoy natural resources).

The DeVos Rules also make it more difficult for NCAVA to provide appropriate legal advice to clients about how schools and oversight agencies respond to and investigate complaints. In the aftermath of one recent incident, NCAVA spoke to an official at OCR/DOE on behalf of a victim to inquire about the agency's insufficient response. The official stated, "Due to the current administration's viewpoint, we cannot effectively investigate many of these claims." (Comp. p.16) NCAVA has also had to devote significant staff time undermining its own mission by advising victims that their Title IX rights will not be equally protected. (Comp. p.16)

iv.   *Injury to Individual Plaintiffs*

In civil rights cases, stigmatic injury "accords a basis for standing" under Article III to "'persons who are personally denied equal treatment' by the challenged discriminatory conduct.'" *Allen v. Wright*, 468 U.S. 737, 755 (1984). Here, all three individual Plaintiffs have alleged personal denial of equal treatment.

*Jane Doe*

Jane Doe faces the personal injury of discriminatory and unequal treatment as a direct result of the DeVos Rules in at least three ways: First, because school officials improperly relied on criminal law definitions of offenses, rather than the Title IX definition of an offense, when assessing her case (Comp. p.16).[26] This means that when OCR applies the DeVos Rules to her case,[27] it will be compelled to uphold the school's unlawful use of more onerous definitions because, as noted above, use of more onerous definitions is permitted under the DeVos Rules.

Second, although school officials claimed that the preponderance of evidence standard was applied to Jane Doe's Title IX complaint on campus, her school in fact applied a burden of proof more onerous than preponderance. (Comp. p.16). This means that when OCR applies the DeVos Rules to Doe's case, it will be compelled to uphold and affirm the school's unlawful application of a burden of proof more onerous than

---

[26] *Murphy, W., Krakauer's Missoula: Where Subversive Meets Verisimilitude*, 42 Journal of College and University Law, no. 2, 479, 496-97 and notes 82-83 (2016) (citing, inter alia, the policies of the college where Jane Doe was victimized, and noting that the school's definition of sexual assault requires proof of non-consent, which is more onerous than unwelcome.)

[27] The OCR official responsible for Jane Doe's complaint recently confirmed that OCR is applying the DeVos Rules to her case, along with the "Revised Sexual Harassment Guidance previously issued by OCR in2001." (Comp. p.17)

preponderance because the DeVos Rules permit schools to use a burden of proof more onerous than preponderance.

Third, Jane Doe's school subjected her Title IX complaint to different and unequal treatment compared to the treatment afforded students who suffer harm based on race and national origin. (Comp. p.16). This means that when OCR applies the DeVos Rules to her case, it will be compelled to uphold the school's treatment of Doe because the DeVos Rules permit unequal treatment of sex-based harms.

*Mary Doe*

Mary Doe faces the personal injury of discriminatory and unequal treatment under the DeVos Rules in at least two ways. First, because her civil lawsuit alleges that her school investigated her complaint using criminal law definitions rather than the Title IX definition of an offense. (Comp. p.17). Second, because her school subjected her Title IX complaint to different and unequal treatment compared to complaints based on race and national origin. (Comp. p.17).

If the DeVos Rules are, as they claim to be, a "significant guidance document," (DeVos Rules, p.7) they will affect Mary Doe's case because such guidance documents are routinely relied upon by courts and are "entitled to respect" if they consist of agency opinion, *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944); some "deference" if they constitute an agency's interpretation of a regulation and the court determines that the language of a relevant regulation is ambiguous, *Auer v. Robbins*, 519 U.S. 452 (1977); or deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984) if a court deems the Rules regulatory, and a reasonable interpretation of an ambiguous statute. *Id.*

Whatever the status of the DeVos Rules, Mary Doe's case is at risk because courts in Title IX cases have already accepted the DeVos Rules as relevant. See e.g., *Kollaritsch et al., v. Michigan State University Board of Trustees, et al.*, 1:15-cv-01191-PLM-PJG, United States District Court, Western District of Michigan, (court order issued 10/17/17 denying motion to strike and granting defendants leave to file supplemental authority regarding the DeVos Rules, described as a "significant change in Guidance on Title IX"). This means that when Doe's school defends the lawsuit by citing the DeVos Rules, the court can uphold the school's decision to subject Doe's Title IX complaint to different and unequal treatment, and investigate Doe's Title IX complaint using more onerous criminal law definitions, because unequal treatment and use of more onerous criminal law definitions are permitted under the DeVos Rules.

*Susan Doe*

Susan Doe faces the personal injury of discriminatory and unequal treatment under the DeVos Rules in at least two ways. First, because school officials applied definitions of offenses more onerous than the Title IX definition of an offense to assess her case. (Comp. pp.17-18). Second, because school officials unlawfully subjected Doe's Title IX complaint to different and unequal treatment compared to the treatment afforded students who suffer race and national origin-based harms. (Comp. pp.17-18). This means that when OCR applies the DeVos Rules to Doe's case,[28] it will be compelled to uphold and affirm the school's violations of Title IX because separate and different treatment and the use of definitions of offenses more onerous than those required by Title IX are

---

[28] OCR recently confirmed that it is applying the DeVos Rules to Susan Doe's case, along with the "Revised Sexual Harassment Guidance previously issued by OCR in 2001." (Comp. p.18)

permitted under the DeVos Rules.

Injury may exist "solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin*, *supra,* at 500 (citations omitted). *Accord Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205, 208 (1972) (white residents of an apartment complex had standing to challenge exclusion of black rental applicants because they suffered loss of benefits of life in an integrated community.) Injury from a violation of rights is amply established here because, as noted above, Plaintiffs have a right under Title IX and its regulations to equitable redress, and against separate and different treatment. The DeVos Rules threaten and violate these rights.

Plaintiffs have also adequately alleged violations of their procedural rights because they received no notice and had no right to comment before Defendants issued new rules affecting Plaintiffs' substantive rights under Title IX. *See United States v. Florida East Coast Railway Co.*, 410 U.S. 224 (1973) (Plaintiffs had standing because agency-issued rate changes were issued without compliance with formal rulemaking procedures). *See Wayerhaueser Co. v. Castle*, 590 F.2d 1011, 1030 (D.C. Cir. 1978) (right to comment on decision-making process).

Defendants argue that the individual Plaintiffs have not established injury because the DeVos Rules have not yet been applied in their cases. (D. Mot. pp.14-15). In fact, it is unknown at this time whether OCR applied the DeVos Rules to Mary Doe's case, but OCR admits it applied the DeVos Rules to Susan Doe's case. (Comp. p.18) Moreover, standing to seek prospective relief may rest on allegations of future injury where (1) the defendant adopted an unlawful policy or practice, and (2) the plaintiff *will be* exposed to it. *Berner v. Delahanty,* 129 F.3d 20, 24 (1st Cir. 1997) (requiring "a realistic risk of

future exposure to the challenged policy"). Plaintiffs need not allege actual application of

the policy and resulting harm. It is enough that there be a "'substantial risk' that the harm

will occur" or a threat that is "certainly impending." *Reddy v. Foster*, 845 F.3d 493, 500

(1st Cir. 2017) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341

(2014)).[29] As discussed above, Plaintiffs have demonstrated that Defendants adopted an

unlawful policy or practice in the DeVos Rules, and that there is a substantial risk that

harm will occur because many of the legal issues raised by Plaintiffs in their various legal

matters are the same as the legal issues in controversy here.

Injury will also be found where a plaintiff alleges a chilling effect. *See Van*

*Wagner Bos., LLC v. Davey*, 770 F.3d 33 (1st Cir. 2014). A chilling effect injury occurs

when the government inhibits a person's willingness to engage in activity protected by

the First Amendment, *see Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003);

including the right to petition for redress of grievances. *Professional Real Estate*

*Investors v. Columbia Pictures Indus. Inc.,* 508 U.S. 49, 56-57 (1993). Courts relax the

requirement of actual injury in chilling effect cases in light of the weightier concern of

the chilling effect on free speech. *Waters v. Churchill*, 511 U.S. 661, 669 (1994); *Elrod v.*

*Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even

---

[29] A reasonable argument can also be made that Plaintiffs are injured simply because they are "subject to" the DeVos Rules. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750 (1988) (plaintiffs suffered sufficient injury for Article III purposes without having the challenged statute enforced against them because they were "subject to" it, and the challenged statute vested unbridled discretion in government officials over whether to permit or deny First Amendment protected activity.) Plaintiffs here are similarly subject to rules that give government-funded schools unbridled discretion over whether to redress sex-based civil rights harms *under civil rights laws*, thus permitting or denying victims of such harms the First Amendment-protected right of redress to which they are entitled under Title IX. It is the "pervasive threat inherent in [the] very existence" of the DeVos rules that causes harm to First Amendment rights. *Van Wagner Bos., LLC v. Davey*, 770 F.3d 33 (1st Cir. 2014), *citing City of Lakewood* at 757.

minimal periods of time, unquestionably constitutes irreparable injury.")

Plaintiffs adequately allege that the DeVos Rules have caused a chilling effect by deterring victims from reporting sex-based harm and seeking redress for their injuries. (Comp. p.15) See also National Women's Law Center, *Press* Release, September 22, 2017, https://nwlc.org/press-releases/nwlc-reacts-to-education-departments-interim-rule/ (noting that students will decline to report or seek redress because of the DeVos Rules.) *See also Survjustice v. DeVos et al.,* Civil Action No. 3:18-cv-00535, U.S. Dist. Court, N.Dist. Calif., San Francisco Div. (plaintiffs' complaint notes that Title IX advocacy groups witnessed a chilling effect on the willingness of victims of sex-based harm to report and seek redress because of the DeVos Rules). This chilling effect injury satisfies both standing and ripeness*, Van Wagner, supra,* as it forces Plaintiffs and others to choose between seeking redress for severe sex discrimination, and submitting to unequal treatment from the DeVos Rules. *Mangual*, supra, at 57.

A plaintiff also has standing to sue a federal agency under the APA if they are "adversely affected or aggrieved …" within the meaning of a relevant statute. 5 U.S.C. § 702. The APA is broadly remedial, and those whose interests are directly affected by a broad or narrow interpretation of a statute or regulation are easily identifiable. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970). The plaintiff need only fall within the "zone of interests protected or regulated by the statutory provision … invoked in the suit." APA, 5 U.S.C. §702; *Bennett v. Spear*, 520 U.S. 154, 162-63 (1997).  *See Thompson v. North American Stainless*, 131 S. Ct. 863, 869-70 (2011) (A person who has standing under Title VII of the Civil Rights Act of 1964 is anyone within the "zone of interests" under APA standing jurisprudence.)

Plaintiffs all fall within Title IX's zone of interests because Title IX is intended to ensure that no person is subjected to sex discrimination in federally assisted programs, and the Plaintiffs all seek to prevent and redress such discrimination. *See Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582, 633 (1983) (Because Title VI is intended to ensure that 'no person' is subject to discrimination in federally assisted programs, private parties function as third-party beneficiaries to these contracts). *See also Barlow v. Collins,* 397 U.S. 159 (1970) (Tenant farmers had standing to challenge Department of Agriculture regulation because they were intended beneficiaries under the statute). The organizational plaintiffs also fall within Title IX's zone of interests because they have endured their own discriminatory injury, as well as injury to the class of people they represent, including specific members. *See Thinkjet Ink Information Resources, Inc. v. Microsystems, Inc*., 368 F.3d 1053 (9th Cir. 2004) (minority owned business falls within zone of interests of 42 U.S.C. § 1981 if it suffers racial discrimination).

Defendants argue the individual Plaintiffs' injuries are speculative because they suffered a violation of rights before the DeVos Rules were issued, and the Rules have not yet been applied in their matters. (D.Mot.pp.16-17). In fact, it is unknown whether the DeVos Rules have been applied to Plaintiffs' OCR matters as the results have not yet been shared with Plaintiffs. Moreover, Defendants make no claim that the DeVos Rules are not routinely being applied to OCR matters, and the Rules themselves state that they were made immediately effective upon issuance, ("In the interim …[these rules] … provide information about how OCR will assess a school's compliance with Title IX.") (DeVos Rules, p.1). Nothing forbids OCR or the courts from relying on the DeVos Rules to uphold the schools' decisions not to comply with Title IX.

### B.  Plaintiffs Have Adequately Pled Claims Under the APA

    i.     *The DeVos Rules are final agency action*

Whether an agency rule is final is determined not in the temporal sense that it was issued after formal rulemaking, but rather, in the substantive sense that "rights or obligations have been determined, *or* from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S.Ct. 1807, 1813 (2016). The DeVos Rules clearly determine rights and obligations, or establish rules from which legal consequences affecting rights and obligations will flow.[30]

Title IX forbids sex discrimination, including sex-based assaults. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291 (1998); *Davis v. Monroe County Bd. of Educ.*, *supra.*, 526 U.S. at 641, in or by federally funded educational entities. Title IX was modeled after Title VI of the Civil Rights Act of 1964, which provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. §§ 2000d - 2000d-7. Title IX uses exactly the same enabling language and states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits

---

[30] Defendants cite a recent decision from the United States District Court for the District of California, *SurvJustice Inc., v. DeVos*, No. 18-cv-00535-JSC, 2018 WL 477074112 (N.D. Cal. Oct. 1, 2018) in support of the argument that the DeVos Rules are not final agency action. (D.Mot. p.17) However, the Plaintiffs in that matter did not assert any claims or arguments alleging that the DeVos Rules affected women's right to equal treatment, or the legal obligations of schools to ensure equal treatment of sex-based harms. Nor did the Plaintiffs allege or argue that the DeVos Rules unlawfully violated and subverted Title IX's regulatory prohibition against different treatment. In any event, the Plaintiffs have since submitted an amended complaint in which they have abandoned their APA claims.

of, or be subjected to discrimination under any education program or activity receiving

Federal financial assistance…" 20 U.S.C. § 1681(a).

     As discussed above, Title IX is coextensive with Title VI and must be enforced

equally on campus. *Cannon v. University of Chicago,* 441 U.S. 677*,* 694-98 (1979)

(Congress intended that Title IX would be interpreted and applied as Title VI has been);

*U.S. Department of Justice, findings letter against the University of New Mexico*, (April

22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights laws),

available at, https://www.justice.gov/opa/file/843901/download; *Justice Department*

*Announces Investigations of the Handling of Sexual Assault Allegations by the University*

*of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's*

*Office*, Department of Justice (May 1, 2012), available at

http://www.justice.gov/opa/pr/2012/May/12-crt-561.html (announcing Title IX

compliance review and Title IV investigation of the University of Montana and noting,

"Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of

1964 each prohibit sex discrimination, including sexual assault and sexual harassment in

education programs"), *Resolution Agreement,*

*http://www.justice.gov/crt/about/edu/documents/*montanaagree.pdf (announcing

resolution agreement with the University of Montana and noting that Title IV and Title

IX are subject to the same regulations to ensure enforcement of rights regarding

discrimination, harassment, and violence. 28 C.F.R. Part 54 and 34 C.F.R. Part 106).

     The Title IX regulations also explicitly include equal treatment mandates that

forbid schools, on the basis of sex, to: "subject any person to separate or different rules of

behavior, sanctions, or other treatment;" or otherwise "limit any person in the enjoyment

of any right, privilege, advantage or opportunity;" "treat one person differently from another" in "determining whether such person satisfies any requirement of condition for the provision of such aid, benefit, or service;" or "provide different aid, benefits or services in a different manner;" 34 C.F.R. Part 106.31(b)(1-7). Title IX regulations even prohibit the "use or distribut[ion of] a publication, which *suggests* by text or illustration that such school treats applicants, students or employees differently on the basis of sex" 34 C.F.R. Part 106.9(b)(2). Like Title VI, Title IX also mandates "equitable" grievance procedures for complaints alleging "any action, which would be prohibited by Title IX." 34 C.F.R. Part 106.8(b).

Against this clearly established right to equal treatment, the DeVos rules require and/or permit unequal treatment by: allowing the use of a burden of proof more onerous than Title IX's preponderance of the evidence standard only for the redress of sex-based harms (DeVos Rules, p.5), while preponderance remains applicable in the redress of harms based on race and national origin; requiring the use of more onerous criminal law definitions, rather than the civil rights definition of "unwelcome" and "based on" a protected class factor, to determine sex-based harms (DeVos Rules, pp.2, 3 & n.11-12; 5 & n.22-23; 6 & n.25) while less onerous civil rights definitions remain applicable to a determination of harms based on race and national origin; permitting schools to offer *fair* rather than *equitable* redress for victims of sex-based harms (DeVos Rules, p.3 & n.11), while equitable redress remains mandatory in the redress of harms based on race and national origin; granting offenders of sex-based civil rights harms the same rights as victims of sex-based civil rights harms (DeVos Rules at p.4, 5), while offenders of civil rights harms based on race or national origin are not granted the same rights as their

victims; mandating that sex-based civil rights harms be treated the same as non-civil rights harms (DeVos Rules, p.5, n.19), while civil rights harms based on race or national origin are not treated the same as non-civil rights harms.

To establish that the DeVos Rules affect rights and obligations, it is not necessary to show that courts and oversight agencies will affirm or uphold a school's actions taken in conformity with the DeVos Rules because the denial of equal treatment is its own cognizable legal injury. See *American Civ. Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) ("The injury in fact is the denial of equal treatment" because Plaintiffs are required to present photo identification that must be accepted if they vote in-person whereas absentee voters are not.) *See also*, *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004). The injury is more than just a "subjective chill," it is an actual infringement upon the right to equal treatment under Title IX. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1090-91 (10th Cir. 2006).

Furthermore, as noted above, women have a *right* under Title IX to seek "equitable" redress by filing complaints with federal oversight agencies, such as the OCR at the DOE and the DeVos Rules interfere with this right by enabling OCR to provide inequitable redress.

The DeVos Rules also affect rights and obligations because they rely on and incorporate by reference regulations promulgated under SaVE, and SaVE's regulations have the force of law,[31] thus *do* change schools' obligations under Title IX in a more significant way than a mere guidance document. On this point it should be emphasized

---

[31]   *Cohen v. Brown Univ.*, 101 F.3d 155, 172 (1st Cir. 1996).

that a statute that forbids sex discrimination can never produce regulations that permit, much less mandate, sex discrimination. *See City of Los Angeles, Dep't of Water and Power v. Manhart, supra*, at 707-11 (1978) (a statute designed to prevent sex discrimination cannot permit different treatment based on sex); *Title IX Legal Manual, supra* at 62 ("policies or practices that explicitly classify individuals on the basis of sex … violate Title IX...) Nonetheless, as SaVE's regulations were promulgated under Clery rather than Title IX, and Clery does not require equal treatment, schools may claim and courts may agree that they are not violating Title IX's equal treatment mandate when they subject victims of sex-based harms to unequal treatment under the DeVos Rules.

  i.  *Plaintiffs have no adequate alternative remedy*

  Plaintiffs have no adequate alternative remedy in court because a court adjudicating a Title IX lawsuit against a school has no authority to grant the remedies requested here, including Plaintiffs' request to set aside the DeVos Rules. Moreover, the individual Plaintiffs' Title IX complaints were filed at their respective schools long before the DeVos Rules were issued, which means they have no remedies *against their schools* for the injuries alleged here. Also, because the individual Plaintiffs are no longer enrolled in the schools where the underlying offenses took place, they have no capacity to complain, much less sue their schools, if and when their former schools formally incorporate the DeVos Rules into their policies. In addition, Plaintiffs EME and NCAVA obviously have no adequate remedy against any school. Finally, if Plaintiffs were to sue specific schools for failing to comply with Title IX regulations, their claims would be dismissed because there is no private cause of action in the courts for a school's failure to comply with regulations. *Gebser v. Lago Vista School Dist.*, 524 U.S. at 292.

  Defendants' reliance on *National Wrestling Coaches Association v. Department of*

*Education*, 366 F.3d 930 (D.C. Cir. 2004) is misplaced. *National Wrestling* is not from the First

Circuit, and in any event, is distinguishable. Among other things, the plaintiffs in *National*

*Wrestling* did not have pending agency investigations and civil lawsuits underway when the

challenged DOE guidance was issued. Thus, there was no similar risk of harm to the

plaintiffs' rights when the APA lawsuit was filed. Nor did the plaintiffs in that case

allege that the DOE had violated their personal substantive rights. To the contrary,

they alleged only that an interpretation of a Title IX regulation related to program funding

might lead to a loss of wrestling programs. By contrast, Plaintiffs here are personally involved

in OCR and court proceedings, and their claims there relate directly to the challenged

DeVos Rules here. This is a recognized basis for judicial review under the APA. *See*

*Astra USA v. Santa Clara County, Cal.,* 563 U.S. 110 (2011) (under not yet implemented

provisions of the Patient Protection and Affordable Care Act, the fact that an agency would

render an administrative decision on claims that a manufacturer overcharged a covered

entity was subject to judicial review under the APA).

This case is thus not akin to *National Wrestling*, and is more like *Abbott*

*Laboratories v. Gardner*, 387 U.S. 136 (1967) where drug manufacturers and an association

of drug manufacturers were permitted immediately to challenge a rule promulgated by the FDA

because in that case, as here, there was no evidence that the law they were seeking to enforce

forbade review, and review was otherwise authorized by the APA. In addition, the plaintiffs

in *Abbott Labs*, like the plaintiffs here, showed that the agency's action had been formalized

and its "effects felt in a concrete way by the challenging parties." *Abbot Labs* at 148-49. Thus,

the court held that a pre-enforcement challenge was appropriate. Here, as in *Abbott Labs,*

*a* pre-enforcement challenge is appropriate because the impact of the DeVos Rules is clearly

felt in a concrete way by the parties. Each of the individual Plaintiffs has established that

their pending underlying legal matters currently face application of the DeVos Rules

on important substantive issues that strike at the heart of Title IX's anti-discriminatory

purpose, and violate the plain language of Title IX regulations that prohibit separate,

different, and inequitable treatment of sex-based harm.

### C.  Defendants Exceeded Their Authority and the DeVos Rules Constitute Legislative Rules

Contrary to Defendants' claim, (D. Mot. p.22) the DeVos Rules exceed the scope of

their delegated authority because, as discussed at length above, the DeVos Rules permit

different and unequal treatment of sex-based harms while the Title IX regulations forbid such

different and unequal treatment. See *Glycine & More, Inc. v. United States*, 880 F.3d 1335, ----

n.2 (Fed. Cir. 2018). (guidance document granted no deference because it "represented an

incompatible departure from the clear meaning of the regulation ... [and] "was not simply an

interpretive statement regarding an ambiguity in the regulation...") Defendants are also

incorrect that the DeVos Rues are a "general statement[] of policy" or rule of procedure or

practice that is exempt from notice and comment requirements under 5 U.S.C. § 553(b)(A).

(D. Mot. pp.23-24) The DeVos Rules plainly constitute legislative rules, subject to notice and

comment rulemaking requirements, because, as discussed at length above, they substantively

change the regulatory prohibition against different and unequal treatment of sex-based harms,

and have the force and effect of law.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-303 (1979).

### D.  The DeVos Rules Are Discriminatory

As discussed at length above, the DeVos Rules are discriminatory in that they

separate out *only* sex-based harms for different and worse treatment compared to other

civil rights harms, such as those based on race and national origin. Defendants argue that

this does not make the DeVos Rules facially discriminatory because the Equal Protection

Clause of the Fourteenth Amendment permissibly treats these harms differently,

according strict scrutiny to race and lesser middle-tier scrutiny to sex. (D.Mot. p.25).

Defendants fail to recognize that Title IX is enforced separately from the Fourteenth

Amendment, and is not subject to disparate tiers of scrutiny. *Fitzgerald v. Barnstable

School Comm.,* 555 U.S. 246 (2009). To the contrary, as noted repeatedly herein, Title IX

is entitled to the exact same treatment as Title VI, which means sex-based harms is

entitled to the exact same treatment as race.

### E.  Plaintiffs Assert a Valid First Amendment Claim

Preemptive First Amendment challenges are permissible to prevent "others not

before the court" from suffering loss of First Amendment rights. *Broadrick v. Oklahoma,*

413 U.S. 601, 612 (1973); *Navegar, Inc. v. United States,* 103 F.3d 994, 998–999 (D.C.

Cir. 1997); *Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("The loss of First Amendment

freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury.") First Amendment chilling effect claims include the right to petition for redress

of grievances, *Professional Real Estate Investors v. Columbia Pictures Indus. Inc.,* 508

U.S. 49, 56-57 (1993). Federal courts most frequently find pre-enforcement challenges

justiciable when the conduct chilled is protected by the First Amendment.

Plaintiffs adequately allege that the DeVos Rules have caused a chilling effect on

them and the entire class of people intended to be protected by Title IX. (Comp. p.15)

*National Women's Law Center Press* Release, September 22, 2017,

https://nwlc.org/press-releases/nwlc-reacts-to-education-departments-interim-rule/

(noting that students will decline to report or seek redress because of the DeVos Rules.)

*See also Survjustice v. DeVos et al.,* Civil Action No. 3:18-cv-00535, U.S. Dist. Court, N.Dist. Calif., San Francisco Div. (plaintiffs' complaint notes that Title IX advocacy groups witnessed a chilling effect on the willingness of victims of sex-based harm to report and seek redress because of the DeVos Rules). Plaintiff NCAVA has also observed that victims of sex-based harm are less willing to report and seek help from NCAVA, or seek redress for their injuries, because of the DeVos Rules. (Comp. 15) This chilling effect injury satisfies standing and ripeness*, Van Wagner, supra,* and cannot be tolerated as it forces Plaintiffs and similarly situated others to choose between seeking redress of grievances and submitting to unequal treatment from the DeVos Rules. *Mangual*, at 57.

### F.  Plaintiffs Assert a Valid Title IX Claim

Defendants argue that Plaintiffs may not sue under Title IX because their only remedy is to sue under the APA, (D.Mot. p.28) Defendants fail to recognize that Plaintiffs' Title IX claim is not a typical challenge to Defendants' regulatory actions, it is a claim that Defendants engaged in their own discrimination. Such claims are not barred as federal agencies may be sued when they engage in their own discrimination, or facilitate or encourage a funding recipient's discrimination. *Cannon v. University of Chicago*, 441 U.S. at 703, n.33, citing *Hills v. Gautreaux*, 425 U.S. 284, 286 (1976); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C. Cir. 1990) (post-*Cannon*, "[a] federal agency itself might be charged with discrimination, or, as provider of financial assistance, with facilitating or encouraging a specific fund recipient's discrimination); *Cobb v. Dept. of Education*, 487 F.Supp. 1049 (D. Minn. 2007), *Montgomery Improvement Ass'n, Inc. v. U.S. Dept. of Housing and Urban Dev.*, 645 F.2d 291, 295 (5th Cir. 1981). *Gautreaux v. Romney*, 448 F.2d 731, 740 (7th Cir. 1971).

### G.  Plaintiffs Assert a Valid Spending Clause Claim

The Spending Clause, Article 1, § 8 of the United States Constitution, limits the power of Congress to attach conditions to the receipt of federal funds. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012). To be valid, the exercise of spending power must pertain to a "federal interest," and not independently violate other constitutional provisions. *South Dakota v. Dole*, 483 U.S. 203, 207-08 (1987). As noted above, violence against women is not a "federal interest," and regulation is not permitted under other constitutional provisions.

Another spending clause limitation is that Congress may not intrude excessively into the authority of the states, or allow federal pressure to become that "compulsion." *Id.* The DeVos Rules obviously violate these limitations because they require funding recipients to participate in the federal government's regulation of violence against women; a matter the federal government cannot regulate. *Morrison, supra*. If the federal government may not regulate violence against women, then even a minor intrusion is an excessive one.

Of course, the federal government can regulate civil rights to some extent, *Cannon v. University of Chicago,* 441 U.S. 708-09, however, the DeVos Rules nowhere use the phrase "civil rights," or even describe civil rights definitions of offenses when discussing conduct covered by the DeVos Rules. To the contrary, the DeVos Rules discuss only criminal law offenses. This indicates a violation of the Spending Clause not only because the DeVos Rules expressly attempt to regulate that which they cannot regulate, but also because they do excessively by, e.g., dictating definitions of offenses, how investigations must be conducted, and what burdens of proof may be applied.

38

The DeVos Rules clearly turn "pressure into compulsion," especially in jurisdictions such as Massachusetts where the state constitution guarantees fully equal protection of the law subject to strict scrutiny review. *Commonwealth v. King*, 374 Mass. 5, 21 (1977) (Equal Protection Clause of the Massachusetts Constitution prohibits discriminatory and unequal treatment based on sex, and claims of sex discrimination are subject to strict scrutiny). The DeVos Rules require schools to violate state constitutional law as a condition of receiving federal funds, even though the Constitution of the Commonwealth requires the fully equal treatment of sex-based harms, and Massachusetts statute law further requires that persons within its jurisdiction receive "the full and equal benefit of all laws and proceedings for the security of persons …" G.L. c. 93, § 102, (Massachusetts Equal Rights Act). It is unduly coercive to expect funding recipients to violate state law as a quid pro quo for receiving federal funds – especially when the subject matter being regulated is not a matter of national concern, (see Argument H below) and the federal funds at issue are *supposed* to be conditioned upon the agreement of a funding recipient *not* to discriminate on the basis of sex. *See City of Los Angeles v. Manhart*, 435 U.S. at 709 (a statute designed to prevent sex discrimination cannot permit different treatment based on sex).

### H.  Plaintiffs Assert a Valid Tenth Amendment Claim

The Tenth Amendment to the United States Constitution reserves to the states all powers except those limited powers granted to the federal government. U.S. Const. Amend. X It is well settled that violence against women is not a national concern, and may not be regulate by Congress. *U.S. v. Morrison*, 529 U.S. 598 (2000). The DeVos Rules explicitly regulate violence against women, thus are unconstitutional because the DOE derives its authority from Congress.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny

Defendants' Motion to Dismiss.

<div style="margin-left: 50%;">

Respectfully submitted,

The Plaintiffs,
Jane Doe, Mary Doe,
and Susan Doe,
Equal Means Equal
National Coalition Against
Violent Athletes

By their attorney,

/s/ Wendy Murphy

Wendy Murphy
154 Stuart Street
Boston, MA 02116
wmurphy@nesl.edu
617-422-7410
BBO#550455

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party by the ECF filing system.


/s/Wendy J. Murphy

 Wendy J. Murphy

Dated: June 4, 2019