## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

```
_____
                              )
Equal Means Equal et al.,     )
                              )
         Plaintiffs,          )
                              )          Civil Action
v.                            )          No. 17-12043-PBS
                              )
Department of Education et al.,  )
                              )
         Defendants.          )
_____)
```

### MEMORANDUM AND ORDER

March 18, 2020

Saris, D.J.

Plaintiffs Equal Means Equal ("EME"), The Nation Coalition Against Violent Athletes ("NCAVA") and three individuals[1] bring this action against the Department of Education ("DOE") and Betsy DeVos, in her official capacity as Secretary of Education. Plaintiffs allege that guidance documents issued by DOE in 2017 violate Title IX, the Administrative Procedures Act ("APA") and the Constitution. Defendants contend that the complaint should be dismissed because (1) plaintiffs lack standing; (2) plaintiffs are challenging a non-final agency action and are asserting claims for which there is an adequate alternative

---

[1] The individual Plaintiffs are named as Jane Doe, Mary Doe and Susan Doe.

remedy; and (3) plaintiffs are asserting claims that are nonjusticiable because they challenge matters committed to agency discretion by law. The first argument is jurisdictional and brought pursuant to Federal Rule of Civil Procedure 12(b)(1); the second two arguments are non-jurisdictional and brought pursuant to Rule 12(b)(6).

Defendants' motion to dismiss (Docket No. 27) is **ALLOWED** on the ground Plaintiffs fail to allege sufficient facts to support standing. Because the Court finds that Plaintiffs' allegations in the Amended Complaint are insufficient to establish standing, it cannot address Defendants' non-jurisdictional arguments for dismissal.

## I.      BACKGROUND

### A.    Factual Background

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress modeled Title IX on Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq., which prohibits discrimination on the basis of race, color, or national origin in programs or activities that receive federal funds. Cannon v. Univ. of Chi., 441 U.S. 677, 694 (1979); Docket No. 69 ¶ 8.

There are two mechanisms for ensuring compliance with Title IX. First, individuals injured by discriminatory practices can sue recipients of federal funds directly. See Cannon, 441 U.S. at 717. Second, the Department of Education ("DOE") may "issu[e] rules, regulations, or orders of general applicability" to effectuate Title IX. 20 U.S.C. § 1682.

On September 22, 2018, DOE issued a "Q and A on Campus Sexual Misconduct" (the "DeVos Rules") and a Dear Colleague Letter which rescinded previous DOE guidance documents explaining DOE's enforcement of Title IX. Docket No. 69 at ¶ 28. Among other changes, the DeVos Rules permit educational programs to apply either a "clear and convincing" standard of proof or a "preponderance of the evidence" standard of proof in proceedings concerning sex-based harms covered by Title IX. Id. at ¶ 21. The DeVos Rules also permit educational programs to apply criminal law definitions of offenses as opposed to the civil rights definitions of offenses in the response to and determination of allegations of sex-based harms covered by Title IX. Id. at ¶ 20. The DeVos Rules apply generally to all educational programs that receive federal funds. Id. at ¶ 17.

### B.  Parties

The complaint alleges the following facts about the Plaintiffs:

### i.  Organizational Plaintiffs

Equal Means Equal ("EME") is a national 501(c)(4) non-profit organization whose mission is to advocate for sex/gender equality and fully equal rights for women. Docket No. 69 ¶ 48.

National Coalition Against Violent Athletes ("NCAVA") is a national 501(c)(3) non-profit organization whose mission is to advocate for the equal treatment of victims of sex-based harms under civil rights laws, such as Title IX, and related laws. Id. ¶ 51.

### ii.  Individual Plaintiffs

Jane Doe is a complainant in an ongoing Title IX investigation against Stonehill College in Easton, Massachusetts. OCR case no. 01-15-2216, Region I; Docket No. 69 ¶ 60.

Mary Doe was a plaintiff in a lawsuit in Suffolk Superior Court wherein she alleged that she was sexually assaulted while a student at Boston University in Boston, Massachusetts. Docket No. 69 ¶ 62. The case has since settled, and on February 25, 2020, the parties filed a Stipulation of Dismissal. See Doe, Jane vs. Bos. Univ. et al, Civil Action No. 1684-CV-03765 (Suffolk Sup. Ct. Feb. 25, 2020).

Susan Doe was a complainant in a Title IX investigation against the School of the Art Institute of Chicago (SAIC) in Chicago, Illinois. OCR case no. 5-17-2020, Region V; Docket No.

69 ¶ 65. Susan Doe's OCR case was dismissed upon her initiation of a federal lawsuit in the U.S. District Court for the Northern District of Illinois. See Doe v. School of the Art Inst. of Chi. et al., No. 1:18-cv-04240 (N.D. Ill.); Docket No. 27-3. OCR dismissed Susan Doe's complaint on August 27, 2018 pursuant to Section 108(i) of OCR's Case Processing Manual which provides that OCR will dismiss an administrative complaint when "[t]he same or a similar allegation based on the same operative facts has been filed either by the complainant or someone other than the complainant against the same recipient with state or federal court." See U.S. Department of Education, Case Processing Manual 11 (2018), www.ed.gov/ocr/docs/ocrcpm.pdf; Docket No. 27-3. On April 5, 2019, Susan Doe filed a notice of voluntary dismissal in federal court pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). On April 8, 2019, the case was dismissed with prejudice. Doe v. School of the Art Inst. of Chi. et al., No. 1:18-cv-04240 (N.D. Ill. Apr. 8, 2019).

## C.    Procedural Background

Defendants have moved to dismiss the complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), on grounds of lack of standing, finality, ripeness, and justiciability, and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). The Court held a hearing on the motion on February 25, 2020.

## II.  LEGAL STANDARD

On a motion to dismiss for lack of subject matter jurisdiction made pursuant to Fed. R. Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). When ruling on a 12(b)(1) motion the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).

## III. DISCUSSION

### A.  Standing

Defendants argue that neither the organizational Plaintiffs nor individual Plaintiffs have Article III standing. Defendants further argue that the organizational Plaintiffs do not have standing to assert a First Amendment challenge.

Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992). To satisfy the case-or-controversy requirement of Article III of the United States Constitution, plaintiffs bear the

6

burden of establishing (1) that they have suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent"; (2) that the injury is "'fairly traceable' to the actions of the defendant"; and (3) that the injury will likely be redressed by a favorable decision. Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). Those elements must be proved "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

### 1.   Organizational Plaintiffs

Defendants contend that the organizational Plaintiffs do not have standing to sue either directly or on behalf of their members, known as associational standing. To achieve associational standing, an organization must demonstrate that (1) one or more of its members would have standing to sue as an individual; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); see also Lujan, 504 U.S. at 563 (stating that a single member with standing in his or her own right is sufficient to establish that an organization has standing).

Defendants argue that the organizational Plaintiffs do not have "members" as required to assert associational standing. Docket No. 28 at 9, citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 344 (1977). In the case of EME, Defendants contend that it has "supporters" who bear no indicia of membership. Docket No. 28 at 10. In the case of NCAVA, Defendants maintain that it has "clients" who similarly bear no indicia of membership. Id. at 11. Furthermore, even if EME and NCAVA could establish that they have members, Defendants contend that neither organization has identified a single member who has standing to sue in his or her own right.

Second, Defendants argue that the organizational Plaintiffs do not have standing to sue on their own behalf. Specifically, Defendants contend that the organizational Plaintiffs have not suffered an injury-in-fact. Defendants assume the truth of the allegations that individuals associated with EME and NCAVA may be "unlikely to report 'sex-based harms for fear they will not receive equal treatment under Title IX'" or be "unwilling[] to report sex-based harm to campus authorities and law enforcement officials." Docket No. 27 at 9, 11. However, citing Sierra Club v. Morton, 405 U.S. 727, 739 (1972), Defendants characterize the alleged harm to EME as representing a "mere interest in" the DeVos Rules. Docket No. 28 at 9. Defendants characterize the

alleged harm to NCAVA as harm to its clients, not to the
employees of NCAVA. Id. at 11-12.

Defendants also refute the allegation that NCAVA was
injured when it diverted resources "to combat the harmful
effects of the [2017 Q&A]." Docket No. 28 at 12. Defendants
describe NCAVA's decision to expend resources in response to the
DeVos Rules as a voluntary expression of its interest in policy.
Id.

Third, Defendants argue that the organizational Plaintiffs
lack standing to assert a First Amendment claim because they do
not allege that their speech has been chilled. Defendants cite
Laird v. Tatum, 408 U.S. 1, 13 n.7 (1972) to support their
argument that EME and NCAVA lack a "personal stake in the
outcome of the controversy."

Plaintiffs respond that the supporters of EME are members
of the organization for the purpose of associational standing.
Furthermore, Plaintiffs point out that neither the Supreme Court
nor the First Circuit have ever required a membership
organization to prove indicia of membership. At the Hearing on
February 25, 2020, Plaintiffs clarified that they do not allege
that EME has direct organizational standing. However, with
respect to NCAVA, Plaintiffs do state that the DeVos Rules
"interfere with NCAVA's daily operations and mission" by
requiring the "diversion of resources" and that the DeVos Rules

9

have been "devastating to NCAVA's operational activities because victims have expressed an unwillingness to report sex-based harm to campus authorities and law enforcement officials, which prevents NCAVA from effectuating its mission." Docket No. 37.

a.   Associational Standing - EME and NCAVA

An organization has associational standing if it satisfies three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 342-43.

Despite Plaintiffs' best efforts to define EME as "an organization of members," they allege no facts from which this Court can plausibly infer that EME has members. Docket No. 46 at 19. They allege they have supporters who "voluntarily associate[] themselves with EME," but that is not sufficient to establish standing. Id. at 19. It is true that an organization does not have to have a "membership" in the traditional sense to assert associational standing. In Hunt, the Supreme Court found that a state Commission, while it did not have technical members, did represent apple growers and dealers who possessed "all the indicia of membership in an organization." 432 U.S. at 344. They elected the members of the Commission, they alone were

eligible to serve on the Commission, and they alone financed the activities of the Commission. Here, Plaintiffs have not alleged or produced evidence that the supporters of EME perform any of these functions. Therefore, EME lacks associational standing because it does not represent a membership in either form or substance.

Similarly, to the extent Plaintiffs assert associational standing on behalf of NCAVA, they have not alleged that NCAVA has members of any sort, and therefore this argument is without merit.

b.   Direct Standing - EME

Plaintiffs have not plead that EME has direct standing. Even if they had, the argument would be unpersuasive. The Supreme Court has rejected the theory that an organization may establish standing simply because it has a "special interest" in the subject of agency action. See Sierra Club v. Morton, 405 U.S. 727, 738-40 (1972); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976) ("Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III."). In Sierra Club, the Supreme Court considered whether an organization had standing based on a "special interest" in deciding the use to which land in the Mineral King Valley in the Sequoia National Forest could be put.

The Court rejected the assertion of standing, stating that "a mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved within the meaning of the APA." 405 U.S. at 739 (internal quotation marks omitted).

Here, EME details a strong interest in the rules and procedures that universities must follow when considering sexual harassment claims, but it does not allege any injury to itself as an organization. Therefore, it does not have standing to sue.

c.   Direct Standing - NCAVA

The Supreme Court has held that an advocacy organization may achieve standing if its mission has been "frustrated" by the challenged conduct *and* it has expended resources to combat it. See Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). However, the Supreme Court has also held that simply expending resources based on an *anticipated* harm is not enough to establish standing. See Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013).

In Havens Realty, the Supreme Court considered whether HOME, "a nonprofit corporation whose purpose was to make equal opportunity in housing a reality in the Richmond Metropolitan Area" had standing to sue a realty company and one of its

employees for racial discrimination. 455 U.S. at 368 (internal

quotation marks omitted). In finding that HOME had alleged

sufficient injury to establish direct organizational standing,

the Supreme Court stated:

> If, as broadly alleged, petitioners' steering practices
> have perceptibly impaired HOME's ability to provide
> counseling and referral services for low-and moderate-
> income homeseekers, there can be no question that the
> organization has suffered injury in fact. Such concrete and
> demonstrable injury to the organization's activities—with
> the consequent drain on the organization's resources—
> constitutes far more than simply a setback to the
> organization's abstract social interests, see Sierra Club
> v. Morton, 405 U.S. at 739.

Id. at 379.

According to the Amended Complaint, NCAVA is "a national

501(c)(3) non-profit organization . . . whose sole mission is to

advocate for the equal treatment of victims of sex-based harms

under civil rights laws. . . . NCAVA provides legal referrals,

counsel and advocacy to victims of sex-based harms." Docket No.

69 ¶ 51. Plaintiffs allege that the DeVos Rules have been

"devastating to NCAVA's mission and operational activities

because victims have expressed an unwillingness to report sex-

based harm to campus authorities and law enforcement officials,

which prevents NCAVA from effectuating its mission" and that the

DeVos Rules have "required the diversion of NCAVA's resources

and ha[ve] frustrated its efforts." Id. ¶ 54-55. However, the

analysis does not end here.

13

i. <u>Frustration of Organizational Mission</u>

To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 149 (2010). Plaintiffs have not stated the injury to NCAVA's mission with particularity nor have they established that it is fairly traceable to the DeVos Rules.

In <u>Clapper</u>, several groups and individuals challenged a new provision of the Foreign Intelligence Surveillance Act (FISA) which authorized government electronic surveillance of non-U.S. persons outside the U.S. for foreign intelligence purposes. 568 U.S. 398. These groups alleged that the new provision would force them to take costly measures to ensure the confidentiality of their international communications. The Supreme Court held that the groups did not have standing because they could not "demonstrate that the future injury they purportedly fear[ed] [was] certainly impending." <u>Id.</u> at 422. There was no evidence that the Government would target the communications to which the groups were party and use the new provision to do so. Furthermore, any costs that the groups incurred to protect their communications were not fairly traceable to the new provision, as the harm was not certainly impending.

14

Here, Plaintiffs have not demonstrated a particularized injury traceable to the DeVos Rules beyond a general statement that victims have expressed an unwillingness to report sex-based harm to campus authorities. To support their claim, Plaintiffs rely on SurvJustice Inc. v. DeVos, No. 18-CV-00535-JSC, 2018 WL 4770741, at *1 (N.D. Cal. Oct. 1, 2018), amended on reconsideration, 2019 WL 1434144 (N.D. Cal. Mar. 29, 2019). However, the allegations here do not contain the specificity that the allegations in SurvJustice do. Plaintiffs do not allege that there has been an observed decrease in student-filed complaints, nor do they allege that students have expressed unwillingness to file claims because of the DeVos Rules. See id. at *6-7. Plaintiffs also do not allege that colleges and universities are in fact using the clear and convincing standard of proof, thus making it more difficult for NCAVA's clients to obtain beneficial outcomes. See id. at *7. As the Supreme Court stated in Clapper, "[w]e decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." 568 U.S. at 414.

## ii. Diversion of Resources

Plaintiffs' argument that NCAVA's resources have been depleted to combat the harmful effect of the DeVos Rules presents a closer call under Havens Realty, but ultimately the allegation is conclusory. Plaintiffs do not allege that as a

15

result of the DeVos Rules they have increased on-campus
trainings or developed any new initiatives or devoted staff
resources to reaching out to schools regarding complaints. <u>See</u>
<u>SurvJustice</u>, 2018 WL 4770741, at *7. Because the question of
organizational standing for NCAVA is a closer call, the Court
will allow NCAVA to amend the Complaint to make factual
allegations to support standing.

          d.    <u>First Amendment Standing</u>

Plaintiffs' contention that their speech has been "chilled"
thus violating the First Amendment is unpersuasive. Plaintiffs
allege that the speech of their supporters and clients has been
chilled, but they do not allege how their own speech has been
chilled. As they have not alleged an injury that is concrete,
particularized, and actual or imminent, they do not have
standing to bring this claim.

          2.    <u>Individual Plaintiffs</u>

Defendants also contend that all three individual
plaintiffs lack Article III standing because they have not (1)
suffered an injury in fact, (2) that is fairly traceable to the
challenged conduct of the defendant, and (3) that is likely to
be redressed by a favorable judicial decision as required by
<u>Spokeo Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016).

First, Defendants argue that the individual plaintiffs have
not plausibly alleged an injury-in-fact. Specifically,

Defendants assert that, because the individual plaintiffs each had pending cases before different forums at the time of filing, the claimed injury is an imagined, future injury that has not yet occurred and is therefore entirely speculative. Docket No. 28 at 14-15 (citing Spokeo Inc., 136 S. Ct. at 1548; Cohn v. Brown, 161 F. App'x 450, 455 (6th Cir. 2005)).[2] Citing Clapper, 568 U.S. at 409, Defendants contend that a speculative future injury cannot provide the basis for standing. For these reasons, Defendants characterize the present action as an inappropriate collateral attack on the individual plaintiffs' pending claims. Docket No. 28 at 15-16.

Second, Defendants argue that there has been no judgment in any of the individual Plaintiffs' cases, therefore no injury has occurred that can be traced to Defendants' conduct. Id. at 16.

Third, Defendants argue that it is impossible for an injury to be redressed by this Court because the individual plaintiffs' claims are still pending or have been voluntarily dismissed. Id. Even if this Court provides the relief the individual plaintiffs seek, it will have no bearing on Mary Doe or Susan Doe as they do not have any pending cases. Moreover, there is no guarantee the relief requested will favorably influence the outcome of

---

[2] Mary Doe and Susan Doe voluntarily dismissed their cases before the Suffolk Superior Court and the Northern District of Illinois respectively after Defendants' motion was filed.

Jane Doe's pending litigation. Id. Defendants further contend
that this Court should follow Supreme Court precedent set out in
Clapper by refusing a request "to endorse standing theories that
require guesswork as to how independent decisionmakers will
exercise their judgment." Clapper, 568 U.S. at 413.

In their response to Defendants' Motion to Dismiss,
Plaintiffs do not address the three-prong standing analysis
outlined in Spokeo Inc. Rather, they argue that Article III
accords standing to "'persons who are personally denied equal
treatment' by the challenged discriminatory conduct." Docket No.
37 at 22 (citing Allen v. Wright, 468 U.S. 737, 755 (1984)).
Plaintiffs claim that, by allegedly employing a higher burden of
proof as allowed by the DeVos Rules, each school subjected the
individual plaintiffs to different and unequal treatment
compared to the treatment afforded students who suffer harm
based on race and national origin. Id. at 23-24. Plaintiffs
further contend that under Title IX they have rights to
equitable redress and against different and unequal treatment,
rights that are threatened by the DeVos Rules. Id. at 25.

There is no need to reach the merits of these arguments.
Under Spokeo, Inc., plaintiffs must allege an "injury-in-fact"
that is "concrete and particularized" and "actual or imminent,
not conjectural or hypothetical" in order to have standing to
bring a claim. Spokeo, Inc., 136 S. Ct. at 1548. "'Allegations

of possible future injury' are not sufficient" to accord a party standing. Clapper, 568 U.S. at 409 (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Here, two of the individual plaintiffs have settled their claims, which effectively eliminates any argument for standing they may have.[3] They have not suffered any injury as a result of the DeVos Rules. Therefore they have no standing to sue.

The third individual plaintiff, Jane Doe, has had a case pending before OCR for four years which may result in an injury, but currently any claim of injury is merely speculative because it depends on the outcome of the case. Spokeo Inc., 136 S. Ct. at 1548; Clapper, 569 U.S. at 409. Therefore, Jane Doe has not yet suffered an injury-in-fact, and she does not have standing to sue.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **ALLOWED** with respect to EME, Mary Doe and Susan Doe. The Amended Complaint as to Jane Doe is **DISMISSED WITHOUT PREJUDICE**. The

---

[3] Although Plaintiffs assert that Susan Doe has notified OCR that OCR should resume the processing of her complaint (Docket No. 60), according to section 108(i) of the OCR Case Processing Manual (CPM), a complaint with the same or a similar allegation based on the same operative facts against the same recipient that was filed in state or federal court and which was dismissed with prejudice cannot be re-filed with OCR. Docket No. 62.

Amended Complaint as to NCAVA will be **DISMISSED** unless NCAVA moves to amend within thirty days.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge