**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| EQUAL MEANS EQUAL,                         ) | |
| JANE DOE,                                  ) | |
| MARY DOE,                                  ) | |
| SUSAN DOE,                                 ) | |
| THE NATIONAL COALITION AGAINST             ) | |
| VIOLENT ATHLETES,                          ) | |
|                                            ) | |
| and similarly situated others             ) | Case No.1:17cv12043-PBS |
|                                            ) | |
|                          Plaintiffs,       ) | |
| v.                                         ) | |
|                                            ) | **SECOND AMENDED** |
|                                            ) | **COMPLAINT FOR** |
|                                            ) | **DECLARATORY  and** |
|                                            ) | **INJUNCTIVE RELIEF** |
| UNITED STATES DEPARTMENT of                ) | |
| EDUCATION,                                 ) | (Leave to file granted June 10, 2020) |
| and                                        ) | |
| BETSY DEVOS, in her official capacity as   ) | |
| Secretary of Education,                    ) | |
|                                            ) | |
|                          Defendants        ) | |
| _____ ) | |

## I. INTRODUCTION

1.      This lawsuit challenges the Department of Education's (DOE) seven-page "Q and A on

Campus Sexual Misconduct," described by the DOE as a "significant guidance document" and

publicly released by Defendant Betsy DeVos on September 22, 2017 (hereafter "DeVos Rules,"

attached as Exhibit 1 to original complaint). The DeVos Rules state, "the Department intends to

engage in rulemaking on the topic of schools' Title IX responsibilities concerning complaints of

sexual misconduct, including peer-on-peer sexual harassment and sexual violence." The Rules

further state that they will serve as "interim information about how OCR (the Office for Civil

Rights) will assess a school's compliance with Title IX." (DeVos Rules, p.1).

2.     The DeVos Rules violate the plain and unambiguous language of the Title IX statute and regulations.

3.     The DeVos Rules violate the Administrative Procedures Act because they were issued in excess of authority and jurisdiction, and without compliance with the APA

4.     Aspects of the DeVos Rules are unconstitutional because Congress has no general authority to regulate violence against women. *U.S. v. Morrison*, 529 U.S. 598 (2000) (Congress has no authority to regulate violence against women under civil rights laws or the Commerce Clause). To the extent Congress may regulate civil rights matters under the Spending Clause, it cannot do so in a manner that is coercive or that intrudes unconstitutionally into the authority of the states, or otherwise violates the law. *N'tl Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

5.     Plaintiff seeks declaratory and injunctive relief to prevent application of the DeVos Rules in schools, enforcement agencies, and courts.

## II. FACTS

### THE TITLE IX STATUTE AND REGULATIONS

6.     Title IX of the Education Amendments of 1972 is a civil rights law that states that "no person shall, on the basis of sex be . . . subjected to discrimination." Title IX is coextensive with Title VI[1] and Title IV of the Civil Rights Act of 1964.[2] Title IV prohibits discrimination on the

---

[1] 34 C.F.R. § 106.71 states that the procedural provisions applicable to Title VI of the Civil Rights Act (34 CFR §§ 100.6-100.11) are adopted and incorporated therein.

[2] *See Title IX Legal Manual,* THE UNITED STATES DEPARTMENT OF JUSTICE (last visited Jan. 30, 2014), http://www.justice.gov/crt/about/cor/coord/ixlegal.php (noting that "Congress consciously modeled Title IX on Title VI" and citing *Alexander v. Choate,* 469 U.S. 287, 294 (1985) for the proposition that because Title IX and Title VI contain parallel language, the same analytic framework should apply in the context of administrative redress proceedings because both statutes were enacted to prevent unlawful discrimination and to provide remedies for the effects of past discrimination); U.S. DEPARTMENT OF JUSTICE, findings letter against the University of

basis of sex, race, and national origin in public schools.[3]  Title IX applies to public and private schools that receive federal funds.

7.    Long misunderstood to be primarily a sports equity rule for female athletes, Title IX was modeled after Title VI of the Civil Rights Act of 1964, which provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. §§ 2000d - 2000d-7. Title IX uses exactly the same enabling language and states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

8.    Discrimination on the basis of sex includes sex-based violence. Sex-based violence may

---

New Mexico, (April 22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights laws); https://www.justice.gov/opa/file/843901/download; *Justice Department Announces Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's Office,* DEPARTMENT OF JUSTICE (May 1, 2012), http://www.justice.gov/opa/pr/2012/ May/12-crt-561.html (announcing Title IX compliance review and Title IV investigation of the University of Montana and noting, "Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of 1964 each prohibit sex discrimination, including sexual assault and sexual harassment in education programs"); *Resolution Agreement*, http://www.justice.gov/crt/about/edu/documents/ montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX are subject to the same regulations to ensure enforcement of rights regarding discrimination, harassment, and violence in education "on the basis of sex." 28 C.F.R. Part 54 and 34 C.F.R. Part 106). *See also* the Civil Rights Restoration Act of 1987, which made clear that substantive standards from Title VI apply with equal force to Title IX, 20 U.S.C. § 1687; 29 U.S.C. § 794, 42 U.S.C. § 2000d-4a, and 42 U.S.C. § 6101.

[3] Title IV prohibits discrimination in identified public entities, including schools and other "federally assisted programs," on the basis of *"race, color, sex, religion or national origin."* 42 U.S.C. §§ 2000c through 2000c-9; Equal Educational Opportunities Act of 1974, Title II, 20 U.S.C. §§ 1701-1758.

not be addressed on campus under criminal law standards and definitions. [4] Conduct that meets

the criminal definition of "sexual assault" more than satisfies the meaning of "unwelcome;"

however, conduct that is "unwelcome" may not rise to the more onerous criminal definition of

sexual assault. Whether conduct is covered by Title IX is determined by the behavior, not the

label used to describe the behavior.[5] The controlling Title IX standard asks simply whether sex-

based harm was "unwelcome." "Unwelcome" means that which was not requested or invited,

and which an individual considered to be "undesirable or offensive."[6]

9.      Title IX covers all unwelcome conduct based on sex, including that which is committed

by a student against another student. *Davis v. Monroe*, 526 U.S. 629 (1999).

10.      The Title IX regulation states that "no person shall, on the basis of sex be . . . subjected to

discrimination." 34 C.F.R. part 106.31(a).

11.      The Title IX regulation further states that a school "shall not, on the basis of sex," *inter

alia*, "treat one person differently from another in determining whether such person satisfies any

requirement of condition for the provision of such aid, benefit, or service; provide different aid,

benefits or services in a different manner; deny any person such aid, benefit, or service."[34] C.F.R.

part 106.31(b)(1-7).

12.      The Title IX regulation also states that a school shall not on the basis of sex "subject any

---

[4] *Letter from Russlynn Ali*, Assistant Secretary for Civil Rights, Department of Education, Office for Civil Rights (October 26, 2010) ("The label used to describe an incident (*e.g.*, bullying, hazing, teasing) does not determine how a school is obligated to respond. Rather, the nature of the conduct itself must be assessed for civil rights implications. So, for example, if the abusive behavior is on the basis of race, color, national origin, sex, or disability, and creates a hostile environment, a school is obligated to respond in accordance with the applicable federal civil rights statutes and regulations enforced by OCR."); *Education & Title IX,* NATIONAL WOMEN'S LAW CENTER (last visited Jan. 29, 2014), http://www.nwlc.org/our-issues/education-%2526-title-ix.
[5] *Id*.
[6] http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html.

person to separate or different rules of behavior, sanctions, *or other treatment*, or otherwise limit any person in the enjoyment of any right, privilege, advantage or opportunity." 34 C.F.R. part 106.31(b)(1-7).

13.　　The Title IX regulation additionally states that a school "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action, which would be prohibited by Title IX. 34 C.F.R. part 106.8(b)." Equitable redress is also mandatory under Title IV[7] and Title VI.[8]

14.　　The Title IX regulation states that a school shall implement specific and continuing steps to notify students and employees that it does not discriminate on the basis of sex and that it is required by Title IX not to discriminate in such a manner. "Such notification shall state that the

---

[7] Among the University of Montana - Missoula, the U.S. Department of Justice, Civil Rights Division, Educational Opportunities Section and the U.S. Department of Education, Office for Civil Rights, RESOLUTION AGREEMENT, available at http://www.justice.gov/crt/about/edu/documents/montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX both require "equity" and are subject to the same regulations and standards of enforcement regarding discrimination, harassment and violence in education).

[8] *Title VI Enforcement Highlights Office for Civil Rights,* U.S. DEPARTMENT OF EDUCATION (last visited Jan. 30, 2014) http://www2.ed.gov/documents/press-releases/title-vi-enforcement.pdf (repeatedly noting that Title VI requires schools to apply standard of "equity"); *Title IX Legal Manual*, THE UNITED STATES DEPARTMENT OF JUSTICE (last visited Jan. 30, 2014); http://www.justice.gov/crt/about/cor/coord/ixlegal.php; *see also* 42 U.S.C. § 2000d-7 (requiring equal treatment on behalf of all protected class categories). In a section labeled "Civil rights remedies equalization," the statute provides that "(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of § 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], Title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." This "Civil rights remedies equalization" mandate further states that "(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation **to the same extent** as such remedies are available for such a violation in the suit against any public or private entity other than a State." (emphasis added).

requirement not to discriminate extends to employment and that inquiries regarding the application of Title IX may be referred to the designated employee or to the Assistant Secretary for Civil Rights at the Department of Education." 34 C.F.R. part 106.9(a).

15.     The Title IX regulation states that, "A school shall not use or distribute a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex." 34 C.F.R. part 106.9(b)(2).

## THE DEVOS RULES

16.     The DeVos Rules by their terms are limited to sex-based harms including "dating violence,[9] domestic violence,[10] sexual assault,[11] and stalking."[12] (DeVos Rules, p. 1, 2). The DeVos Rules apply generally to all educational programs that receive federal funds.

17.     The DeVos Rules require and permit separate and different treatment of sex-based harms, in violation of Title IX's explicit prohibition against separate and different "treatment."

---

[9] 92% of all domestic violence incidents are committed by men against women. *Violence Against Women, Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*. In Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub.

[10] Women are less likely than men to be victims of violent crimes overall, but women are 5 to 8 times more likely than men to be victimized by an intimate partner. *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*, U.S. Department of Justice, March, 1998; violence by an intimate partner accounts for about 21% of violent crime experienced by women and about 2% of the violence experienced by men. *Id.*

[11] Nine out of ten rape victims are female, U.S. Department of Justice, *2003 National Crime Victimization Survey. 2003*; Women aged 16-24 are four times more likely to be raped than any other population group. Koss, M.P., *id.*

[12] 8% of women and 2% of men in the United States have been stalked at some time in their life. 78% of stalking victims identified in a survey were women, and 22 percent were men. Thus, four out of five stalking victims are women. By comparison, 94 percent of the stalkers identified by female victims and 60 percent of the stalkers identified by male victims were male. Overall, 87 percent of the stalkers identified by the victims were male. National Institute of Justice 1998. *Stalking in America: Findings from the National Violence Against Women Survey*).

18.     The DeVos Rules unlawfully rescind or subvert substantive provisions of Title IX and duly promulgated regulations. 34 C.F.R. part 106, et seq.

19.     The DeVos Rules unlawfully permit the use of more onerous criminal law definitions of offenses, rather than civil rights definitions of offenses, in the response to and determination of sex-based harms covered by Title IX. (DeVos Rules, p. 2).

20.     The DeVos Rules unlawfully permit the application of a more onerous "clear and convincing evidence" standard of proof in the redress of sex-based harms covered by Title IX, rather than the civil rights standard of "preponderance of the evidence." (DeVos Rules, p. 5).

21.     SaVE does not permit use of a clear and convincing evidence standard for civil rights harms based on other protected class categories, such as race and national origin.

22.     The DeVos Rules apply only to civil rights harms based on sex and do not apply to civil rights harms based on other protected categories, such as race and national origin.

23.     The DeVos Rules unlawfully require that offenders of sex-based civil rights harms receive the same rights and treatment as victims of sex-based civil rights harms. (DeVos Rules, p.5). This equality of rights between victims and offenders is not required for civil rights harms based on other protected class categories, such as race or national origin.

24.     The DeVos Rules unlawfully equate civil rights harms based on sex to non-civil rights student misconduct matters.[13] (DeVos Rules, p. 7 n. 19). This equalization of sex-based civil rights harms with non-civil rights matters is not required for civil rights harms based on other protected class categories, such as race or national origin.

25.     On page 2, the DeVos Rules state that schools must comply with the Campus SaVE Act

---

[13] In support of this provision, the DeVos Rules cite *Doe v. Brandeis Univ.*, 177 F.3d 561, 607 (D. Mass. 2016). However, that case did not involve any Title IX claims.

(SaVE) (also known as the Clery Amendment to the 2013 Violence Against Women Reauthorization Act) when responding to and redressing sex-based civil rights harms on campus. SaVE includes substantive rules and regulations that subvert and do not comply with Title IX in many of the same ways that the DeVos Rules subvert and do not comply with Title IX.

26.     SaVE permits separate and different treatment of sex-based harms, including not mandating use of the preponderance standard;[14] requiring fair rather than equitable redress proceedings; and requiring the use of criminal law definitions of offenses, such as "sexual assault," rather than the Title IX definition of "unwelcome," to determine whether a sex-based civil rights offense occurred.

27.     The DeVos Rules were issued on September 22, 2018 along with a Dear Colleague Letter of the same date, in which the DOE rescinded its subregulatory April 2011 Dear Colleague Letter, and April 2014 "Q and A" guidance document.

28.     The DeVos Rules unlawfully incorporate by reference regulations promulgated under SaVE, even though SaVE did not amend Title IX, and at least one federal court has ruled that SaVE can have "no effect" on Title IX because it amended Clery. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

## THE DEVOS RULES VIOLATE TITLE IX

29.     The DeVos Rules violate Title IX because they subject sex-based civil rights harms to separate and different treatment.

30.     The DeVos Rules violate Title IX by permitting schools to apply a burden of proof more onerous than preponderance of the evidence to determine whether a sex-based civil rights harm occurred. The DeVos Rules do not permit schools to apply a burden of proof more onerous than

---

14 *Id.*

preponderance to determine whether civil rights harms occurred on the basis of other protected class categories, such as race and national origin.

31. Application of the preponderance standard has been required under civil rights laws for decades.[15] The Title IX mandate of "equitable" redress forbids application of a burden of proof more onerous than preponderance in the redress of sex-based civil rights harms.[16]

32. Applying a more onerous burden of proof only in sex-based matters would mean that if a student were physically beaten on the basis of national origin, the matter would be resolved under a "preponderance of the evidence" standard, and if the evidence showed the offense more likely than not occurred, the offender would suffer consequences. However, if the *exact* same

---

[15] Letter from Sheralyn Goldbecker, OCR D.C. Office, to John J. DeGioia, President, Georgetown University (May 5, 2004) ("[C]omplaints of sexual harassment were resolved using a clear and convincing evidence standard, a higher standard than the preponderance of the evidence standard, which is the appropriate standard under Title IX for sex discrimination complaints, including those alleging sexual harassment."); Letter from Gary D. Jackson, Regional Civil Rights Director, OCR Region X, to Jane Jervis, President, Evergreen State College (April 4, 1995) (stating that the "evidentiary standard of proof applied to Title IX actions is that of a 'preponderance of the evidence'" and that requiring "'clear and convincing proof'" imposes "a heavier burden of proof than that which is required under Title IX."); OCR also uses a preponderance of the evidence standard when it resolves complaints against recipients, and in fund termination hearings. "Grievance procedures that use [a] higher standard are inconsistent with the standard of proof established for violations of the civil rights laws, and are thus *not equitable* under Title IX." See April 4, 2011 Dear Colleague Letter, pg. 12. (emphasis added).

[16] That Title IX's mandate of equitable treatment requires application of the preponderance standard was acknowledged during congressional hearings related to the enactment of the Campus SaVE Act, which was a 2013 amendment of the Clery Act. One Congressman was strikingly candid about why removing the word "equitable" from the Campus SaVE Act would allow schools to apply a more onerous burden of proof on victims of sex-based harms: "The majority bill said that college campuses must provide for 'prompt and equitable investigation and resolution' of charges of violence or stalking. This would have codified a proposed rule of the Department of Education that would have required imposition of a civil standard or preponderance of the evidence for what is essentially a criminal charge, one that, if proved, rightly should harm reputation. But if established on a barely "more probable than not" standard, reputations can be ruined unfairly and very quickly. The substitute eliminates this provision." (Testimony of Senator Grassley, Iowa, 158 Cong Rec. S 2761, Congressional Record, Sen., 112th Congress, 2nd Session Senate, April 26, 2012; Violence Against Women Reauthorization Act of 2011, Reference: Vol. 158, No. 61).

offender committed **exactly** the same conduct against a female student on the basis of her sex, and **exactly** the same quality of evidence was presented, school officials could assess the matter under the more onerous standard of clear and convincing evidence, and the offender would suffer no consequences. Furthermore, the redress of certain claims would be subject to absurd dual assessments. For example, if a black woman were assaulted on the basis of her race **and** her sex at a school that opted to apply the "clear and convincing evidence" standard in sex-based matters, that single civil rights offense would be subjected to two different burdens of proof.

33. The DeVos Rules violate Title IX because they subject victims of sex-based harms to different treatment on the basis of sex with regard to aids, benefits, and/or services.

34. The DeVos Rules violate Title IX because they subject victims of sex-based harms to separate and different rules of behavior, sanctions, or other treatment.

35. The DeVos Rules violate Title IX because they limit victims of sex-based harms in the enjoyment of their rights, privileges, advantages, and opportunities, compared to victims of other civil rights harms.

36. The DeVos Rules violate Title IX because they state that schools "should" use criminal law definitions,[17] rather than the civil rights definition of "unwelcome,"[18] to assess sex-based civil rights harms. Indeed, the word "unwelcome" appears nowhere in the DeVos Rules, but the

---

[17] The DeVos Rules cite to 34 C.F.R. § 106.8(b) as support for the use of criminal law terms to describe harms addressed on campus under Title IX grievance procedures, yet those regulations were promulgated under a 2013 amendment to the Clery Act; they were not promulgated under Title IX, and at least one federal court has already ruled that those regulations can have "no effect" on Title IX because Congress cannot lawfully amend Title IX by amending the Clery Act. *Doe v. U.S. Dept. of Health and Human Services*, 85 F. Supp. 3d 1, 11 (D.D.C. 2015).
[18] "Unwelcome" is defined as conduct the student "did not request or invite it and considered the conduct to be undesirable or offensive. The age of the student, the nature of the conduct, and other relevant factors affect whether a student was capable of welcoming the sexual conduct. A student's submission to the conduct or failure to complain does not always mean that the conduct was welcome." http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html.

criminal law term "sexual assault" appears *nine* times. The DeVos Rules do not state that schools should use criminal law definitions to assess other civil rights offenses, such as harms based on race or national origin. The DeVos Rules thus subject victims of sex-based harms to different, unequal, and inequitable treatment because criminal law definitions are more onerous and more difficult to prove than the civil rights definition of "unwelcome."

37.     The DeVos Rules violate Title IX because they permit schools to apply an evidentiary burden of proof more onerous than a preponderance of the evidence when responding to and redressing sex-based harms, but not when responding to and redressing other civil rights harms based on race or national origin. (DeVos Rules, p.5).

38.     The DeVos Rules violate Title IX because they state that the burden of proof applied in sex-based civil rights cases should be the same as that which is applied in non-civil rights student misconduct matters (DeVos Rules, p.5, n.19) rather than civil rights matters.

39.     The DeVos Rules violate Title IX by allowing schools to use or distribute a publication, which suggests by text or illustration that such school treats applicants, students, or employees differently on the basis of sex.

## MASSACHUSETTS LAW

40.     Massachusetts General Law, chapter 93, § 102, the Massachusetts Equal Rights Act, guarantees females the full and equal benefit of all laws and proceedings for the security of persons …"

41.     The Equal Protection Clause of the Massachusetts Constitution prohibits discriminatory and unequal treatment based on sex. (Massachusetts Constitution, Part 1, Article I). Claims of sex/gender discrimination under the Massachusetts Constitution are subject to strict scrutiny. *Commonwealth v. King*, 374 Mass. 5, 21 (1977).

## FACTS RELATED TO THE CLASS OF INDIVIDUALS AFFECTED

42.     One in three to one in four women are victimized by sexual assault during college.[19]

Given that approximately 916,000 women graduated from post-secondary schools in 2009,[20] this

means about 60,000 women are victimized by sexual assault during college. By comparison,

about 26,000 sexual assaults occur in the military each year,[21] which number includes not only

rape and attempted rape but also relatively minor sexual touching not rising to the level of

attempted rape.[22] Approximately 30% of sexual assault victims in the general population file

reports.[23] A similar number of military victims file reports.[24] The number is much lower for

college victims where only 5-12% of victims file reports.[25]

43.     Female students in the United States have endured pervasive unequal treatment,

harassment and violence, on the basis of sex, throughout all levels of education.[26] Women,

including female postsecondary students, suffer disproportionately high rates of domestic and

---

[19]   https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, p.xii-xiii and 2-1 (2007); U.S. Department of Justice Office of Community Oriented Policing Services, Acquaintance Rape of College Students, March 28, 2002, http://www.cops.usdoj.gov/pdf/e03021472.pdf; https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf; Freyd, J. Rosenthal, M. & Smith, C., Preliminary Results from the University of Oregon Sexual Violence and Institutional Behavior Campus Survey, 2014, http://dynamic.uoregon.edu/jjf/campus/UO-campus- results-30Sept14.pdf.

[20]   http://www.census.gov/prod/2012pubs/p20-566.pdf.

[21]   An estimated 26,000 sexual assaults occurred in all branches of the military in 2012, http://www.sapr.mil/public/docs/reports/FY12_DoD_SAPRO_Annual_Report_on_Sexual_Assault-VOLUME_ONE.pdf

[22]   *Id.*

[23]   http://www.rainn.org/get-information/statistics/reporting-rates.

[24]   http://www.usccr.gov/pubs/09242013_Statutory_Enforcement_Report_Sexual_Assault_in_the_Military.pdf, p.8.

[25]   http://www.nij.gov/publications/pages/publication-detail.aspx?ncjnumber=182369 (2001) (5%); https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, 5-22 (2007) (12.9%).

[26]   Sadker, & Zittleman, *Still Failing at Fairness, How Gender Bias Cheats Girls and Boys in School and What We Can Do About It*, Scribner Press 2009; www.hks.harvard.edu/centers/carr/research-publications/carr-center-working-papers-series/caplan-and-ford-%22the-voices-of-diversity-%22.

dating violence,[27] sexual assault[28] and stalking.[29]  In fact, according to some studies, a student is more likely to be victimized by sexual assault if she attends college than if she does not.[30]

44.     Because the DeVos Rules cover only severe forms of sex-based civil rights harms, a student who endures less serious verbal harassment will have her civil rights redressed properly under Title IX, without application of the clear and convincing evidence standard. This means more serious physical offenders of sex-based civil rights harms are less likely to be held responsible compared to less serious verbal offenders of sex-based civil rights harms.

45.     Alongside less protective standards, the DeVos Rules are silent on the need for schools to comply with civil rights laws at all. Indeed, the entire DeVos Rules mention the phrase "civil rights" only when citing the title of the "Office for Civil Rights."

---

[27] Women are less likely than men to be victims of violent crimes overall, but women are 5 to 8 times more likely than men to be victimized by an intimate partner. *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*, U.S. Department of Justice, March, 1998; violence by an intimate partner accounts for about 21% of violent crime experienced by women and about 2% of the violence experienced by men.  *Id.* 92% of all domestic violence incidents are committed by men against women. *Violence Against Women, Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*. In Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub.

[28] Nine out of ten rape victims are female, U.S. Department of Justice, *2003 National Crime Victimization Survey. 2003*; Women aged 16-24 are four times more likely to be raped than any other population group.  Koss, M.P., *id.*

[29] 8% of women and 2% of men in the United States have been stalked at some time in their life. 78% of stalking victims identified in a survey were women, and 22 percent were men.  Thus, four out of five stalking victims are women.  By comparison, 94 percent of the stalkers identified by female victims and 60 percent of the stalkers identified by male victims were male.  Overall, 87 percent of the stalkers identified by the victims were male. National Institute of Justice 1998. *Stalking in America: Findings from the National Violence Against Women Survey*).

[30] One in four students in the United States is victimized by rape or attempted rape during college, *see* n.1, while one in six American women is the victim of an attempted or completed rape in her lifetime. National Institute of Justice & Centers for Disease Control & Prevention. *Prevalence, Incidence and Consequences of Violence Against Women Survey. 1998.*

46.     The DeVos Rules threaten and violate rights guaranteed to the Plaintiff and similarly situated others. Relief is necessary to protect the rights of the Plaintiff and all individuals affected or threatened by sex-based harms.

## PLAINTIFF EQUAL MEANS EQUAL

47.     Equal Means Equal (EME) is a national 501(c)(4) non-profit organization whose sole purpose is to advocate for sex/gender equality and fully equal rights for women. EME's involvement in this litigation is intended to represent EME in its own right, and the multitude of individuals who have suffered and are at risk for suffering harms based on sex, who will decline to report or seek redress for fear their rights under Title IX will not be fully enforced.[31]

48.     EME has over twenty-thousand active supporters, a significant percentage of whom are students or others protected by Title IX. EME actively engages in advocacy and educational services related to women's equality under the law. Plaintiffs Jane Doe and Susan Doe are associated with and supported by EME.

49.     Since the issuance of the DeVos Rules in September 2017, EME has heard from numerous women and victims of sex-based harm that they are unlikely to report or seek redress on campus for sex-based harms for fear they will not receive equal treatment under Title IX.

## PLAINTIFF NATIONAL COALITION AGAINST VIOLENT ATHLETES

50.     Plaintiff National Coalition Against Violent Athletes (NCAVA) is a national 501(c)(3) non-profit organization, founded in 1997, whose sole mission is to advocate for the equal treatment of victims of sex-based harms under civil rights laws, such as Title IX, and related laws. NCAVA provides legal referrals, counsel and advocacy to victims of sex-based harms,

---

[31] *National Women's Law Center Press* Release, September 22, 2017, https://nwlc.org/press-releases/nwlc-reacts-to-education-departments-interim-rule/.

including those victimized by athletes. NCAVA provides services to help victims achieve justice. NCAVA also promotes awareness and education on Title IX and other laws, the prevalence of athlete-involved violence and its effect on victims, and provides related training and education programs. NCAVA maintains a corporate seal and principal office as well as additional offices when deemed necessary by its Board of Directors. Pursuant to its bylaws, NCAVA operates by way of a Board of Directors, which is comprised of five active members. Board members each serve two year terms, without pay. The Board of Directors, with the recommendation of the Executive Director, fills board vacancies through appointment of existing members. The Board of Directors consists of four elected, one-year tenure, officer-level positions as nominated by the Board. Each position is responsible for specific duties associated with each office. In further accordance with its bylaws, NCAVA holds regular quarterly meetings in August, November, February, and May, on a dedicated day, which are governed by agendas. NCAVA's bylaws further provide that a majority of board members constitutes a quorum for purposes of voting. In the absence of a quorum, voting is limited to meeting adjournment. NCAVA's established bylaws similarly provide guidance pertaining to fiscal policies and executive functions.

51.    NCAVA participates in direct legal action to advocate for the fully equal treatment of women under Title IX. For example, NCAVA has filed complaints with the OCR at the DOE, and the NCAA, and has filed amicus briefs in Title IX cases, advocating for the fully equal treatment of women and sex-based harms under civil rights laws, such as Title IX.

52.    NCAVA  joined this complaint after its initial filing because it has had an opportunity to experience the negative effects of the DeVos Rules since their issuance in September 2017. NCAVA has worked on cases since that time where, when addressing sex-based civil rights harms, schools used criminal law definitions rather than Title IX definitions; applied a clear and

convincing evidence standard rather than Title IX's preponderance standard; subjected the harms to the same treatment as non-civil rights harms; granted the same rights to offenders as victims; and subjected the harms to separate and different treatment compared to harms based on race and national origin.

53.     The DeVos Rules interfere with NCAVA's daily operations and its mission of providing effective legal assistance and ensuring that victims receive fully equal and effective redress in the aftermath of sex-based harm. The DeVos Rules have required the diversion of NCAVA's resources and have frustrated its efforts to combat the harmful effects of the DeVos Rules because the DeVos Rules conflict with and impair and frustrate NCAVA's organizational mission and priorities. As an example, the DeVos Rules forced NCAVA to raise and dedicate additional donations that were then specifically spent to assist clients seeking legal help because the DeVos Rules have violated their civil rights, subjected them to unfair treatment, causing unsatisfactory and unsuccessful results, necessitating legal action. Indeed, NCAVA has seen a surge in the number of clients and members seeking help, whose need for assistance is a direct result of the Devos Rules. In addition to substantial rises in legal costs, NCAVA has diverted substantial resources conducting additional research, advocacy, training, education, and other similar programs because of the DeVos Rules. The DeVos Rules have also forced NCAVA to divert substantial resources in the form of advocacy to deal with increased demand for redress at campus grievance hearings, and at the OCR. While NCAVA's mission is to ensure equal treatment of victims of sex-based harm, the DeVos Rules have forced them to divert resources away from that mission and toward dealing with the difficulties of dealing with the added burdens on victims occasioned by the DeVos Rules. Because OCR is mandated to use the Devos Rules while schools are not, NCAVA has had to devote enormous resources to helping victims

navigate different systems that are supposed to be applying the same law. The confusion AND the added demands of helping victims not only understand their rights but also advocate for their enforcement under different rules, in a context where the rules SHOULD be the same.

54. The DeVos Rules have also been devastating to NCAVA's mission and operational activities because victims have expressed an unwillingness to report sex-based harm to campus authorities and law enforcement officials, which prevents NCAVA from effectuating its mission. This chilling effect has been observed by NCAVA since the issuance of the DeVos Rules. Declines in reporting and participation in redress proceedings directly threaten and frustrate NCAVA's mission and purpose.

55. The DeVos Rules disfavor clients of NCAVA and frustrate NCAVA's mission by subjecting sex-based harms to different treatment, thus making findings of responsibility for sex-based harms less likely compared to findings of responsibility for other civil rights harms.

56. The DeVos Rules require the use of definitions of criminal law terms to address and determine sex-based harms, which are more onerous than Title IX's definition of "unwelcomeness." The use of more onerous definitions disfavors clients of NCAVA and frustrates NCAVA's mission by making findings of responsibility less likely compared to findings of responsibility for other civil rights harms.

57. The DeVos Rules make it difficult for NCAVA to provide appropriate legal advice to clients about how schools and oversight agencies will address complaints of sex-based harm. In the aftermath of one recent incident, NCAVA spoke to an official at OCR on behalf of a victim to inquire about the agency's inadequate response. The official stated, "Due to the current administration's viewpoint, we cannot effectively investigate many of these claims."

58. NCAVA has had to devote enormous resources and staff time to reviewing the DeVos

Rules, and assess their effect in order to understand how they differ from what Title IX guarantees, so that NCAVA can advise clients about how the Rules affect their rights. This diversion of resources has frustrated NCAVA's ability to provide its array of services.

## THE INDIVIDUAL PLAINTIFFS

59.     Plaintiff Jane Doe is currently involved as a complainant in an ongoing Title IX investigation (OCR case number 01-15-2216, Region I) against Stonehill College in Easton, Massachusetts. Claims alleged include improper application of the preponderance of evidence rule, use of criminal law standards, and separate, different, and unequal treatment based on sex.

60.     After the DeVos Rules were announced, and prior to the filing of this action, Jane Doe contacted the OCR office investigating her complaint and asked for an assurance that the DeVos Rules would not be used to evaluate her complaint. OCR was asked to confirm in writing that the DeVos Rules "will have no effect" on her case. OCR declined to assure Jane Doe that the DeVos Rules would not be applied in her case and stated simply that the investigation would be conducted in accordance with Title IX and its implementing regulation, 34 C.F.R. Part 106. More recently, on February 12, 2018, OCR acknowledged that it is currently using the DeVos Rules in Jane Doe's case, along with the "Revised Sexual Harassment Guidance previously issued by OCR in 2001."

61.     Plaintiff Mary Doe is currently involved as a plaintiff in an ongoing lawsuit in Suffolk Superior Court (Civil Action No.: 1684-CV-03765) arising out of a sexual assault Doe suffered on campus when she was a student at Boston University.

62.     Allegations in Mary Doe's lawsuit include that Boston University violated Title IX by using criminal law definitions to investigate and determine her Title IX complaint, and by subjecting her Title IX complaint to separate and different treatment compared to the treatment

afforded victims of civil rights harms based on race and national origin.

63. Mary Doe's rights are threatened and violated by the DeVos Rules because courts in Title IX lawsuits have already accepted the DeVos Rules as relevant and admissible on behalf of schools seeking to defend themselves against allegations that they did not comply with Title IX in response to sex-based harm. *See e.g.*, *Kollaritsch et al., v. Michigan State University Board of Trustees, et al.*, 1:15-cv-01191-PLM-PJG, United States District Court, Western District of Michigan, (court order issued 10/17/17 denying motion to strike and granting defendants leave to file supplemental authority regarding the DeVos Rules, and describing the Rules as a "significant change in Guidance on Title IX.")

64. Plaintiff Susan Doe is currently involved as a complainant in an ongoing Title IX investigation (OCR case number: 5-17-2020, Region V) against The School of the Art Institute of Chicago (SAIC) in Chicago, Illinois, arising out of numerous instances of extensive severe sex-based harm involving numerous instances of penetration, perpetrated by an SAIC employee who was also Susan Doe's direct advisor. Plaintiff Susan Doe was forced to leave SAIC because of the sex-based harm she suffered. She is currently enrolled as a student in Massachusetts. Allegations in her OCR complaint include that SAIC subjected her to separate and different treatment and did not use Title IX's definition of unwelcome to assess her complaint.

65. Prior to the filing of this action, on October 14, 2017, Susan Doe contacted OCR to determine whether they would be using the DeVos Rules to evaluate her case. She specifically asked OCR to confirm in writing that they "will not apply" the DeVos Rules to her case. OCR declined to assure Susan Doe that the DeVos Rules would not be applied to her case and stated "to be honest, I do not thing we can such (sic) assurance in writing or otherwise." More recently, on February 14 2018, Susan Doe again contacted OCR and asked if the DeVos rules were being

applied in her case. The OCR official affirmed that OCR is relying on the DeVos Rules, as well as the 2001 Revised Sexual Harassment Guidance, and a Dear Colleague Letter from January 25, 2006, along with the Title IX statute and regulations. On May 11, 2018, the same OCR official stated that OCR is currently applying the DeVos Rules to Susan Doe's case, along with the "Revised Sexual Harassment Guidance previously issued by OCR in 2001."

### III.    JURISDICTION AND VENUE

66.    Jurisdiction is conferred by 28 U.S.C. § 1651 (writs), § 1331 (federal question), § 1346(a)(2); § 1361 (compel agency to act or not act) § 2201, § 2202; 5 U.S.C. § 702 (legal wrong suffered because of agency action).

67.    Venue is appropriate under 28 U.S.C. § 1391(e) because plaintiff is a national nonprofit organization whose work includes advocacy on behalf of persons residing in Massachusetts, including plaintiffs involved in the original complaint in this matter whose cases were dismissed but those rulings are currently on appeal, and defendants are officers and agencies of the United States.

### IV.   PARTIES

68.    Equal Means Equal (EME) is a 501(c)(4) organization, whose primary purpose is to advocate for sex/gender equality. The President is Kamala Lopez and the Directors are Kamala Lopez and Natalie White. It is incorporated in California. EME is associated with Plaintiff Jane Doe and Susan Doe, both of whom are supported by, and support, EME and its mission.

69.    The National Coalition Against Violent Athletes (NCAVA) is a 501(c)(3) organization. It was founded in 1997 and is a national non-profit organization whose mission is to serve the advocacy needs of victims of sex-based harm under Title IX and related laws.

70.    Jane Doe is a female college student and resident of Middlesex County, Massachusetts.

The man who assaulted her was a member of her school's hockey team at the time of the attack. Jane Doe supports and is supported by Plaintiffs EME and NCAVA. Jane Doe expected her school to fully enforce her rights under Title IX, on par with the enforcement of rights afforded victims of harms based on race and national origin.

71.     Mary Doe is a former Boston University student and resident of New York. She is currently a plaintiff in a Massachusetts Superior Court lawsuit. The man who assaulted her was a member of the hockey team at the Massachusetts Institute of Technology at the time of the attack. Mary Doe expected her school to fully enforce her rights under Title IX, on par with the enforcement of rights afforded victims of harms based on race and national origin.

72.     Susan Doe is a female postsecondary school student in Massachusetts and is a resident of Middlesex County. She supports and is supported by Plaintiff EME. Susan Doe expected her school to fully enforce her rights under Title IX, on par with the enforcement of rights afforded victims of harms based on race and national origin.

73.     Defendant United States Department of Education is an executive agency of the United States government. The Department's principal address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

74.     Defendant Betsy DeVos is the United States Secretary of Education. Her regular place of business is 400 Maryland Avenue, S.W., Washington, D.C. 20202. She is sued in her official capacity and is responsible for the implementation and enforcement of Title IX and other civil rights laws.

## IV.  PARTIES

75.     The National Coalition Against Violent Athletes (NCAVA) is a 501(c)(3) organization. It was founded in 1997 and is a national non-profit organization whose mission is to serve the advocacy needs of victims of sex-based harm under Title IX and related laws.

76.     Defendant United States Department of Education is an executive agency of the United States government. The Department's principal address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

77.     Defendant Betsy DeVos is the United States Secretary of Education. Her regular place of business is 400 Maryland Avenue, S.W., Washington, D.C. 20202. She is sued in her official capacity and is responsible for the implementation and enforcement of Title IX and other civil rights laws.

## V.  CAUSES OF ACTION

### COUNT I
### Administrative Procedures Act
### (Action in Excess of Authority, 5 U.S.C. § 706(2)(C))

78.     Plaintiff incorporates by reference paragraphs 1–75.

79.     The DOE's delegated powers are limited by 20 U.S.C. § 1682, which states that the DOE "is authorized and directed to effectuate the provisions of [Title IX]…by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of objectives of the statute…" Rules, regulations, and orders of general applicability that are inconsistent with the objectives of Title IX are beyond the jurisdiction of the DOE's authority.

80.     The APA provides a general cause of action for parties adversely affected or aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 702-704.

81.     Defendants may not act in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

82.     Title IX forbids, and Congress has not delegated to the DOE the authority to issue, rules that subject victims of sex-based civil rights harms to different treatment.

83.     Congress has not delegated to the DOE the authority to incorporate by reference the

regulations promulgated under the Campus SaVE Act.

84.     Congress has not delegated to the DOE the authority to require use of criminal law definitions to assess whether a civil rights offense under Title IX has occurred.

85.     Congress has not delegated to the DOE the authority to subject only sex-based civil rights harms to an inequitable burden of proof, or a burden of proof more onerous than that which is applied in the redress of civil rights harms based on other protected class categories such as race or national origin.

86.     Congress has not delegated to the DOE the authority to require schools to provide to offenders of sex-based civil rights harms the same legal protections as are afforded victims of sex-based civil rights harms.

87.     Congress, and thus the DOE, lack authority to regulate violence against women. *U.S. v. Morrison*, 529 U.S. 598 (2000).

88.     The DeVos Rules exceed Defendants' authority under the Spending Clause. *N'tl Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

## COUNT II
### Administrative Procedures Act
### (Failure to Adhere to Procedures Required by Law when Promulgating Regulations)

89.     Plaintiff incorporates by reference paragraphs 1–86.

90.     Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

91.     The APA requires an agency to give "(g)eneral notice of proposed rule making" and provide "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C.

§ 553(b), (c).

92.    Defendants must involve the public in the development of proposed regulations and to "submit such regulations to a negotiated rulemaking process."

93.    Defendants promulgated the DeVos Rules without adhering to the procedural requirements of 5 U.S.C. § 553 (b), (c) and 20 U.S.C. § 1098a.

94.    The DeVos Rules should therefore be vacated and set aside.

**COUNT III**
**Administrative Procedures Act**
**(Actions Not in Accordance with Law)**

95.    Plaintiff incorporates by reference paragraphs 1 through 92.

96.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

97.    An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *Motor Veh. Mfrs. Ass'n v. State Farm Ins.*, 463 U.S. 29, 43 (1983).

98.    The DeVos Rules give no explanation for subjecting only sex-based civil rights harms to different and worse treatment compared to other types of civil rights harms. Nor does it contain any justification for granting offenders of sex-based civil rights harms the same rights and treatment as those afforded to victims of sex-based civil rights harms. Offenders of civil rights harms based on race and national origin are not granted the same rights as victims of civil rights harms based on race and national origin, or the same rights of offenders of civil rights harms

based on sex.

99.     The DeVos Rules failed to consider important aspects such as the fact that the Title IX regulations explicitly and repeatedly forbid different treatment based on sex. The DeVos Rules clearly failed to consider this critically important aspect of Title IX as this prohibition is nowhere mentioned in the DeVos Rules.

100.    The DeVos Rules failed to consider that under Title IX offenses must be defined using the civil rights definition of "unwelcome," not criminal law definitions, such as "sexual assault." That this important aspect of Title IX was not considered is obvious because the word "unwelcome" appears nowhere in the DeVos Rules.

101.    The DeVos Rules failed to consider that Title IX is coextensive with and must be treated the same as Title IV and Title VI of the Civil Rights Act of 1964.

102.    The DeVos Rules are unlawful, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

103.    The DeVos Rules unlawfully require schools to comply with the Campus SaVE Act. This is plainly illegal because the Campus SaVE Act includes substantive rules and regulations that subvert and do not comply with Title IX and other laws in many of the same ways that the DeVos Rules subvert and do not comply with Title IX and other laws. For example, the SaVE Act incorporates criminal law definitions, such as "sexual assault," rather than using civil rights definitions such as "unwelcome," to determine whether a sex-based civil rights offense occurred. Further, the SaVE Act permits schools to use a burden of proof more onerous than preponderance of the evidence and separates out only sex-based civil rights harms for different and worse treatment compared to civil rights harms based on other protected class categories such as race and national origin.

104.    The DeVos Rules state that they rescind the DOE's August 2014 Questions and Answers on Title IX, in which the DOE expressly states that the SaVE Act has "no effect on Title IX." Federal courts have also expressly held that the SaVE Act can have no effect on Title IX. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

105.    The DeVos Rules were issued without apparent approval by the President of the United States as required by Title IX, 20 U.S.C. § 1682.

106.    The DeVos Rules are not supported by Title IX's text, implementing regulations, or legislative history.

107.    The DeVos Rules should therefore be vacated and set aside.

## COUNT IV
### Administrative Procedures Act
### (Actions Contrary to Constitutional Right, Power, Privilege, or Immunity)

108.    Plaintiff incorporates by reference paragraphs 1 through 105.

109.    The DeVos Rules are contrary to constitutional right, power, privilege, or immunity.

110.    The DeVos Rules should therefore be vacated and set aside.

## COUNT V
### Administrative Procedures Act
### (Actions Unwarranted by the Facts)

111.    Plaintiff incorporates by reference paragraphs 1 through 108.

112.    Under the APA, actions are prohibited when unwarranted by the facts and lacking a satisfactory explanation for the actions including a rational connection between the facts found and the choice made.

113.    The DeVos Rules are not supported by facts, satisfactory explanation, or rational connection between the choices made and actions taken, nor could they as no facts could justify subjecting sex-based harms to separate and different treatment in order to comply with a law that

prohibits separate and different treatment of sex-based harms.

114.    The DeVos Rules should therefore be vacated and set aside.

## COUNT VI
## First Amendment

115.    Plaintiff incorporates by reference paragraphs 1 through 112.

116.    The First Amendment guarantees Plaintiff and similarly situated others rights of speech and petition.

117.    Defendants have a duty to promulgate and enforce laws consistent with the dictates of the First Amendment to the United States Constitution.

118.    The DeVos Rules chill Plaintiff's First Amendment rights by deterring victims of sex-based civil rights harms from reporting and seeking redress.

119.    Defendants' actions and inactions have caused harm and will continue to cause harm to the Plaintiff, and to the rights of individuals at risk for suffering sex-based harms, by deterring the reporting and redress of sex-based harms.

120.    Defendants' actions are unlawful, unreasonable, and exceptional.

## COUNT VII
## Title IX

121.    Plaintiff incorporates by reference paragraphs 1 through 120.

122.    Title IX prohibits discrimination on the basis of sex, "under any program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

123.    The DOE is a program or activity receiving federal financial assistance.

124.    Title IX has been given the broadest possible effect to ensure maximum protection against sex discrimination, including sex-based harm, in education.

125.    The DeVos Rules are discriminatory based on sex.

126. The DeVos Rules unlawfully subject sex-based harms to separate and different treatment.

127. The DeVos Rules harm the rights of persons protected by Title IX.

128. The DeVos Rules are facially discriminatory and will cause discriminatory effects by facilitating or encouraging discrimination by funding recipients.

129. A facially discriminatory policy creates a hostile environment in educational opportunities, benefits, programs, and activities for all individuals protected by Title IX.

130. Defendants have the ability to remedy the DeVos Rules.

**COUNT VIII**
**Tenth Amendment**

131. Plaintiff incorporates by reference paragraphs 1 through 129.

132. The Tenth Amendment to the United States Constitution expressly reserves to the states all powers except those limited powers granted to the federal government.

133. The Tenth Amendment ensures the division of powers between the states and federal government that is necessary for the dual sovereignty of the federal system.

134. The Tenth Amendment reserves to the states the authority to regulate violence against women.

135. Congress, and thus the DOE, lack authority to regulate violence against women. *U.S. v. Morrison*, 529 U.S. 598 (2000).

136. The DeVos Rules violate the Tenth Amendment, exceed Congress's Article I powers, and run afoul of the Constitution's principles of federalism by creating an extensive scheme that interferes with and undermines the sovereign authority of the states to regulate violence against women.

137. Enforcement of the DeVos Rules unconstitutionally requires states to act as agents of the federal government's regulatory scheme and require the states to facilitate the implementation of

a discriminatory federal policy.

## COUNT IX
### Spending Clause

138.    Plaintiff incorporates by reference paragraphs 1 through 136.

139.    Article 1, § 8 of the United States Constitution limits the power of Congress to attach conditions to the receipt of federal funds, including that the conditions must pertain to a federal interest, may not intrude excessively into the power of the states or unlawfully coerce funding recipients, and may not require funding recipients to engage in activities that are discriminatory or unconstitutional.

140.    Massachusetts law requires that persons within its jurisdiction receive "the full and equal benefit of all laws and proceedings for the security of persons …" G.L. c. 93, § 102, Massachusetts Equal Rights Act. The Equal Protection Clause of the Massachusetts Constitution prohibits discriminatory and unequal treatment based on sex. Massachusetts Constitution, Part 1, Article I. Claims of sex/gender discrimination under the Massachusetts Constitution are subject to strict scrutiny. *Commonwealth v. King*, 374 Mass. 5, 21 (1977).

141.    The purpose of Title IX is to ensure the equal treatment of women and sex-based harms.

142.    There is no justification for the different treatment of harms based on sex.

143.    The DeVos Rules intrude excessively into the authority of the states, and unlawfully coerce Massachusetts funding recipients by forcing them to violate the law by treating sex-based harms differently as a condition of receiving federal funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter an order vacating and setting aside the DeVos Rules in their entirety;

2. Enter an order enjoining Defendants from requiring or permitting entities covered by Title IX to abide by the DeVos Rules;

3. Enter an order vacating and setting aside so much of the DeVos Rules as violate state or federal law;

4. Enter an order declaring that Defendants have violated the APA;

5. Enter an order declaring all or parts of the DeVos Rules unlawful;

6. Enter an order declaring all or parts of the DeVos Rules discriminatory;

7. Enter a restraining order and permanent injunction;

8. Enter a nationwide injunction;

9. Award Plaintiff their reasonable costs and attorneys' fees;

10. Grant such further and additional relief as this Court may deem just and proper.

Respectfully submitted,

The Plaintiff,
National Coalition Against Violent Athletes

By their attorney,

/s/ Wendy Murphy

Wendy Murphy
154 Stuart Street
Boston, MA 02116
wmurphy@nesl.edu
617-422-7410
BBO#550455

## <u>CERTIFICATE   OF   SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party by the ECF filing system.

<u>/s/ Wendy J. Murphy</u>

Wendy J. Murphy

Dated:  June 10, 2020