**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EQUAL MEANS EQUAL,<br>JANE DOE,<br>MARY DOE,<br>SUSAN DOE, and<br>THE NATIONAL COALITION AGAINST VIOLENT ATHLETES,<br><br>  *Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION and ELISABETH D. DEVOS, *in her official capacity as Secretary of Education*,<br><br>  *Defendants*. | Civil Action No. 17-12043-PBS<br><br>*Leave to file granted August 28, 2020 and September 1, 2020* |

**DEFENDANTS' CONSOLIDATED MEMORANDUM OF REASONS IN SUPPORT OF THEIR SECOND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND RESPONSE TO PLAINTIFFS' PROPOSED SUPPLEMENTAL FACTS ON STANDING**

**TABLE OF CONTENTS**

Background ................................................................................................................................. 1

Legal Standard ........................................................................................................................... 2

Argument ................................................................................................................................... 3

    I.    The Court Should Dismiss This Case as Moot Because ED Has Withdrawn the Challenged Q&A and There Is No More Possible Relief for the Court to Award. .................... 3

    II.    Even if the Case Were Not Moot, NCAVA Has Still Failed to Establish Standing. ........ 5

        A.    NCAVA Appears Defunct, and the WeLead Project Is a Separate Legal Entity. ......... 5

        B.    NCAVA's Allegations of Injury Remain Vague and Conclusory. .............................. 7

Conclusion ................................................................................................................................. 9

This Court lacks subject matter jurisdiction to decide this case for two independent reasons. *First*, the only guidance document that Plaintiffs challenge, the Department of Education's (ED's) 2017 Q&A on Campus Sexual Misconduct (2017 Q&A), has been rescinded. *See Rescinded Policy Guidance*, Office for Civil Rights (Aug. 26, 2020), https://www2.ed.gov/about/offices/list/ocr/ frontpage/faq/rr/policyguidance/respolicy.html. Accordingly, there is no longer any relief that the Court can award beyond what ED has already done. As a matter of well-established First Circuit law, this case is moot and must be dismissed for lack of subject matter jurisdiction.

*Second*, even if any party still had standing to challenge the 2017 Q&A, that party is not the National Coalition Against Violent Athletes (NCAVA). Indeed, NCAVA's proposed Supplemental Facts on Standing, ECF No. 101-1 [hereinafter Suppl. Facts], raise far more questions than they answer: Is NCAVA still a going concern? What is its relationship to the WeLead Project, the entity that "http://ncava.org" redirects to? And has it ever been injured by the 2017 Q&A? In the continued absence of plausible factual allegations that NCAVA is an active organization that has been injured by the 2017 Q&A, this Court should dismiss NCAVA's claims even if this case were otherwise justiciable.[1]

## BACKGROUND

Defendants have previously described the statutory and regulatory background surrounding the 2017 Q&A, *see* Defs.' Mem. Reasons in Support of Their Mot. Dismiss Pls.' Am. Compl. 2–5, ECF No. 27-1, so they do not repeat it here.

---

[1] On August 28, 2020, this Court granted NCAVA leave to file its supplemental facts on standing, directed NCAVA to "now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures," and provided that Defendants' response was "due 2 weeks from the date of the filing of the Supplemental Facts." Electronic Order, ECF No. 104. NCAVA never actually filed the Supplemental Facts, but Defendants are including their response to the proposed filing here for the Court's convenience.

On May 6, 2020, ED announced a final rule that establishes in detail schools' responsibilities to respond to sexual harassment under Title IX. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (published in the Federal Register on May 19, 2020) [hereinafter Final Rule]. The Final Rule is explicit that "[t]o the extent that these final regulations differ from any of the Department's guidance documents (whether such documents remain in effect or are withdrawn), these final regulations, when they become effective, and not the Department's guidance documents, are controlling." *Id.* at 30,535. The Final Rule became effective on August 14, 2020. *See id.* at 30,026.

Shortly after the Final Rule became effective, ED formally rescinded the 2017 Q&A. *See Rescinded Policy Guidance*, *supra*. Accordingly, ED will not consider the 2017 Q&A in evaluating sexual harassment allegations that occur after the Final Rule's effective date, August 14, 2020. *See* Letter from Office for Civil Rights to Educators and Stakeholders (Aug. 26, 2020), https://www2.ed.gov/policy/gen/guid/fr-200826-letter.pdf (observing that "to the extent that [the 2017 Q&A is] helpful to recipients for appropriately responding to sexual harassment that allegedly occurred prior to August 14, 2020, they will remain accessible on the Department's website"). Defendants notified the Court of this development and requested leave to file a motion to dismiss within twenty-eight days of the Court granting leave. ECF No. 105. The Court granted Defendants' motion on September 1, 2020. ECF No. 107.

## LEGAL STANDARD

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). The decision to dismiss a case for lack of jurisdiction, including if the case is moot, "should ordinarily be decided in advance of any

2

determination on the merits." *Am. Civil Liberties Union of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013). In addition to the complaint, a court "may consider whatever evidence has been submitted" to assess its jurisdiction. *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996). If, upon considering these documents, the court determines that it lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time it lacks subject-matter jurisdiction, the court must dismiss the action.").

## ARGUMENT

### I. The Court Should Dismiss This Case as Moot Because ED Has Withdrawn the Challenged Q&A and There Is No More Possible Relief for the Court to Award.

Article III's narrow limits on federal court jurisdiction are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Because Article III courts exist to resolve concrete "cases" and "controversies," U.S. Const. art. III, sec. 2, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). This is because "the court cannot give any 'effectual relief' to the potentially prevailing party," and continued prosecution of the case would "render a court opinion merely advisory." *See Am. Civil Liberties Union of Mass.*, 705 F.3d at 53 (quoting *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004) and *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)).

Courts have long recognized that "challenges . . . to government regulatory schemes which have expired or been effectively repealed" are moot. *See id.*; *see also Gulf of Me. Fisherman's All.*

*v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002) ("The promulgation of new regulations and amendment of old regulations are among such intervening events as can moot a challenge to the regulation in its original form."). When a plaintiff "seeks only injunctive and declaratory relief, not damages[,] it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status." *New Eng. Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002). Accordingly, the First Circuit and courts in this district have consistently dismissed challenges to regulations that are rescinded or replaced while the case is pending. *See, e.g.*, *id.*; *Massachusetts v. HHS*, 923 F.3d 209, 221 (1st Cir. 2019) (dismissing as moot a challenge to provisions of a regulation that were no longer in effect); *Gulf of Me. Fisherman's All.*, 292 F.3d at 88 (same); *Massachusetts v. Gutierrez*, 607 F. Supp. 2d 284, 285 (D. Mass. 2009) (same); *see also, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 274 (D.C. Cir. 2001) (case moot where agency "has eliminated the allegedly unlawful provision"); *Ctr. for Sci. in the Pub. Interest v. Regan*, 727 F.2d 1161, 1164–65 (D.C. Cir. 1984) (similar).

Consistent with this well-established precedent, this Court should dismiss as moot Plaintiffs' challenge to a rescinded guidance document. Plaintiffs' claims focus entirely on the legality of the rescinded 2017 Q&A. *See* 2d Am. Compl. ¶¶ 78–143, ECF No. 87. And they seek only prospective relief, namely "an order vacating and setting aside [the 2017 Q&A]." *See id.* at 30. But because this is a prospective challenge—namely, a challenge that does not contest an OCR complaint regarding sexual harassment that allegedly occurred *prior to* August 14, 2020—the 2017 Q&A cannot affect NCAVA. For sexual harassment that allegedly occurred *after* August 14, 2020, the Final Rule governs schools' Title IX responsibilities to respond to sexual harassment allegations. Because it is "impossible for [the] court to grant any effectual relief" beyond what ED has already done in repealing the 2017 Q&A, *see Chafin v. Chafin*, 568 U.S. 165, 172 (2013), there

4

is nothing left for the Court to do than to dismiss this case. Plaintiffs plainly cannot suffer future injury from a nonbinding guidance document that is no longer in effect, dooming their request for the prospective relief that they seek. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury . . . ."); *see also, e.g.*, Erwin Chemerinsky, Federal Jurisdiction § 2.3.3 (6th ed. 2011) (noting that "lower courts consistently have applied *Lyons* to prevent standing in suits seeking declaratory judgments where standing for injunctive relief would be unavailable").

Upon notifying Plaintiffs' counsel that the 2017 Q&A was repealed, counsel responded, "OCR has already applied the 2017 subregulatory rules in Jane [Doe] and Susan [Doe]'s cases and NCAVA has standing to assert the interests of all persons whose OCR cases are in the process of being injured by the rules." The assertion about Jane and Susan Doe is a red herring: those individuals have been dismissed from this case, s*ee* Mar. 18, 2020 Mem. & Order at 19, ECF No. 70, and NCAVA's only remaining claim to standing rests upon alleged injury to *itself*. NCAVA fails to explain how it will itself suffer future injury from a guidance document that is no longer in effect.

## II. Even if the Case Were Not Moot, NCAVA Has Still Failed to Establish Standing.

Even if the case were not moot, NCAVA would still lack standing. Nothing in NCAVA's proposed Supplemental Facts on Standing suggests otherwise.

### A. NCAVA Appears Defunct, and the WeLead Project Is a Separate Legal Entity.

Even with the benefit of Plaintiffs' proposed supplemental submission, all indications are that NCAVA is a defunct organization that has been superseded by a separate organization called the WeLead Project. For at least the past seven months, NCAVA's website (http://ncava.org) has automatically redirected to the WeLead Project's website. *See, e.g.*, Feb. 25, 2020, Mot. Hr'g Tr. 22 (court so observing). Social media accounts once operated by NCAVA have also been

5

abandoned. *See* https://www.facebook.com/NCAVA.org; https://twitter.com/NCAVAORG. Plaintiffs' supplemental submission provides no indication that NCAVA, as such, continues to operate.

Plaintiffs instead state that "[i]n March 2020, NCAVA began the process of undergoing a name change to WeLead." Suppl. Facts. ¶ 2. Plaintiffs provide no precise legal explanation of what that means, let alone documentation. Absent a clear description of the relationship between these organizations, the Court should look to the authoritative source describing Colorado corporate entities, which is the business database operated by the Colorado Secretary of State. That database reflects that NCAVA is a nonprofit corporation that was formed on November 19, 1997, and is now delinquent. *See* Colorado Secretary of State, Business Database Search, https://www.sos.state.co.us/biz/BusinessEntityCriteriaExt.do (search for registration number 19971185980). It further reflects that the WeLead Project is a limited liability company that was formed on May 9, 2016 and is also delinquent. *See id.* (search for registration number 20161326762). NCAVA and WeLead are both creations of Colorado law, but as a matter of Colorado law, they are separate legal entities.

NCAVA further says—again, without documentation—that "WeLEAD is registered with the IRS as an AKA of NCAVA." Suppl. Facts ¶ 2. That is not apparent in the IRS's publicly available records, which do not reflect WeLEAD's registration as a nonprofit corporation. *See* Internal Revenue Service, Tax Exempt Organization Search, https://apps.irs.gov/app/eos. Nor is that surprising, since according to the Colorado Secretary of State, the WeLead Project converted from a nonprofit company to a limited liability company immediately after its formation in 2016. *See* Colorado Secretary of State, Business Database Search, https://www.sos.state.co.us/biz/BusinessEntityCriteriaExt.do (search for registration number 20161326762).

6

All indications thus remain that (1) NCAVA is a defunct nonprofit organization, and (2) the WeLead Project is a separate limited liability corporation. Yet "[t]he law in this circuit is clear that where a harm has been directed toward a corporation, only the corporation has standing to seek a remedy for that harm." *Elbery v. Becket Woods Rd. & Maint. Dist.*, No. 09-cv-30076-MAP, 2010 WL 3038322, at *4 (D. Mass. July 29, 2010). A defunct organization may not claim Article III standing based on alleged injuries to a distinct legal entity.

**B. NCAVA's Allegations of Injury Remain Vague and Conclusory.**

Even if the Court could look past the fact that NCAVA appears to be defunct, the allegations of organizational injury contained in its proposed supplemental submission remain extraordinarily vague and conclusory and are insufficient to demonstrate Article III standing. We discuss each paragraph in turn:

- NCAVA alleges that it has had to provide "new and different trainings and consultations with victims, families, schools and government officials specifically about the DeVos Rules." Suppl. Facts ¶ 13. But NCAVA is silent about what these new trainings cover, to whom they are provided, how frequently they are provided, what costs NCAVA has incurred in providing them, and how they differ from the trainings and consultations that NCAVA provided prior to the issuance of the 2017 Q&A.

- NCAVA alleges that it has had to "expand its base of attorneys and advocates to address the DeVos Rules." *Id.* ¶ 14. But NCAVA is silent about how many attorneys and advocates it typically works with, how many new attorneys and advocates it now works with, and what expenses it incurred in the process of making relationships with new attorneys and advocates.

- NCAVA alleges that it has been "forced to consult with and train K-12 educators,

7

school districts, and state departments of education specifically about the DeVos Rules." *Id.* ¶ 15. But NCAVA is silent about what training and consultations it provided prior to the issuance of the 2017 Q&A, how often such training was provided, and what concrete injuries it suffered as a result of developing and providing new training.

- NCAVA alleges that it has had to "dedicate substantial resources specifically addressing" "burdens borne by students and victims" following the release of the 2017 Q&A. *Id.* ¶ 16. But NCAVA is silent about what specific burdens it is referring to and what exactly it has done to address those burdens different and above its ordinary work.

- NCAVA alleges that it has "been forced to travel substantially more frequently to provide education and guidance to victims, school officials, students, educators, and others." *Id.* ¶ 17. But NCAVA is silent about who is traveling, where they are traveling to, why such travel is necessary, and how this travel compares to travel prior to the issuance of the 2017 Q&A.

- NCAVA alleges that it has had to "dedicate resources to counteracting incorrect information given to students, educators, victims, and school officials about the effect of the DeVos Rules on Title IX." *Id.* ¶18. But NCAVA is silent about what resources have been expended, how they have been deployed to counteract this supposedly incorrect information, and how these efforts differ from NCAVA's ordinary messaging activities.

- NCAVA alleges that it has "suffered financial losses and opportunities for funding." *Id.* ¶ 19. But NCAVA is entirely silent about what it means.

Ultimately, the law in this Circuit is crystal clear that the modern pleading standards of *Iqbal* and *Twombly* apply to allegations concerning standing, such that "the plaintiff bears the

8

burden of establishing sufficient *factual matter* to plausibly demonstrate his standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Thus, while the substantive theory of organizational standing announced by the Supreme Court in 1982 in *Havens Realty Corp. v. Coleman*, 455 U.S. 663 (1982) remains good law, in 2020 it does not suffice for Plaintiffs to provide a "formulaic recitation" of that theory's elements. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs must instead satisfy their burden of "pleading facts necessary to demonstrate standing." *Hochendoner*, 823 F.3d at 730. They have utterly failed to do so.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of subject matter jurisdiction.

Dated: September 29, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

STEVEN A. MYERS
(NY Bar # 4823043)
Senior Trial Counsel

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252

9

Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on September 29, 2020.

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO