UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————— )
The National Coalition Against )
Violent Athletes, )
                               )
         Plaintiff, )
                               )          Civil Action
v. )          No. 17-12043-PBS
                               )
Department of Education et al., )
                               )
         Defendants. )
———————————————————————— )

**MEMORANDUM AND ORDER**

December 3, 2020

Saris, D.J.

Plaintiff Nation Coalition Against Violent Athletes ("NCAVA") brings this action against the Department of Education ("DOE") and Betsy DeVos, in her official capacity as Secretary of Education. Plaintiff alleges that guidance documents issued by DOE in 2017 violate Title IX, the Administrative Procedure Act ("APA") and the Constitution. Defendants contend that the complaint should be dismissed because (1) plaintiff lacks standing; (2) venue is improper; (3) plaintiff is challenging a non-final agency action and is asserting claims for which there is an adequate alternative remedy; and (4) plaintiff is asserting a variety of constitutional claims that are unsubstantiated and unsupported by law.

1

Defendants' motion to dismiss the Second Amended Complaint (Docket No. 91) is **ALLOWED**. Defendants' second motion to dismiss (Docket No. 108) is **DENIED** as moot.

## I.   BACKGROUND

### A.   Factual Background

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress modeled Title IX on Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq., which prohibits discrimination on the basis of race, color, or national origin in programs or activities that receive federal funds. Cannon v. Univ. of Chi., 441 U.S. 677, 694 (1979).

There are two mechanisms for ensuring compliance with Title IX. First, individuals injured by discriminatory practices can sue recipients of federal funds directly. See Cannon, 441 U.S. at 717. Second, the Department of Education ("DOE") may "issu[e] rules, regulations, or orders of general applicability" to effectuate Title IX. 20 U.S.C. § 1682.

On September 22, 2018, DOE issued a "Q and A on Campus Sexual Misconduct" (the "DeVos Rules") and a Dear Colleague Letter which rescinded previous DOE guidance documents

explaining DOE's enforcement of Title IX. Among other changes, the DeVos Rules permit educational programs to apply either a "clear and convincing" standard of proof or a "preponderance of the evidence" standard of proof in the redress of sex-based harms covered by Title IX. The DeVos Rules also permit educational programs to apply criminal law definitions of offenses as opposed to the civil rights definitions of offenses in the response to and determination of sex-based harms covered by Title IX. The DeVos Rules are limited to sex-based harms and apply generally to all educational programs that receive federal funds.

This past spring, DOE published a final rule titled Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) ("Final Rule"). That rule became effective on August 14, 2020 and supersedes prior guidance, including the DeVos Rules. See id. at 30,535.

Shortly after the Final Rule became effective, DOE formally rescinded the DeVos Rules. See Rescinded Policy Guidance, Office for Civil Rights (Aug. 26, 2020), https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/rr/poli cyguidance/respolicy.html. Accordingly, DOE will no longer consider the DeVos Rules in evaluating sexual harassment allegations that occur after the Final Rule's effective date,

August 14, 2020. <u>See</u> Letter from Office for Civil Rights to
Educators and Stakeholders (Aug. 26, 2020),
https://www2.ed.gov/policy/gen/guid/fr-200826-letter.pdf.
However, the letter cited above states that "to the extent that
[the DeVos Rules are] helpful to recipients for appropriately
responding to sexual harassment that allegedly occurred prior to
August 14, 2020, they will remain accessible on the Department's
website".  <u>Id.</u>

### B.   Procedural Background

The original plaintiffs in this case, Equal Means Equal,
Jane Doe, Mary Doe, and Susan Doe, commenced this action by
filing a complaint on October 19, 2017. At that time, all three
Does had pending cases before DOE's Office of Civil Rights
("OCR").[1] On September 24, 2018, the Court granted Plaintiffs'
first motion for leave to amend the complaint, which added NCAVA
as a plaintiff.

The Court dismissed the first amended complaint on March
18, 2020 for failure to establish Article III standing.

On April 21, 2020, the Court granted NCAVA's motion for
leave to file the Second Amended Complaint ("SAC"). The SAC
alleges that NCAVA is a national 501(c)(3) organization whose
mission is to advocate for the equal treatment of victims of

---

[1] Currently, only Jane Doe's complaint remains pending before
OCR. It has been pending for over four years.

sex-based harms under civil rights laws, such as Title IX, and related laws.

On June 24, 2020, Defendants moved to dismiss the SAC for lack of standing, improper venue and failure to state a claim. The Court held oral argument on August 6, 2020. On August 28, 2020, this Court granted NCAVA leave to file supplemental facts on standing. On September 29, 2020, Defendants filed a second Motion to Dismiss for Lack of Jurisdiction. On October 13, 2020, Plaintiff opposed.

## II. LEGAL STANDARD

On a motion to dismiss for lack of subject matter jurisdiction made pursuant to Fed. R. Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). When ruling on a 12(b)(1) motion the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).

In analyzing whether a complaint states a claim sufficient to satisfy Rule 12(b)(6), the Court must set aside any statements that are merely conclusory and examine only the pleader's factual allegations. See Ashcroft v. Iqbal, 556 U.S.

662, 679 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

## III. DISCUSSION

### A.   Standing

Defendants argue that NCAVA lacks Article III standing because (1) it is a defunct organization, and (2) the allegations of organizational injury are vague and conclusory.

Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992).

### i. NCAVA's Organizational Status

Defendants contend that NCAVA is a defunct organization that has been superseded by a separate organization called the WeLEAD Project, and therefore it has no Article III standing. NCAVA responds that, since March 2020, it has been in the process of undergoing a name change to WeLEAD, which is registered with the IRS as an AKA of NCAVA. NCAVA has also

submitted additional facts about its organizational structure and its current operations.[2] Although Defendants correctly point out that NCAVA has not submitted any documentation in support of these representations, NCAVA has submitted enough at this pleading stage to establish itself as a currently operational organization.

### ii. Allegations of Organizational Injury

To satisfy the case-or-controversy requirement of Article III of the United States Constitution, plaintiff bears the burden of establishing that it (1) has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that the injury is "'fairly traceable' to the actions of the defendant"; and (3) that the injury will likely be redressed by a favorable decision. Bennett v. Spear, 520 U.S. 154, 162, 167 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). Those elements must be proved "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

This Court has previously ruled that NCAVA does not have associational standing because it does not have members but

---

[2] Although Plaintiff's Supplemental Facts on Standing (Docket No. 111) were not filed under oath, Defendants have not objected to the Court's reliance on them.

allowed NCAVA to amend its complaint with more detail regarding
its claim of organizational standing. NCAVA having done so and
having filed Supplemental Facts regarding its organizational
status, the Court now considers NCAVA's assertion of
organizational standing anew.

The Supreme Court has held that an advocacy organization
may achieve standing if its mission has been "frustrated" by the
challenged conduct *and* it has expended resources to combat it.
See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982).
However, the Supreme Court has also held that simply expending
resources based on an *anticipated* harm is not enough to
establish standing. See Clapper v. Amnesty Int'l USA, 568 U.S.
398, 416 (2013).

In Havens Realty, the Supreme Court considered whether
HOME, a nonprofit corporation "whose purpose was to make equal
opportunity in housing a reality in the Richmond Metropolitan
Area," had standing to sue a realty company and one of its
employees for racial discrimination. 455 U.S. at 367-68
(internal quotation marks omitted). In finding that HOME had
alleged sufficient injury to establish direct organizational
standing, the Supreme Court stated:

> If, as broadly alleged, petitioners' steering practices
> have perceptibly impaired HOME's ability to provide
> counseling and referral services for low-and moderate-
> income homeseekers, there can be no question that the
> organization has suffered injury in fact. Such concrete and

8

> demonstrable injury to the organization's activities—with
> the consequent drain on the organization's resources—
> constitutes far more than simply a setback to the
> organization's abstract social interests, see Sierra Club
> v. Morton, 405 U.S. 727, 739 (1972).

Id. at 379.

> According to the SAC, NCAVA is

> a national 501(c)(3) non-profit organization . . . whose
> sole mission is to advocate for the equal treatment of
> victims of sex-based harms under civil rights laws. . . .
> NCAVA provides legal referrals, counsel and advocacy to
> victims of sex-based harms.

Docket No. 87 ¶ 50. Plaintiff alleges that the DeVos Rules

> disfavor clients of NCAVA and frustrate NCAVA's mission by
> subjecting sex-based harms to different treatment, thus
> making findings of responsibility for sex-based harms less
> likely compared to findings of responsibility for other
> civil rights harms.

Id. ¶ 55. Plaintiff further alleges that the DeVos Rules have

"required the diversion of NCAVA's resources and ha[ve] frustrated

its efforts." Id. ¶ 53. However, the analysis does not end here.

To establish Article III standing, an injury must be

"concrete, particularized, and actual or imminent; fairly

traceable to the challenged action; and redressable by a

favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561 U.S.

139, 149 (2010).

In Clapper, several groups and individuals challenged a new

provision of the Foreign Intelligence Surveillance Act (FISA)

which authorized government electronic surveillance of non-U.S.

persons outside the U.S. for foreign intelligence purposes. 568

U.S. 398. These groups alleged that the new provision would force them to take costly measures to ensure the confidentiality of their international communications. The Supreme Court held that the groups did not have standing because they could not "demonstrate that the future injury they purportedly fear[ed] [was] certainly impending." Id. at 422. There was no evidence that the Government would target the communications to which the groups were party and use the new provision to do so. Furthermore, any costs that the groups incurred to protect their communications were not fairly traceable to the new provision, as the harm was not certainly impending.

The SAC sufficiently pleads frustration of NCAVA's organizational mission and diversion of resources to establish standing. In fact, the allegations contained in the SAC closely track the allegations in SurvJustice Inc. v. DeVos, No. 18-CV-00535-JSC, 2018 WL 4770741, at *7 (N.D. Cal. Oct. 1, 2018), amended on reconsideration, 2019 WL 1434144 (N.D. Cal. Mar. 29, 2019), upon which Plaintiff relies. For example, the SAC alleges the following:

1. NCAVA has had to "raise and dedicate additional donations that were specifically spent to assist clients seeking legal help" as a result of the DeVos Rules.  Docket No. 87 at ¶ 53.

2. NCAVA "has seen a surge in the number of clients and members seeking help, whose need for assistance is a direct result of the Devos Rules." Id.

3. NCAVA has "diverted substantial resources conducting additional research, advocacy, training, education, and other similar programs because of the DeVos Rules . . . and divert[ed] substantial resources in the form of advocacy to deal with increased demand for redress at campus grievance hearings, and at the OCR." Id.

4. NCAVA has noted that "victims have expressed an unwillingness to report sex-based harm to campus authorities and law enforcement officials." Id. ¶ 54.

These allegations are sufficiently particularized to establish Article III standing.

### B. Venue

Venue is proper in suits against the agencies of the United States in any judicial district in which the plaintiff resides, a defendant in the action resides, or a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(e)(1). Under 28 U.S.C. § 1391, venue may be proper in more than one district. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009); Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001).  The Court need only determine whether venue is proper in Massachusetts, not whether Massachusetts is the "best" venue. Astro-Med, 591 F.3d at 12.

Defendants argue that venue is no longer proper in Massachusetts, because the plaintiffs included in the original complaint with ties to Massachusetts have been dismissed from the action. Plaintiff responds that venue is proper because a

11

"substantial part of the events or omissions giving rise to the claim occurred" in Massachusetts. See 28 U.S.C. § 1391(e)(1). Plaintiff makes the sweeping claim that because the DeVos Rules cause injury to all women, and because women reside in all states, jurisdiction is appropriate everywhere.

When considering whether a "substantial part of the events occurred" in Massachusetts, the First Circuit "look[s] not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim." Astro-Med, 591 F.3d at 12 (quotation marks, internal citations and citations to quoted case omitted).

Here, Defendants are correct that the original plaintiffs with the greatest ties to Massachusetts have been dismissed. However, Defendants' assertion that venue for NCAVA's claims would be proper only in Colorado where NCAVA resides, or in Washington, D.C. where the Department resides and where it issued the challenged guidance, is overly restrictive. NCAVA submits that it advocated and continues to advocate on behalf of Jane Doe and Mary Doe in their cases arising out of conduct that occurred on university campuses in Massachusetts. As those cases constitute a "substantial part of the events" underlying Plaintiff's claims, venue is also appropriate in Massachusetts under 28 U.S.C. § 1391(e)(1).

### C.    Mootness

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). In their Second Motion to Dismiss the SAC, Defendants contend that this case is moot because the DeVos Rules have been rescinded, and therefore it must be dismissed. Plaintiff responds that the case is not moot because the recently promulgated regulations are not retroactive. Therefore, the DeVos rules will continue to affect matters pending before OCR before the DeVos Rules were rescinded.

Challenges to government regulatory schemes which have expired or been effectively repealed are generally moot. See New England Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002). When a plaintiff "seeks only injunctive and declaratory relief, not damages[,] . . . it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status." Id.

Here, Plaintiff seeks injunctive and declaratory relief from a guidance document which has been officially rescinded and replaced. It would seem that the prospective relief requested has already been satisfied.

However, the answer may not be so simple. Although the DeVos Rules have been rescinded and replaced by newly promulgated rules, these rules only affect allegations of sexual

13

harassment that occur after August 14, 2020. Even though the
DeVos Rules have been officially rescinded, DOE has implicitly
acknowledged that they may remain applicable to complaints of
sexual harassment that allegedly occurred prior to August 14,
2020. See Letter from Office for Civil Rights to Educators and
Stakeholders (Aug. 26, 2020),
https://www2.ed.gov/policy/gen/guid/fr-200826-letter.pdf. During
this Court's hearing on August 6, 2020, Defendants acknowledged
that it was "ambiguous" whether OCR would apply the DeVos Rules
to allegations of sexual assault that occurred prior to August
14, 2020.

Defendants attempt to circumvent this ambiguity by arguing
that, given its request for prospective relief, NCAVA cannot be
affected by events that occurred prior to August 14, 2020.
However, this may not be so. NCAVA's allegations of injury
include that it has been frustrated in its mission to represent
individuals before OCR such as Jane Doe, whose case predates the
newly promulgated rules and to whom the DeVos Rules may still
apply. Defendants have not attested to whether OCR will in fact
apply the DeVos Rules to cases such as Jane Doe's, or whether
the DeVos Rules have truly been rescinded and therefore will be
given no legal significance. In the absence of such an
attestation, NCAVA has made sufficient claims of an ongoing case
in controversy.

14

### D.    Substantive Claims under Rule 12(b)(6)

The SAC alleges that the DeVos Rules violate every possible provision of the Administrative Procedures Act ("APA") as well various Constitutional amendments. Defendants contend that the DeVos Rules are not subject to judicial review under the APA nor do they violate the Constitution, and therefore they must be dismissed under Rule 12(b)(6) for failure to state a claim.

#### i. Counts I-V: APA Claims

The APA allows courts to review certain agency action and set the action aside if they find it unlawful. See 5 U.S.C. § 706. Only "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704. Since no statute specifically permits review of the DeVos Rules, the Court may review the designation only if it constitutes final agency action.

##### 1. Final Agency Action

To qualify as final, the action "must mark the consummation of the agency's decisionmaking process" and either determine rights or obligations or trigger legal consequences. U.S. Army Corps of Eng'rs v. Hawkes Co., 136 S. Ct. 1807, 1813 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). In other words, the action must "conclusively determine[ ] the rights and obligations of the parties with respect to the

15

matters at issue." Berkshire Envtl. Action Team, Inc. v. Tenn. Gas Pipeline Co., 851 F.3d 105, 111 (1st Cir. 2017) (quoting Rhode Island v. EPA, 378 F.3d 19, 23 (1st Cir. 2004)). The possibility of an agency appeal prevents a decision from being final when the decision automatically triggers further agency review according to statute or regulation. See Global Tower Assets, LLC v. Town of Rome, 810 F.3d 77, 86 (1st Cir. 2016).

Defendants contend that the DeVos Rules are not final agency action because they do not conclusively determine the parties' rights and obligations. Defendants rely on the reasoning of ServJustice, which dismissed a similar challenge under the APA because "legal consequences continue to flow only from a school's noncompliance with Title IX and its implementing regulations," and "the guidance merely provides 'information' for schools regarding how the Department's Office [for] Civil Rights will assess compliance with those existing laws." 2018 WL 4770741, at *10.

However, the claims here differ from those at issue in ServJustice. In ServJustice, the plaintiffs argued that the DeVos Rules determined *schools'* obligations. Here, NCAVA asserts that the DeVos Rules determine *individuals'* rights who challenge their schools' handling of sexual harassment allegations before OCR. The court in ServJustice concluded that schools were only required to comply with Title IX, and whether or not they

amended their policies in response to DOE's interpretation of Title IX as articulated by the DeVos Rules was a voluntary choice from which no legal consequences would flow. By contrast, here, Plaintiff alleges that by applying the DeVos Rules to cases pending before OCR, OCR is making final, legal determinations regarding individuals' rights in sexual harassment cases.

For example, prior to the issuance of the DeVos Rules, if OCR considered a challenge to a school's determination in a sexual harassment case which was reached using the "preponderance of the evidence standard," the school would be found to be non-compliant with Title IX. However, after the issuance of the DeVos Rules, according to the allegations in the SAC, the school would be found to be compliant. Thus, the DeVos Rules constitute final agency action, because they conclusively determine the legal rights and obligations of individuals who challenge their school's determination of sexual harassment claims before OCR.

### 2. Alternative Remedy

In addition to showing that the DeVos Rules constitute final agency action, Plaintiff must establish that there is no adequate alternative remedy in court. The remedy suggested by Defendants is private suit against the schools, and the Court agrees.

The Supreme Court has held that two remedies are available to those challenging schools' discriminatory practices under Title IX: a public remedy and a private remedy. Cannon, 441 U.S. at 706-08. The public remedy is to terminate federal financial support for institutions engaged in discriminatory practices. Id. at 704. This can be done by filing a grievance with OCR which, upon a determination of noncompliance, will attempt to obtain compliance from the school voluntarily before terminating funds. See § 902 of Title IX, 20 U.S.C. § 1682. The private remedy is for an individual to prosecute his or her own suit against the school in order to obtain an individual form of relief. Cannon, 441 U.S. at 705-706.

Here, the question is whether, when a party believes that the public remedy is unavailable due to DOE's changing guidelines regarding enforcement of Title IX, the existence of a private remedy prohibits that party from pursuing the public remedy under the APA.

The D.C. Circuit has previously held that APA claims against DOE are barred by the availability of a private cause of action against universities that discriminate in violation of Title IX. Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 383 F.3d 1047, 1047-48 (D.C. Cir. 2004).[3] In Nat'l Wrestling Coaches,

---

[3] The court in ServJustice considered the reasoning in Nat'l Wrestling Coaches when determining whether an alternative remedy

the appellants challenged a Dear Colleague Letter in which OCR clarified its interpretation of Title IX and DOE regulations as they applied to intercollegiate athletics. The appellants "consistently maintained that, in subscribing to Department of Education enforcement policy interpretations, the universities have themselves adopted unlawful policies and engaged in unlawful activities." Id. at 1048. The court denied appellants' petition for rehearing "because appellants [had] a private cause of action directly against the universities to seek redress for any proscribed acts of sex discrimination committed by the universities." Id. (citing as controlling the court's decision in Washington Legal Foundation v. Alexander, 984 F.2d 483 (D.C. Cir. 1993)). Therefore, appellants' action against the

---

exists to challenge the DeVos Rules but ultimately found it to be unpersuasive. SurvJustice Inc. v. DeVos, No. 18-CV-00535-JSC, 2019 WL 1434144, at *6-7 (N.D. Cal. Mar. 29, 2019). Instead, the court in ServJustice agreed with the dissent in Nat'l Wrestling Coaches "in that it distinguishes '. . . kindred cases [in which] the agency was accused only of failing to stop or penalize illegal behavior by educational institutions,' and notes that 'by contrast, the agency [here] is charged with bullying those institutions into adopting unlawful practices.'" Id. at *7 (citing Nat'l Wrestling Coaches Ass'n, 383 F.3d at 1051. This Court declines to follow that line of reasoning, as here DOE is not "bullying" schools into following any set of rules or adopting a particular standard of proof. Rather, the DeVos Rules expand the options available to schools in developing their responses to students' Title IX claims. If students believe their schools have chosen the "wrong" option, they maintain the right to sue the schools directly in federal court.

Department was "barred under 5 U.S.C. § 704" based on the existence of an adequate remedy. Id.

Section 704 reflects Congress's intent that "the general grant of review in the APA [not] duplicate existing procedures for review of agency action." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988). The alternative remedy need not be as effective as an APA lawsuit against the regulatory agency; it need only be "adequate." See Garcia v. Vilsack, 563 F.3d 519, 525 (D.C. Cir. 2009); see also De La Garza Gutierrez v. Pompeo, 741 F. App'x 994, 998 (5th Cir. 2018); Pregis Corp. v. Kappos, 700 F.3d 1348, 1360 (Fed. Cir. 2012). The D.C. Circuit has acknowledged this tension, stating that even though

> [s]uits directly against the discriminating entities may be
> more arduous, and less effective in providing systemic
> relief, than continuing judicial oversight of federal
> government enforcement[,] . . . under our precedent,
> situation-specific litigation affords an adequate, even if
> imperfect, remedy.

Women's Equity Action League v. Cavazos, 906 F.2d 742, 751 (D.C. Cir. 1990). Here, an adequate, if imperfect, remedy exists in the form of private action against the schools. Accordingly, Plaintiff is barred from bringing a claim under the APA due to the existence of an alternate adequate remedy, and Counts I-V will be dismissed.

ii.  Count VI: First Amendment Claim

This Court has previously dismissed Plaintiff's First Amendment claim for lack of standing.

iii.  Count VII: Title IX Claim

Plaintiff argues that Title IX creates an implied right of action against the government in its capacity as regulator. However, generally the appropriate remedy to challenge agency action, if available, is the APA. See Cousins v. Sec'y of the U.S. Dep't of Transp., 880 F.2d 603, 605 (1st Cir. 1989) (en banc) (Breyer, J.). Plaintiff has cited no cases or statutory sections to show why its Title IX claim falls outside the rubric of the APA. Moreover, the Fourth Circuit, citing the Supreme Court's analysis of Title IX in Cannon, 441 U.S. at 703, has explicitly found that there is no private right of action against federal agencies under Title VI, upon which Title IX was patterned. Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 191 (4th Cir. 1999).[4] Under these facts, this Court agrees with the reasoning of Cannon and Jersey Heights, and accordingly Count VII will be dismissed.

---

[4] But see Cobb v. U.S. Dep't of Educ. Office for Civil Rights, 487 F. Supp. 2d 1049, 1054 (D. Minn. 2007) (holding that there is a private right of action against OCR where OCR itself fosters discriminatory behavior). The court in Cobb was confronted with a specific decision by OCR which was found to be discriminatory. Here, Plaintiff has not put before the Court an example of a determination by OCR that allegedly violates Title IX, only Jane Doe's still-pending complaint.

### iv.  Count VIII: Tenth Amendment Claim

Congress may use its authority under the Spending Clause to entice states to implement its policy objectives. South Dakota v. Dole, 483 U.S. 203, 206-207 (1987). Plaintiff's claim that the DeVos Rules "violate the Tenth Amendment, exceed Congress's Article I powers, and run afoul of the Constitution's principles of federalism" is conclusory. Docket No. 87 ¶ 136. As this challenge is "presented in a perfunctory and undeveloped manner," the Court will not consider it further. Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 293 (1st Cir. 2015) (internal citations omitted). Accordingly, Count VIII will be dismissed.

### v.  Count IX: Spending Clause Claim

Title IX is a valid exercise of Congress's Spending Clause authority. See generally Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287 (1998). Plaintiff's claim that the DeVos Rules require Massachusetts recipients of federal funding to violate the Equal Protection Clause of the Massachusetts Constitution is conclusory, and the Court will not consider it further. See Carter's of New Bedford, Inc., 790 F.3d at 293. Accordingly, Count IX will be dismissed.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss
(Docket No. 91) is **ALLOWED**. Defendants' Second Motion to Dismiss
(Docket No. 108) is **DENIED** as moot.

SO ORDERED.


/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge